IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern Dis[...]
Fi[...]

AUG 2 0 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MARCOS SANCHEZ, INDIVIDUALLY AND, | § | |
| AS REPRESENTATIVE OF THE ESTATE OF | § | |
| NELSON NAPOLEON SANCHEZ | § | |
| | § | |
| AIDO MANUEL GARRIDO AND IVON ELENA | § | |
| PARRA DE GARRIDO, INDIVIDUALLY AND | § | |
| AS REPRESENTATIVES OF THE ESTATES | § | |
| OF EVELIN CAROL GARRIDO DE SANCHEZ | § | |
| AND DANIEL ENRIQUE SANCHEZ | § | |
| GARRIDO, A MINOR; | § | |
| | § | CIVIL ACTION NO. B-04-080 |
| MAXIMILLIANO PEREZ CEBALLOS | § | |
| AND PETRA MARIA COLMENAREZ, | § | |
| INDIVIDUALLY AND AS REPRESENTATIVE | § | |
| OF PEDRO NORBERTO PEREZ | § | |
| COLMENAREZ | § | |
| | § | |
| VS. | § | |
| | § | |
| GOODRICH CORPORATION F/K/A | § | |
| B.F. GOODRICH COMPANY; AND | § | |
| FORD MOTOR COMPANY | § | |

## MICHELIN NORTH AMERICAN, INC. AND FORD MOTOR COMPANY'S MOTION TO APPLY THE LAWS OF VENEZUELA AND BRIEF IN SUPPORT OF SAME

In the event that this case remains in this forum, Defendants, MICHELIN NORTH
AMERICA, INC. ("Michelin") and FORD MOTOR COMPANY ("Ford") request that the
Plaintiffs' claims be governed by and decided under the substantive law of Venezuela. Pursuant
to Rule 44.1 of the Federal Rules of Civil Procedure, Defendants ask this Court to make a
determination of the laws of Venezuela and apply same to this case. Defendants provide
evidence of the law of Venezuela in the form of the attached Declaration of Professor Enrique
LaGrange. *See* Declaration attached hereto as **Exhibit "A"**. In support of this Motion, Michelin

and Ford rely upon that Declaration, the exhibits to that Declaration, and the proof previously filed in Defendants' Joint Motion to Dismiss for *Forum Non Conveniens* filed contemporaneously with this Motion.

## I. INTRODUCTION

This is a diversity action. A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *See Vasquez v. Bridgestone/Firestone*, 325 F.3rd 665, 674 (5th Cir.). Texas has adopted the "most significant relationship" test of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971)(the "RESTATEMENT"). Under that test, the claims in this case should be governed by the law of Venezuela.

The facts giving rise to this cause of action lack any relationship to Texas. Comparatively, this case has an overwhelming factual relationship to Venezuela. To that end:

(1)     The Plaintiffs are Venezuelan citizens and residents;

(2)     The decedents were Venezuelan citizens and residents;

(3)     The accident made the basis of this lawsuit occurred on a Venezuelan highway;

(4)     The vehicle was owned by Venezuelan residents;

(5)     The vehicle was registered in Venezuela;

(6)     The principle case specific witnesses and evidence in this action are located in Venezuela, and the witnesses are beyond the subpoena powers of this Court;

(7)     The accident was investigated by Venezuelan authorities;

(8)     The vehicle was assembled in Venezuela;

(9)     The injured passengers and driver were treated by Venezuelan medical providers;

(10)    Defendant Ford is a Delaware corporation with its principal place of business in Michigan;

(11)    Defendant Michelin is a New York corporation with its principle place of business in South Carolina.

The factors set forth above are more than sufficient to support this motion. The laws of Venezuela should govern the claims in this case.

## II. ARGUMENT AND AUTHORITIES

Texas has adopted the "most significant relationship" approach of the RESTATEMENT to decided choice-of-law issues. *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979), *see also Torrington v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2001). Under this standard, the Plaintiffs' claims should be decided under the substantive law of the jurisdiction with the "most significant relationship" to the occurrence and the parties related to that issue. The RESTATEMENT lists several factors to consider in making that determination:

(1)     The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2)     Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a)     the place where the injury occurred;
(b)     the place where the conduct causing the injury occurred;
(c)     the domicile, residence, nationality, place of incorporation and place of business of the parties; and
(d)     the place where the relationship, if any, of the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT § 145 (1971). The RESTATEMENT's approach, and the factors listed therein, demonstrate that it is Venezuela -- not Texas -- that has the most significant relationship to the claims and issues in this case.

A.    **The factual considerations of RESTATEMENT § 145 point to Venezuelan law.**

It is readily apparent that in this case the factual contacts the RESTATEMENT lists for consideration overwhelmingly point to Venezuela.  It is equally apparent that none of them point to Texas.

1.    **The injuries occurred in Venezuela.**

The accident made the basis of this lawsuit occurred in Venezuela.  This is a starting point of great importance.  Texas courts have recognized that the RESTATEMENT normally places significant weight on the place where the injury occurred.  *See Torrington v. Stutzman*, 46 S.W.3d at 848; *see also CPS Int'l, Inc. v. Dresser Indust.., Inc.*, 911 S.W.2d 18, 29 (Tex.App. – El Paso 1995, writ denied); *Trailways, Inc. v. Clark*, 794 S.W.2d 479, 485 (Tex.App. – Corpus Christi 1990, writ denied).  The recent development of the law which holds that the location of the injury is no longer the *only* fact that matters has hardly made that fact irrelevant.  As Judge Posner has observed, even under the more flexible choice-of-law approach described in the RESTATEMENT, the location of the plaintiff's injury is still "in the absence of unusual circumstances, the highest scorer on the 'most significant relationship test'." *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 (7th Cir. 1999).  This makes good sense:

> [f]or that is the place that has the greatest interest in striking a reasonable balance among safety, cost, and other factors pertinent to the design and administration of a system of tort law. . . . [T]he law of the place of the accident can be expected to reflect the values and preferences of the people most likely to be involved in accidents -- can be expected, in other words, to be responsive and responsible law, law that internalizes the costs and benefits of the people affected by it.

*Id.* at 845.

The importance of the location of the injury is echoed in the RESTATEMENT.  In fact, in a personal injury case, the RESTATEMENT maintains that the location of the injury is *dispositive* in deciding choice-of-law issues unless there is some good reason why it should not be:

> [i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT § 146, Personal Injuries. *See also* § 145 cmt. f ("[The place of injury is of particular importance in the case of personal injuries and of injuries to tangible things."). Indeed, this is a consistent theme throughout the RESTATEMENT. The appropriate law "will usually be the local law of the state where the injury occurred" to decide the following: whether the defendant's conduct was tortious, § 156(2); the standard of care, § 157(2); the interests entitled to legal protection, § 158(2); whether the actor owed a duty that was violated, § 159(2); legal cause, § 160(2); right of action for death, §175; and the measure of damages in a claim for wrongful death, § 178.

Here, the accident and all resulting injuries occurred in Venezuela. As a result, Venezuelan law should be used to determine the outcome of this lawsuit.

### 2.    The conduct allegedly causing the injuries did not occur in Texas.

The Plaintiffs contend that this accident was caused by defects in a vehicle and tire. Plaintiffs have not pleaded any facts that demonstrate anything related to this vehicle, this tire, or this accident occurred in the <u>State of Texas</u>. *See* Plaintiffs' Original Petition.

The Plaintiffs have no legitimate basis on which to insist that this Court consider only what they maintain was the cause this accident. In that vein, Defendants contend that the accident was not caused by the failure of their respective products, but rather was caused, at a minimum, by driver error, improper maintenance and repair, and dangerous road conditions. Defendants are entitled to have their contentions on the cause of this accident taken just as seriously, treated with just as much dignity, and given just as much weight as the contentions

asserted by the Plaintiffs. To that end, Venezuela has the "most significant relationship" with the defensive allegations advanced by Michelin and Ford.

The Fifth Circuit recognized this point in a recent decision concluding, under Texas choice-of-law rules, that Mexican law should govern the claims of Mexican plaintiffs suing for the deaths of Mexican nationals in a vehicular accident in Mexico that was allegedly caused by a defective tire and vehicle designed in the United States. *See Vasquez*, 325 F.3d. *Vasquez* is instructive. In that case, the plaintiffs could not require the court to ignore everything that happened in Mexico simply by stressing their theory that the accident was caused by defective products designed in the United States: "The linchpin of plaintiff's argument -- that the alleged wrongful act was the original design of the vehicle and tires -- reaches too far back in the causal chain." *Vasquez*, 325 F.3d at 674. The plaintiffs could not insist that everything that occurred later be treated as irrelevant -- such as the sale and use of the product, and the accident itself. *Id.* The same is also true here.

### 3.    The parties' residences point to the law of Venezuela.

The Plaintiffs in this case are presently Venezuela nationals living in Venezuela, and were Venezuelan nationals living in Venezuela at the time the accident occurred. *See* Plaintiffs' Original Petition, page 1. Ford is a Delaware corporation with its principal place of business in Michigan. Michelin is a New York corporation with its principle place of business in South Carolina. None of the parties are residents of Texas; therefore, the allegations pleaded by Plaintiffs in this case should be decided under the laws of Venezuela.

### 4.    The relationship between the parties, if relevant at all, is centered in Venezuela.

The only relationship between the Plaintiffs and the Defendants is based on this particular vehicle and this specific accident. The vehicle was owned in Venezuela, licensed in Venezuela,

operated in Venezuela, purchased in Venezuela, assembled in Venezuela, and serviced in Venezuela. At the time of the accident, the vehicle was being driven on a highway in Venezuela by a Venezuelan national. Venezuela is where the alleged injuries occurred. If there is any relationship at all between these parties, it is centered in Venezuela.

**B.    The policy considerations of RESTATEMENT § 6 point to Venezuelan law.**

Under the RESTATEMENT's approach, the factual considerations discussed above should be weighed in conjunction with the following policy factors:

> (a)    the needs of the interstate and international systems;
> (b)    the relevant policies of the forum;
> (c)    the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue;
> (d)    the protection of justified expectations;
> (e)    the basic policies underlying the particular field of law;
> (f)    certainty, predictability, and uniformity of result; and
> (g)    ease in the determination and application of the law to be applied.

RESTATEMENT § 6.

Not all of the aforementioned factors can be meaningfully applied here. But those that can be applied unambiguously point to Venezuela.

> **1.    Venezuela has the strongest policy interest in the outcome of this controversy.**

Venezuela has an undeniable interest in regulating the conduct of its citizens and residents when they operate vehicles on Venezuelan highways. That country has a corresponding interest in regulating the conduct of those who build the vehicles that are sold to its citizens and residents, and in protecting the interests of those citizens and residents when they are injured by allegedly defective products. *See, e.g., Vasquez*, 325 F.3d at 673 ("Mexico has an interest in protecting its own citizens from defective products acquired in Mexico and causing injury there."); *Delgado v. Shell Oil Co.*, 231 F.3d 165, 181 (5th Cir. 2000)(the countries from which the plaintiffs were

from and where they were injured "obviously have an interest in protecting the rights and welfare of their citizens.").

In civil matters, the detailed Venezuelan code reflects the balance that Venezuela has chosen to protect the interests of its citizens and residents in light of Venezuelan legal principles, culture, and economy. That nation's choices should not be lightly dismissed. As the Fifth Circuit observed concerning similar claims from an accident in Mexico:

> Mexico, as a sovereign nation, has made a deliberate choice in providing a specific remedy for this tort cause of action. In making this policy choice, the Mexican government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. . . . It would be inappropriate-- even patronizing--for us to denounce this legitimate policy choice.

*Gonzalez v. Chrysler Corporation*, 301 F.3d 377, 381-82 (5th Cir. 2002).

Of course, the same is true here for Venezuela. In adopting laws to govern claims such as these, the Venezuelan government made deliberate choices to resolve trade-offs among the competing objectives and costs of tort law. Where its values, its vehicles and tires, its highways, and its residents and citizens are concerned, Venezuela is entitled to have that balance and its laws respected. By contrast, Texas has no discernible interest in the claims of these non-resident foreign nationals injured in another country who are suing for alleged defects in products that were neither designed, nor manufactured, nor sold, nor used in this State. *See Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d at 675 ("Given that all decedents and plaintiffs are Mexican . . . there is little justification for applying Texas law, which seeks to protect the rights of its *citizens* to adequate compensation.")(emphasis by the court, internal quotations and citation omitted).

Indeed, applying Texas law to claims against the Defendants under these circumstances would be an unconstitutional exercise of extraterritorial jurisdiction to control and regulate

conduct occurring wholly outside the borders of this State. *See State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513 (2003); *Phillips Petroleum Co. v. Shunts*, 472 U.S. 797 (1985); *BMW v. Gore*, 517 U.S. 559 (1996).

### 2.    The expectations of the parties point to the law of Venezuela.

None of the Plaintiffs could reasonably have expected to avail themselves of Texas law for an accident in Venezuela involving a vehicle and tires that were purchased, owned, and operated there.  All of the people involved in this accident were Venezuelan nationals.  The vehicle and tires were purchased in Venezuela, owned in Venezuela, serviced in Venezuela, used in Venezuela, and at the time of the accident were being driven on a Venezuelan highway by a Venezuelan resident.  If the justified expectations of the parties are relevant here, this factor points to the law of Venezuela.  To quote Justice Holmes: "[i]t should be remembered that parties do not enter into civil relations in foreign jurisdictions in reliance upon our courts."  *Cuba Railroad Co. v. Crosby*, 222 U.S. 473, 479 (1912).

### 3.    Certainty, predictability, and uniformity of result point to Venezuela

The only sensible way to achieve certainty, predictability, and uniformity of result is to decide this case under the law of Venezuela.  Considering the alternative drives the point home. If cases involving vehicular accidents in foreign countries were decided under the local laws wherever the cases were filed in the United States, there would be multiple standards of recovery applied to the claims of similar plaintiffs suing the same defendants -- even when the accidents occurred in the same foreign country, involved the same product, and allegedly happened in the same way.  For accidents such at this one that occurred in Venezuela, one substantive law would apply to the plaintiffs who sue in Venezuela, another law would apply to those who sue in Florida, a third to those who sue in Texas, a fourth to those who sue in Mississippi, and yet other

law to those who sue elsewhere. The results will be uncertain, unpredictable, and far from uniform. This cannot be right. These policy considerations clearly contemplate the application of Venezuelan law in this case.

### III. RELEVANT PROVISIONS OF VENEZULAN LAW

The attached Declaration contains an explanation of the Venezuelan law that should govern this case. Defendants will not repeat that discussion here, but will briefly note a few salient points:

1. Venezuelan law recognizes liability based on negligence;
2. Venezuelan law does not recognize strict products liability;
3. Venezuelan law does not recognize derivative or vicarious liability based on the acts of a distinct, separate corporation;
4. Venezuelan law recognizes certain aspects of comparative responsibility;
5. Venezuelan law authorizes the recovery of economic damages on behalf of the decedents;
6. Venezuelan law authorizes the recovery of moral damages for the family members of the decedents;
7. Venezuelan law does not recognize punitive damages. Damages are meant only to compensate - not enrich - the Plaintiffs;

### IV. PRAYER

Defendants, Michelin North America, Inc. and Ford Motor Company requests that the Plaintiffs' claims in this case be governed by and decided under the substantive law of Venezuela. Defendants also request that the Court determine and apply the laws of Venezuela under Rule 44.1 of the Federal Rules of Civil Procedure.

Respectfully submitted

By: _____
    Thomas M. Bullion III
    Attorney-In-Charge
    SDTX No.:  14690
    Texas Bar No. 03331005

OF COUNSEL:
Evan N. Kramer
SDTX No.: 12346
Texas Bar No.: 11704650
William R. Moye
SDTX No.: 34007
Texas Bar No.:  24027553
BROWN MCCARROLL, L.L.P.
1111 Bagby, 47th Floor
Houston, Texas 77002
(713) 529-3110; Fax:  (713) 525-6295

COUNSEL FOR DEFENDANT
MICHELIN NORTH AMERICA, INC.

By: _____

Jaime Saenz
Attorney-In-Charge
SDTX No.:  7630
Texas Bar No.:  17514

By Permission
WPR

OF COUNSEL:
R. Patrick Rodriguez
SDTX No.:  22949
Texas Bar No.:  24002861
RODRIGUEZ, COLVIN,
    CHANEY & SAENZ, L.L.P.
1201 East Van Buren (78520)
P. O. Box 2155
Brownsville, Texas 78522
(956) 542-7441; Fax: (956) 541-2170

COUNSEL FOR DEFENDANT
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Michelin North America, Inc. and Ford Motor Company's Joint Motion to Apply the Laws of Venezuela has been forwarded by U.S. Certified Mail, Return Receipt Requested, to all known counsel of record as shown below on this __17__ day of ___AUGUST___, 2004.

_____
WILLIAM R. MOYE

Juan A. Gonzalez
Ricardo Benavides
THE LAW OFFICES OF MARK A. CANTU
The Atrium
1300 N. 10th Street, Suite 400
McAllen, TX  78501

HOU:312173.1
32302.114

13

# AFFIDAVIT OF ENRIQUE LAGRANGE
## CONCERNING THE LAW OF VENEZUELA

Before me, the undersigned authority, personally appeared Enrique Lagrange, whose identity was verified by passport, and, being by me duly sworn, upon oath deposed as follows:

My name is Enrique Lagrange. I am over the age of 18, have never been convicted of a crime and am competent to make this affidavit. Based upon my knowledge acquired as a long-time professor of law and practicing lawyer in Venezuela, I have personal knowledge of the foregoing statements on Venezuelan law, each of which is true and correct.

## I.    INTRODUCTION.

I graduated *summa cum laude* from the Universidad Central de Venezuela in 1960. A year later, I received a graduate degree from the Criminology Institute at the University of Paris. In 1962, I received a law doctorate from the University of Paris, and in 1963, I received a second law doctorate from the Universidad Central de Venezuela.

I have practiced law for 39 years. I have also been a professor of law at the Universidad Central de Venezuela for 39 years. In May of 1992 until 1998, I was appointed First Alternate Judge for the Civil Chamber of the Supreme Court of Justice (*Primer Magistrado Suplente en la Sala de Casacion Civil de la Corte Suprema de Justicia*) by the National Congress. I have also acted as an arbitrator in civil and commercial cases. My curriculum vitae is attached to this Affidavit.

## II.    THE VENEZUELAN LEGAL SYSTEM.

Venezuela is a civil code country. Therefore, legislation (*i.e.*, the civil code) is the most important source of law, and judicial precedents are not official sources of law in Venezuela. Court decisions are only binding on the parties involved in each particular case and judges are not required to follow other judges' decisions. In practice, however, many judges, particularly appellate court judges, follow the rulings of the Supreme Court of Justice (otherwise their decisions will likely be overruled).

Venezuelan substantive law on the subject of torts and civil and commercial contracts is provided mainly in the Civil Code (*Codigo Civil*) and the Commercial Code (*Codigo de Comercio*), respectively. More specifically, the rules governing torts are provided in Articles 1,185-1,196 of the Civil Code.

Additionally, the "Consumers and Users Protection Law" outlines the rights of consumers and users. *See* Article 6. It is simply a general statement of rights that need to



be implemented through specific legislation, which is yet to be enacted. It does not provide a single cause of action or any remedy for consumers and users.

Finally, the Civil Procedure Code (*Codigo de Procedimiento Civil*) provides procedural rules for proving damages and their quantification, as well as the interpretation of contracts.

The Venezuelan court system is divided into three levels: (1) Courts of First Instance ("*Juzgados de primera instancia*"); (2) Courts of Second Instance ("*Juzgados Superiores*"); and (3) The Court of Supreme Justice ("*El Tribunal Supremo de Justicia*"). The Court of First Instance reviews the facts of a case and applies the law to the facts presented. The Court of Second Instance is an appellate court that also reviews the facts of a case and then applies the law to the facts, within the limits of what has been appealed. So, this court will only review those points raised by the appellant litigants. The Court of Supreme Justice is divided into five specialized chambers. These are: (1) the "constitutional" chamber, (2) the "civil" chamber, (3) the "criminal" chamber, (4) the "political and administrative" chamber, and (5) the "electoral" chamber.

## III.   VENEZUELAN TORT LIABILITY LAW.

Venezuelan tort liability rules are primarily of French origin. These tort liability concepts are incorporated into the Venezuelan Civil Code in Articles 1.185 through 1.196 of the Code. Generally speaking, these legal provisions must be interpreted taking into account their objective and the context in which they were enacted – that is, the legislative intent. *See* Article 4 of the Venezuelan Civil Code. However, Article 4 of the Venezuelan Civil Code also requires that the Code is to be strictly construed according to the plain language of the Code provisions. If the Code does not provide a particular tort theory or remedy, one should not be read into it. As discussed below, Venezuelan law employs a system of civil tort liability based upon the general concept of fault and under which the acts or omissions of a defendant are weighed against the standard of conduct for a hypothetical reasonable person.

### A.   Venezuelan Law Recognizes Liability Based on Negligence.

The tort laws of Venezuela are based on the concept of intent and negligence. Under Venezuelan tort law, a person or legal entity who is at fault (*culpa lato sensu*) is liable for all damages the person or legal entity has caused. Such fault is established by Article 1.185 of the Venezuelan Civil Code, under which tort liability may arise from negligent, imprudent or intentional behavior. This article was based on Articles 1382 and 1383 of the French Civil Code.

Article 1.185 of the Venezuelan Civil Code provides in relevant part: "He who intentionally, or through imprudence or negligence, has caused a damage to another is

2

obliged to repair it."[1] Thus, Article 1.185 provides two types of fault, in the broad sense of
the word (*culpa lato sensu*): (1) a person or legal entity acts intentionally or in bad faith,
causing damages to another person or legal entity (*dolo*); or (2) a person or legal entity,
through imprudence or negligence, causes damages to another person or legal entity (*culpa
stricto sensu*). Both types of fault create the same obligation to pay compensatory damages
to the plaintiff, to put the plaintiff in the same position as if the wrongful act had not taken
place. The Venezuelan concept of fault by negligence is very similar to a negligence action
under Texas law (as reflected in the Texas Pattern Jury Charges that I have referenced in
this affidavit). Although in Venezuela cases are tried not to a jury but rather to a court, if a
Texas court were to apply Venezuelan law, submission to a jury of a liability question
based on negligence would be an appropriate basis for determining liability under
Venezuela law.

1.    The Venezuelan "good head of family" standard of care
comports with the "ordinary care" standard in Texas law.

In Venezuela, as in other countries of Civil Law tradition, there are no rules
establishing specific behaviors or conduct which are considered to be negligent. In other
words, unlike in Texas law, there are no statutory standards of care the violation of which
may give rise to negligence automatically. Rather, in Venezuela, the determination of
whether or not a defendant is at fault, or negligent, is done through a comparison between
the defendant's acts and the hypothetical behavior of the legal standard of an ideal
reasonable person under the same set of circumstances.

The section of the Venezuelan Civil Code dealing with "Obligations" provides the
relevant standard of care for all civil liability, whether based in tort or in contract. This
standard of care is codified in Article 1.270 of the Venezuelan Civil Code, which provides
in relevant part:

The diligence that must be observed in the performance of an obligation,
whether this has for purpose the benefit of one of the parties or for both of
the parties, will always be that of a good head of family, except in cases
involving a contract of deposit.[2]

---

[1] A second part of Article 1.185 provides that "Reparation is also due by any person who exercising a right
exceeds the limits of good faith or the objective for which such right has been granted him." This form of
liability, which was based on Article 74 of the French-Italian Project of a Code on Obligations and Contracts
in 1927, involves the abuse of certain rights that have been granted to a person. Thus, this provision is not
relevant to the dispute between the parties in this case.
[2] The exemption for contractual deposit, as well as a subsequent subsection of Article 1.270, involve other
relationships that are not applicable to this case.

3

This section of the Civil Code applies to all civil claims, meaning that the articles would apply equally to contract or tort claims in civil law. This standard of care expressed in Article 1.270 would govern the determination of negligence or imprudence provided in Article 1.185. Thus, the Venezuelan "good head of family" standard of Article 1.270 would apply to the tort claims expressed in Plaintiffs' petition.

This Venezuelan standard of liability is similar to that which would be used in Texas law. I have reviewed the following definitions of "negligence" and "ordinary care" contained in the Texas Pattern Jury Charges:

> "Negligence" means the failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

> "Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Texas Pattern Jury Charges § 2.1. These concepts of "negligence" and "ordinary care" are virtually identical to the concept of the "good head of family" standard and could be used in a case in Texas seeking to apply Venezuelan law.

    2.    **Venezuelan law would require causation to be based on the "direct and immediate cause."**

As a general rule, there are three elements or requirements for any action for torts in Venezuela: (1) an act or omission by the defendant; (2) damages suffered by the plaintiff; and (3) a cause-effect relationship (link of causality) between the one and the other. Thus, the judge must look at the damage claimed by the plaintiff and determine whether or not such damage was caused by the negligence or intentional act of the defendant. This requires the plaintiff to establish causation as to the defendant. Indeed, the plaintiff bears the burden of proof on establishing a negligence or intentional tort cause of action and damages as to the defendant.

The requirement of causation in Venezuela is established by statute. Article 1.275 of the Venezuelan Civil Code provides the relative standard of causation that must be proven by the plaintiff. Article 1.275 provides:

> Even if the lack of performance of the obligation results from bad faith of the debtor, the damages relating to the loss suffered by the creditor and to

---

[3] In Venezuela, as in other countries of a Civil Law tradition, the ideal reasonable person is called a "good head of family" (*buen padre de familia* or *bonus pater familias*). This reference to a good head of family is of Roman origin and was included in the French Civil Code.

4

the profit from which he has been deprived, must not be extended but to those that are an immediate and direct consequence of the lack of performance of the obligation.

Although Article 1.275 is written in terms of contract claims, Venezuelan authorities are clear that the standards for causation in Article 1.275 would apply equally to tort claims. The section of the Venezuelan Civil Code in which Article 1.275 appears is directed at all *obligations* in civil liability. Moreover, as is reflected in the statute, the standard of causation required by Article 1.275 does not vary due to the degree of the culpability of the defendant. Thus, just as Article 1.275 would provide the same standard of causation "Even if the lack of performance of the obligation results from bad faith," the standard of causation required by Article 1.275 would be the same regardless whether the plaintiff was seeking to establish liability under Article 1.185 based on negligence or intentional harm. Plaintiffs in this case would have the burden to establish that accident was the direct and immediate cause of a party's damages.

From the book entitled Texas Pattern Jury Charges, I have reviewed a proposed question for negligence (Texas Pattern Jury Charge § 4.1) and an instruction for causation (Texas Pattern Jury Charge § 2.4). Given that Venezuelan law requires a "direct and immediate" cause, I have modified these issues to reflect the proper standard for causation under Venezuelan law. In my opinion, the following question and instruction would be appropriate under Venezuelan law:

> Was the negligence, if any, of those named below, the direct and immediate cause of the accident in question?
>
> A "direct and immediate cause" means an act or omission that, in a natural and continuous sequence, was necessary for the accident to have occurred, meaning that the accident would not have occurred without the act or omission. In order to be a direct and immediate cause, the act or omission complained of must be such that, from the perspective of a reasonable person using ordinary care, the accident would have been likely or expected to occur.

Again, although in Venezuela the matter would be decided by the court, submission of these issues with this wording to a jury in Texas would not be inconsistent with standards under Venezuelan law for establishing the liability of a defendant for the causation of an accident.

**B.     There Is No Strict Products Liability under Venezuelan Law.**

It is my understanding that the Plaintiffs in this case are bringing a strict liability claim. Venezuela does not recognize strict civil liability of the manufacturer or designer

5

of allegedly defective products. Neither the Venezuelan Civil Code nor any other law provides any clear or reasonable basis for creating a remedy in favor of a strict civil liability of the manufacturer or designer. This reason is decisive because Venezuela is a civil code country and the statutes enacted by the national congress are the formal sources of law. Decisions of the Supreme Court of Justice or other lower courts do not constitute formal precedents that have to be observed in future cases, and even if particularly important decisions are issued by the Supreme Court, they are not binding for lower courts. *See* Luis Maria Olaso, *Introduccion al Derecho: Introduccion a la Teoria General del Derecho*, Tomo II, Universidad Catolica Andres Bello (Caracas 1997), pp. 201-202. As a practical matter, however, many judges, particularly appellate court judges, follow the rules of the Supreme Court (otherwise their decisions are likely to be overturned). In any event, there are no decisions of the Supreme Court of Justice, nor, to the best of my knowledge, any other Venezuelan court, that has applied or has attempted to construct or referred to the strict civil liability of the manufacturer or designer.

Some authors have argued that the Venezuela should recognize strict civil liability. *See* James O. Rodner, *La Responsabilidad Civil del Fabricante en el Derecho Venezolano*, Estudios de Derecho Civil Libro Homenaje a Jose Luis Aguilar Gorrondona, Volumen II (2002); Victor Hugo Guerra, *La responsabilidad civil extracontactual por productor (sic) en el Derecho Internacional Privado Estudio comparado* (Caracas. 2002). They base their arguments on Article 1.193 of the Civil Code. Mr. Rodner argues that a person who guards an inanimate object that causes a damage has to repair such damage, unless he can prove that his damage was really caused by the victim, a third party or a fortuitous event or an event of force majeure. According to this author, a product manufacturer is the "guardian of the structure"—that is, the guardian of the product it manufactures—and, therefore has to repair damages caused by the product if the product is defective. The theory, which distinguishes between "guardian of the structure" and "guardian of the behavior," was developed in France in 1946 by M. Goldman. *See* Jacques Flour and Jean-Luc Aubert, *Les Obligations*, Volume II, Sources: Le Fait Juridique, 4th Ed. (Armand Colin), p. 244, n. 1.

This theory has no basis in Venezuelan law, and I know of no Venezuelan court that has ever applied such a theory. First, Article 1.193 (First Paragraph) refers <u>only</u> to persons who guard (or have *custody*)[d] of a product:

> Every person is responsible for the damage caused by things (or objects) that he has under his guard (custody), unless he proves that the damage was caused

---

[d] In Venezuela, custody and guard are synonymous. Real Academia Española, Diccionario Manual E Ilustrado de la Lengua Española, 4th Ed. Revisada (Espasa-Calpe, S.A., Madrid 1989). "Custody" is defined as the act or effect of caring carefully or with vigilance. *Id.* at p. 473. To "guard" means to take care of, conserve or defend a person or a thing. *Id.* at p. 796.

6

by the fault of the victim, by a third party or by fortuitous events or force majeure.

Article 1.193 applies only to the person who has custody of a thing (i.e., the owner of a rotten tree that falls on his neighbor's property and causes damages). Neither Article 1.193 nor any other Venezuelan law provision refer to manufacturers or designers as custodians of their products, and I know of no Venezuelan court that has ever applied such a theory to a manufacturer or designer of a product. This is important because Article 4 of the Venezuelan Civil Code states that "the law must be attributed the sense that appears as evident from the proper meaning of the words according to the connection between them and the intention of the legislator."

Second, the legislative history of Article 1.193 does not support the "guardian of the structure" theory. Article 1.193 was adopted in 1942 from the Franco-Italian Project of Codes on Obligations and Contracts, which was published in 1927. Neither, in 1927 when the Franco-Italian Project of Codes on Obligations and Contracts was published, nor in 1942 when the Venezuelan National Congress adopted the equivalent of Article 1.193 in the Franco-Italian Project, had the distinction between "guardian of the structure" and "guardian of the behavior" been formally formulated. The distinction was first formally formulated in 1946 by Mr. M. Goldman in his doctoral thesis. The Venezuelan National Congress has not modified Article 1.193 to incorporate the "guardian of the structure" theory.[3]

Further, this theory has never been mentioned, applied or embraced by the Supreme Court of Justice of Venezuela, nor, to the best of my knowledge, any other Venezuelan court even though the theory was first suggested in Venezuela more than twenty-five years ago. *See* James O. Rodner, *La Responsabilidad Civil del Fabricante en el Derecho Venezolano*, initially published in la Revista de la Universidad Catolica Andres Bello, vol. 23 (1977), p. 235 y sigs.

I also understand that Plaintiffs, based on claims of product defect, have pleaded a cause of action in this case for breach of implied warranty of merchantability under Section 2.314 of the Uniform Commercial Code and breach of implied warranty for fitness for a particular purpose under Section 2.315 of the Uniform Commercial Code. Plaintiffs are seeking to recover personal injuries for these implied warranty theories. Venezuela has not enacted a commercial code like the Uniform Commercial Code that has been enacted by many states in the United States.

---

[3] In fact, this theory has been widely criticized in France. *See* François Terre, Phillipe Simler and Yves Lequette, *Droit Civil, Les Obligations*, 7th Edition (Dalloz, Paris 1999), pp. 693-696; Genevieve Viney, *Les Obligations, La Responsabilite: conditions*, Droit Civil under the direction of Jacques Ghestin (L.G.D.J., Paris 1982), pp. 800-805; Boris Starck, *Droit Civil, Obligations* (Librairies Techniques, Paris 1972), pp. 199-200; Alex Weill, *Droit Civil, Les Obligations*, (Dalloz, Paris 1971), pp. 703-705; Jacques Flour and Jean-Luc Aubert, *Les Obligations*, Volume II, Source: Le Fait Juridique, 4th Ed. (Armand Colin), pp. 247-248

7

No Venezuelan law has any articles similar to the implied warranties created in the United States under the Uniform Commercial Code sections 2.314 or 2.315 that would give rise to a claim for damages for personal injuries.

Generally, under Venezuelan law, rights under contracts can be enforced only by and between the parties to those contracts. In other words, only parties in privity may enforce contract rights such as any warranties that might be implied in those contracts. Thus, in a sales transaction, a buyer would have contract rights against the retailer who sold him a product, but not against more remote designers or manufacturers of the product who did not sell the product directly to the buyer. An action against a person who is not a party to a contract would have to be based upon articles 1.185 to 1.196 of the Venezuelan Civil Code, regarding torts, for which the requirements set forth in those articles would have to be met.

Under Venezuelan law, it is generally recognized (as discussed in the next section) that a shareholder, including a parent corporation, is not generally liable for the torts or contractual obligations of a subsidiary corporation. Thus, as a general rule, a parent corporation would not be liable for any breach of warranties made by a subsidiary company in connection with the manufacture or sale of a product.

C.    Venezuelan Law Would Not Recognize Derivative or Vicarious Liability Based on the Acts of a Distinct, Separate Corporation.

I understand that Plaintiffs have alleged that the American-incorporated companies Firestone and Ford should be held liable for the acts of their corporate subsidiaries or for the acts of other companies. Whether Plaintiffs in this case base their theory on claims or "alter ego," "joint enterprise," or "agency," this concept of vicarious liability is not generally accepted in Venezuela. Although strict liability may arise in the employer-employee or parent-minor relationship (where one has responsibility for the acts of the other), there are no such provisions for corporate affiliates. This theory would violate the terms of Article 1.185, which provides that "He who intentionally, or through imprudence or negligence, has caused a damage to another is obliged to repair." Under Article 1.185, tort liability would exist for the person or entity who caused the damage.

Moreover, such vicarious liability for a corporation would violate Venezuelan commercial laws. I am told that Firestone's corporate subsidiary in Venezuela is Bridgestone Firestone Venezolana C.A. and that Ford's corporate subsidiary is Ford of Venezolana, S.A. As such, these companies would constitute corporate entities separate from their corporate parents. The rules concerning corporate liability are contained in Article 201 of the Venezuelan Commercial Code. Article 201 provides in relevant part:

Commercial companies are of the following kinds:

8

(3)    Corporations, called the anonymous company (compania anonima) in which the corporation obligations are guaranteed by a definite capital in which the associates (stockholders) are not liable except up to the amount of their shares (or stock).

In addition, Article 201 also provides that anonymous stock companies "constitute a juridical person distinct from that of a stockholder." Article 201 reflects that corporations are distinct and are not to be held liable for the acts of other corporations or entities. Thus, Venezuela would have no provision allowing, for example, Firestone to be held liable for the acts of its corporate subsidiary in Venezuela.

**D.    Venezuelan Law Recognizes Certain Aspects of Comparative Responsibility.**

Although Venezuela's laws on apportioning responsibility among the parties differs from that provided under Texas law, a few basic principles of proportionate responsibility are incorporated into Venezuelan law. These concepts will be discussed below, following with a suggested approach for implementing these Venezuelan legal principles in any submission to a jury in Texas.

1.    **A plaintiff's recovery will be diminished to the extent that the plaintiff contributed to the damages by his conduct.**

A fundamental principle in Venezuelan law is that a plaintiff may not recover to the extent that the plaintiff's damages were caused solely by an act or omission of the plaintiff. Article 1.189 of the Venezuelan Civil Code provides:

When the act or omission of the victim has contributed to cause the damage, the obligation to repair will be diminished to the extent to which the victim has contributed to it.

For example, if the plaintiff failed to use, or alternatively failed to use properly, an available and properly operational seat belt, the defendant may claim that the damages must be reduced to the extent that such damages were found to be caused by the plaintiff. Similar results could be obtained if the plaintiff was driving too fast, carelessly or erratically, the driver failed to maintain control of the vehicle, or was otherwise violating traffic regulations for the safe operation of a car.

It is important to note that, unlike Texas law, this concept of contributory responsibility of the plaintiff is not based upon the legal fault, or negligence, of the

9

plaintiff. Thus, in order for a plaintiff to be responsible for a portion of damages, he need not be found to be negligent. Rather, a defendant need only show that the damages for which the plaintiff seeks recovery were the result of, or caused by, an act or omission of the plaintiff.

A defendant's defense to responsibility for damages caused by a victim also extends to those plaintiffs who claim damages through, or derivative of, the victim's injury. For example, relatives of the victim who seek to recover moral damages based upon the injury to the victim would likewise be subject to a proportionate reduction of damages based upon the proportionate responsibility attributed to the victim.

> ### 2.  Venezuelan law provides for joint liability of responsible defendants with rights of contribution.

Under Venezuelan law on proportionate responsibility, defendants are always jointly liable for the damages caused to the plaintiff regardless of the percentage responsibility determined for a particular defendant. Of course, any damages that were caused as the result of an act or omission of the plaintiff are excluded from this potential liability. The concept of joint liability is contained in Article 1.195 of the Venezuelan Code, which provides:

> When the wrongful act or omission is imputable to various parties, these parties are jointly obliged to repair the damage that has been caused.

Accordingly, if more than one defendant is found to be negligent, or responsible, for a portion of plaintiff's damages, any one of these defendants may be required to satisfy the amount of damages found to be suffered by the plaintiff (less any damages caused by the plaintiff or the victim if the plaintiff seeks to recovery based upon the injury of a relative).

Although this joint liability scheme potentially requires a culpable defendant to pay more than its proportionate responsibility for those damages, Venezuelan law provides a mechanism for obtaining contribution from other responsible parties. Article 1.195 of the Venezuelan Civil Code provides the following basis for obtaining contribution from another defendant:

> One who has completely paid the totality of the damages has a cause of action against each of the jointly responsible parties, this part will be fixed by the judge according to the gravity of the fault committed by each one of them. If it is impossible to establish the degree of responsibility of the jointly responsible parties, the distribution will be made in equal parts.

Under Article 1.195, to the extent that a defendant is forced to pay more than its required proportionate share of plaintiff's damages, that defendant has a right to contribution from another defendant or party. Thus, although Article 1.195 envisions that a judge will

xpportion responsibility among the parties, a proportionate responsibility finding could be used to determine the parties' ultimate contribution rights under Venezuelan law.

Interestingly, a plaintiff who is found to be responsible is subject to the contribution provisions of Article 1,195. In most cases, however, the contribution from a plaintiff is avoided by the provisions in Article 1.195 whereby the plaintiff's recovery is diminished by the percentage of plaintiff's own responsibility for his damages. Where there are multiple plaintiffs, however, there is exists the possibility where one plaintiff may be responsible for a portion of another plaintiff's damages. For example, where one plaintiff is driving a car in an accident where both the driver and a passenger are injured or killed, the driver may be found to be partly responsible for those injuries. To the extent that the driver is found to be responsible for the passenger's injuries, that driver would be subject to the contribution provisions of Article 1.195 with respect to any recovery sought by the passenger.

Venezuelan law would also give effect to a settlement based upon a defendant's proportionate responsibility. For example, if two defendants were found to be responsible for the plaintiff's damages and the plaintiff settled with one of the defendants, the non-settling defendant's potential responsibility for plaintiff's damages would be reduced by the percentage amount of the settling defendant's proportionate responsibility. In other words, settlement with a party reduces the plaintiff's recovery from other defendants by the percentage of the settling defendant's proportionate responsibility.

3. Submission of a modified jury question on proportionate responsibility would be appropriate.

With the above concepts of Venezuelan proportionate responsibility in mind, it would be appropriate to submit a jury question on proportionate responsibility to a Texas jury if Venezuelan law were to be applied to this case. I have reviewed a suggested question on proportionate responsibility found in Section 4.3 of the Texas Pattern Jury Charges. Because Venezuelan law would permit the proportionate responsibility of a plaintiff to be conditioned on causation without a corresponding finding of negligence, the proportionate responsibility question suggested by Texas Pattern Jury Charges § 4.3 must be modified in the following respects in order to reflect Venezuelan law.

First, the conditioning instruction suggested in Section 4.3 of the Texas Pattern Jury Charges should be deleted because it predicates a finding of negligence and Article 1.195 does not require negligence on the part of the plaintiff. Second, the question on proportionate liability in Section 4.3 of the Texas Pattern Jury Charges should be modified to exclude reference to negligence. Accordingly, the proportionate responsibility question should read as follows:

Question No. 2:

11

What percentage of responsibility do you find to be attributable to the following parties for the cause of the accident?

Such a submission would comport with Venezuelan legal principles on comparative responsibility.

4.    Submission of a jury instruction on plaintiff's mitigation of damages would be appropriate.

In addition to causation of the accident, Article 1.195 of the Venezuelan Civil Code would also apply to instances where the amount of damages suffered by the plaintiff were caused by the plaintiff's failure to seek appropriate treatment for his damages. I understand that this Venezuelan concept is similar to the Texas law concept on mitigation on damages. I have reviewed the following exemplary instruction on mitigation of damages in Texas and believe that it would comport with the proportionate responsibility principles of Venezuelan law:

> Do not include any amount for any condition resulting from the failure, if any, of *Paul Payne*, to have acted as a person of ordinary prudence would have done under the same or similar circumstances in caring for and treating *his* injuries, if any, that resulted from the occurrence in question.

Texas Pattern Jury Charge § 8.9.

5.    Submission of a modified jury instruction on "Sole Cause" would be appropriate.

Because, under Article 1.189 of the Venezuelan Civil Code, the plaintiff cannot claim reparation for damages to the extent that his own behavior has caused them (Romans used to say "volenti non fit iniuria"), a plaintiff has no right to damages at all if he is the *sole cause* of the damages. Moreover, under Articles 1.271 and 1.272, the defendant will not found to be liable when an extraneous cause (*i.e.*, a third party or some unrelated cause) was the *sole cause* of the accident. For example, if a product was misused or abused by the plaintiff or third parties, and such abuse or misuse is the sole cause of the accident, a defendant cannot be held to be liable. Since there is no liability if the damage is due to the plaintiff's behavior or to any other extraneous cause, then, if changes to the tire or the vehicle (or other conditions) are the sole cause of the accident, then the defendants cannot be found to be liable.

I have reviewed a jury instruction on "sole proximate cause" in Texas Pattern Jury Charges § 3.2 that is similar to the Venezuelan restrictions on sole cause. If this instruction is modified to reflect the proper standard for causation in Venezuelan law (*i.e.*, direct and immediate cause), the following instruction would be a proper reflection of the doctrine of sole cause in Venezuelan law:

12

There may be more than one direct and immediate cause of any event, but if an act or omission of any person was the "sole cause" of an occurrence, then no act or omission of any other person could have been a direct and immediate cause.

As modified above, this instruction could be submitted properly in conjunction with the instruction of direct and immediate cause that was proposed above.

IV.    VENEZUELAN DAMAGES LAW.

Just as the standard of causation in Article 1.275 applies regardless of the culpability of the defendant (*i.e.*, whether damages were caused by the negligence of the defendant or through bad faith or the result of intentional harm), the damages recoverable under Venezuelan law are not measured according to the culpability of the defendant. Article 1.185 simply provides that one who causes damages is bound to repair it. Likewise, Article 1.196 of the Civil Code provides that the obligation of reparation extends to all damages caused by the wrongful act.

In Venezuela, the recovery of damages is governed by the "principle of integral reparation" ("principio de la reparacion integral"). Central to this principle is the idea that the amount of compensation due to the plaintiff has to be commensurate with the magnitude of the damage caused to him. In other words, if the amount of compensation exceeds the value of damages caused to the plaintiff, it would mean that the plaintiff has been unjustly enriched. This is not permissible and is contrary to Venezuelan law. At the same time, if the amount of compensation is less than the value of the damage, it would mean that the plaintiff would not have been fully compensated. The goal of the principle of integral reparation, therefore, is to put the person in the same position he would have been in but for the damage.

The Venezuelan Civil Code establishes the principle of integral reparation through two kinds of damages—"economic" and "moral." Article 1.196, paragraph 1 of the Venezuelan Civil Code. This article states that the obligation to repair extends to any economic or moral damage caused by the wrongful act. It does not provide for any additional compensation — or enrichment — of the plaintiff.

A.    Economic Damages May Be Recovered on Behalf of the Decedent.

Economic damages are defined as any loss, deprivation or injury which has an economic dimension, including (a) the emergent damage ("daño emergente") or the costs and expenses due to the defendant's behavior; and (b) the lost profits ("lucro cesante") or the absence of a gain reasonably expected. (See Article 1.273 of the Civil Code). Here, for example, the victim of a car accident can claim the amount needed to repair his own car and to satisfy any medical bills, as well as the amount of money he would have earned

13

during the time he was unable to work. Here, I understand that Plaintiffs are not seeking damages for lost profits or lost earnings. Thus, the only economic damages Plaintiffs would be entitled to are medical expenses and funeral expenses. Moreover, these expenses must be *reasonable* and *necessary*. In the case of future medical expenses (*i.e.*, where the victim is only injured), such expenses must also be predicted with reasonable probability.

**B.    Moral Damages May Be Recovered by the Relatives of the Decedent.**

**1.    Definition of moral damages.**

Moral damages consist of those damages of psychological or social content, for example, the pain, distress, grief or discredit, which strictly speaking, have no money equivalent, but are nevertheless compensated in cash. (*See* Article 1.196 of the Civil Code). Article 1.196 provides the following examples of moral damages: bodily injury, injury to the honor or reputation of a person or his family, restriction of freedom, violation of domicile, violation of secret, and grief due to the death of a husband, wife, or a blood or marriage relation.

**2.    Venezuelan law permits relatives to recover moral damages similar to wrongful death damages in Texas.**

Article 1.196 of the Venezuelan Civil Code permits the relatives of the victim to recover moral damages that they suffer as a result of the death of the victim. Article 1.196 thus provides that the judge may also grant compensatory damages to the victim's spouse or family (blood relations) as indemnity for grief suffered in the case of the victim's death. The types of moral damages available for this grief to family members are similar to the types of damages available to wrongful death claimants in Texas law. Indeed, I have reviewed damages questions from the Texas Pattern Jury Charges for the damages available under Texas law for a surviving spouse (Texas Pattern Jury Charges § 9.2), for a surviving child (Texas Pattern Jury Charges § 9.3), and for surviving parents (Texas Pattern Jury Charges §§ 9.4, 9.5). The elements of damages in these Texas Pattern Jury Charge questions for "mental anguish" and "loss of companionship and society" are very similar to the types of moral damages a surviving relative would be able to recover under Article 1.196 of the Venezuelan Civil Code. Accordingly, a damages instruction defining the following types of recoverable damages would not be inconsistent with Venezuelan law:

"Mental anguish" means the emotional pain, torment, and suffering experienced by [the plaintiff] because of the death of [the victim].

"Loss of companionship and society" means the loss of the positive benefits flowing from the love, comfort, companionship, and society that [the

14

plaintiff], in reasonable probability, would have received from [the victim] had he lived.

Venezuela imposes strict limitations on the types of economic (material) damages and the degree of proof required. I understand, however, that Plaintiffs are not seeking to recover such material damages as relatives.

> 3.    Moral damages are personal to the individual; they do not survive the death of the individual.

In death cases, moral damages may only be recovered by the heirs of the decedent for their *own* grief. Moral damages may not be recovered by the heirs of the decedent for the *decedent's* grief if the decedent did not initiate a lawsuit before his death. *See* Oscar Ochoa, *La Intransmisibilidad por Via de Herencia de la Accion for Daño Moral, passim*; Eloy Maduro Luyando and Emilio Pittier Sucre, *Curso de Obligaciones Derecho Civil III, Tomo I* (Caracas 1999), *passim*. In other words, a cause of action for moral damages is not transferable to the heirs of the decedent. Thus, unlike Texas law, the moral damages suffered by the decedent do not survive his death.

The explanation for this rule is simple, moral damages are of a personal nature. *Id.* They are inherent to the person who suffered them. *Id.* Therefore, if a person dies without initiating a lawsuit, the cause of action for moral damages dies with him. *Id.* Furthermore, the purpose of moral damages is to provide the victim, himself, an award that will give the victim economic means opt to provide himself spiritual satisfactions that in some way compensate for his sufferings. *Id.* Stated differently, the purpose of moral damages, like all damages in Venezuela, is to repair and *not* to impose a penalty or punishment on the author of the wrongdoing. *Id.*

C.    <u>Punitive Damages Are Not Available; Damages Are Meant Only to Compensate – Not Enrich – the Plaintiff.</u>

I understand that Plaintiffs in this case are seeking an award of punitive damages, which I understand are also referred to as exemplary damages under Texas law. I have been asked to determine whether such damages would be available under Venezuelan law. For this purpose, I have reviewed the definition of punitive damages given by Black's Law Dictionary, which defines punitive damages as:

> damages awarded in addition to the actual damages when the defendant acted with recklessness, malice or deceit. Punitive damages, which are intended to punish and thereby deter blameworthy conduct....

Black's Law Dictionary p. 396, Seventh Edition, West Group, St. Paul, Minn. (1999).

15

I have also reviewed an instruction defining exemplary damages in the Texas Pattern Jury Charges. I have reviewed Section 9.6B of the Texas Pattern Jury Charges, which provides:

> What sum of money, if any, should be assessed against *Don Davis* [the defendant] and awarded to *Paul Payne* [the plaintiff] as exemplary damages for the death of *Mary Payne* [the decedent]?

> "Exemplary damages" means any damages awarded as a penalty or by way of punishment. Exemplary damages includes punitive damages.

> In determining the amount of exemplary damages, you shall consider evidence, if any, relating to —

> a.   The nature of the wrong.

> b.   The character of the conduct involved.

> c.   The degree of the culpability of the wrongdoer.

> d.   the situation and sensibilities of the parties concerned.

> e.   The extent to which such conduct offends a public sense of justice and propriety.

> f.   The net worth of *Don Davis* [the defendant].

Texas Pattern Jury Charges § 9.6B.

I have also reviewed another instruction that defines exemplary damages as follows:

> "Exemplary damages" means an amount that you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount that you may have found as actual damages.

Texas Pattern Jury Charges § 9.6A. Based on these above materials, it is clear that punitive or exemplary damages are not compensatory damages, but are meant to punish the wrongdoer, serving to enrich the plaintiff beyond reparation of the damages he has suffered.

The notion of punitive damages is completely unknown to the Venezuelan legal system. The Venezuelan Civil Code recognizes only two kinds of damages — economic damages (material damages) and moral damages (discussed previously in conjunction with Article 1.196 of the Venezuelan Civil Code). The Venezuelan Civil Code does not permit

16

or recognize punitive damages. This is significant because, under Article 4 of the Venezuelan Civil Code, a judge must interpret the Code strictly, giving the language of it the meaning that arises from the proper sense of the words it employs and from the intention of the legislature.

Further, both material and moral damages are in nature of *reparation* — they are compensatory only. The term reparation, which is in Spanish synonymous to indemnification, purports to award a monetary amount that is sufficient to economically restore the wrongdoing, so that the beneficiary of the compensatory damages will, after receiving such amount, be put back in the same economic situation he was in before the accident occurred.

In other words, in Venezuela civil tort liability must not result in the enrichment of the victim. This means that the amount of compensation must not exceed the economic value of the damage itself. From this concept it follows that the notion of punishment has nothing to do with the concept of reparation of damages. A judicial decision that awards money in the concept of *punitive damages* — damages based on *punishing the defendant* rather than curing the harm to the victim — would be contrary to Venezuelan law and against Venezuelan public policy.

I understand that Plaintiffs may try to rely on recent language discussing the quantification of moral damages from a decision of the Supreme Court of Justice in Venezuela in order to argue that they may recover punitive damages — despite the absence of a Code provision allowing punitive damages and despite the fact that such damages are non-compensatory. I understand that the Plaintiffs are relying on a discussion of moral damages that includes consideration of the fault of the defendant. Plaintiffs' argument is taken out of context.

The quantification of moral damages was recently discussed by the Civil Chamber of the Supreme Court of Justice in a labor accident, Cause No. 96-675, with the opinion dated 10/03/1999. Concerning the determination of moral damages, the Supreme Court of Justice stated:

In articulating all that has been said, the judge that hears about a cause of action for moral damages must examine the specific case, analyzing the following aspects: (a) the magnitude of the damages, whether physical or emotional (known as the variable degree of moral suffering); (b) the degree of culpability of the defendant or his participation in the accident or illicit act that was the cause of the damage (whether strict liability or liability based on fault respectively); (c) the conduct of the victim; (d) the degree of education and culture of the plaintiff; (e) the economic and social position of the plaintiff; (f) the economic capacity of the defendant; (g) possible mitigating circumstances for the defendant; (h) the nature of satisfactory

17

compensation that would be needed by the victim to have a situation similar to the one previous to the accident or sickness; and finally (i) pecuniary reference appreciated by the judge in order fix the amount of the compensation that would be indemnification that he considers equitable and just for the concrete case.

. . . .

As a consequence, the judge must expressly state in his decision the analysis that he has made of all the objective aspects mentioned in the preceding paragraph expressing the reasons that justify his estimate and that led him to fix a reasonable indemnification, that permits verification of the legality of the amount of the moral damages determined by the judge.

The Court then explains that it is of vital importance for the judge to explain the reasons for his decision because the central purpose of awarding moral damages, according the Venezuelan jurisprudence, is to compensate the victim for the pain and suffering that has affected his moral patrimony and not to enrich him. *See* CSJ [Supreme Court of Justice], SCC [Civil Chamber] 26-11-1987.

What has been said above is of vital importance, because certainly, as the judicial precedents have stated "it belongs to the prudence and discretion of the Magistrate, the fixation of the amount for the concept that would mean enriching the victim and no true reparation of the pain and suffering that affects his moral patrimony [of the victim], normally of difficult quantification." CSJ [Supreme Court of Justice], SCC [Civil Chamber] 26-11-1987.

The explanation of the Supreme Court of Justice seems to confirm that the above factors for moral damages could not be used to fix damages that are more than compensating the plaintiff for his actual damages. The culpability of the defendant should be indifferent for the judge because the judge must fix a reasonable degree of damages based on the degree of damage to the victim, not based on the degree of culpability of the defendant. The factors discussing the culpability of the defendant, as well as the culpability of the plaintiff, could be taken as referring only to the court's determination of the proportionate responsibility for the plaintiff's damages. This is also confirmed by the Court's clarification that the culpability is to be weighed regardless of whether the liability is objective (strict liability for certain situations) or subjective (based upon negligence or intentional harm). Moreover, the factor regarding the economic capacity of the defendant is a mitigating factor designed to ensure that a defendant is not ruined by the inability to pay the amount of actual damages.

18

An award of moral damages increasing the amount of damages based on the culpability of the defendant, as opposed to the actual damages the plaintiff has suffered, would result in an impermissible enrichment of the plaintiffs. Such a result would be contrary to fundamental principles of Venezuelan law.

FURTHER AFFIANT SAYETH NOT.

_Enrique Lagrange_

Enrique Lagrange

Subscribed to before me, the undersigned authority, on this the ___ day of ____ MAY 16 2003, 2003.

_[signature]_

NOTARY PUBLIC

**Jill A. Nystrom**
Consul of the United
States of America

19