## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
**FILED**

DEC 0 8 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MARCOS SANCHEZ, INDIVIDUALLY AND, | § | |
| AS REPRESENTATIVE OF THE ESTATE OF | § | |
| NELSON NAPOLEON SANCHEZ | § | |
| | § | |
| AIDO MANUEL GARRIDO AND IVON | § | |
| ELENA PARRA DE GARRIDO, | § | |
| INDIVIDUALLY AND AS | § | |
| REPRESENTATIVES OF THE ESTATES OF | § | |
| EVELIN CAROL GARRIDO DE SANCHEZ | § | |
| AND DANIEL ENRIQUE SANCHEZ | § | |
| GARRIDO, A MINOR; | § | |
| | § | CIVIL ACTION NO. B-04-080 |
| MAXIMILIANO PEREZ CEBALLOS | § | |
| AND PETRA MARIA COLMENAREZ, | § | |
| INDIVIDUALLY AND AS REPRESENTATIVE | § | |
| OF PEDRO NORBERTO PEREZ | § | |
| COLMENAREZ | § | |
| | § | |
| VS. | § | |
| | § | |
| MICHELIN NORTH AMERICA, INC. | § | |
| AND FORD MOTOR COMPANY | § | |
| | § | **HEARING & ORAL** |
| | § | **ARGUMENT REQUESTED** |

---

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS

---

TO THE HONORABLE JUDGE OF SAID COURT:

Come Now Plaintiffs, Marcos **Sanchez, Individually, and as Representative of the**

**Estate of Nelson Napoleon Sanchez;   Aido Manuel Garrido and Ivon Elena Parra De**

**Garrido, Individually and as Representatives of the Estates of Evelin Carol Garrido de**

Sanchez and Daniel Enrique Sanchez Garrido, a Minor; Maximilliano Perez Ceballos and Petra Maria Colmenarez, Individually and as Representatives of the Estate of Pedro Norberto Perez Colmenarez (hereinafter referred to collectively as "Plaintiffs") and complain of Defendants, Michelin North America, Inc. and Ford Motor Company, and would show the Court as follows:



# TABLE OF CONTENTS

I.  INTRODUCTION...................................................................................... 5

II. ARGUMENTS AND AUTHORITIES................................................... 6

    A.    **_Prima facie_ it is not vexatious or oppressive, within the doctrine under consideration, for Plaintiffs to sue an American corporation in the United States................................................................................... 6**

    B.    **Plaintiffs' choice of forum should be upheld because an adequate alternative forum does not exist under Venezuelan law..................................... 7**

        1.    _A Venezuelan court would not exercise jurisdiction of this case under Art. 40(2) because the "facts verified" support jurisdiction in the United State.................................................................................... 8_

        2.    _A Venezuelan court will not exercise jurisdiction under Art. 40(4) unless both parties expressly and unequivocally submit to jurisdiction........... 9_

    C.    **The balance of private factors as enunciated by the Supreme Court in _Gulf Oil v. Gilbert_, favor Plaintiffs' choice of forum in Texas..........................10**

        1.    _The deference accorded to Plaintiff choice of forum requires the Defendant to show that the private and public factors clearly point towards the alternate forum....................................................... 9_

        2.    _In considering the relative importance and availability of various types of evidence and keeping in mind that liability will be the most crucial issue in this case, retaining jurisdiction in the United States is favored........................................................................... 11_

        3.    _Inadmissibility of certain evidence in Venezuelan courts favors maintaining jurisdiction in the United States................................... 13_

        4.    _Where a view of premises is unlikely, this private factor merits little consideration in a forum non conveniens analysis........................... 14_

        5.    _Where no potential third parties exist, this private factor merits no consideration.................................................................. 14_

        6.    _The volatile Venezuelan political situation compromises any convenience of trying this case in a Venezuelan court..................................... 15_

        7.    _Plaintiffs' choice of forum does not unduly oppress or vexate the Defendant.................................................................... 16_

**D.    The balance of public factors as enunciated by the Supreme Court in *Gulf Oil v. Gilbert*, favor Plaintiffs' choice of forum in Texas**............................ 16

1.    *The U.S. interest in the resolution of this case favors maintaining jurisdiction*.......................................................................... 16

2.    *Venezuela's willingness to cede some of its interest in cases such as this favors maintaining jurisdiction*................................................. 19

3.    *Texas choice of law favors retaining jurisdiction*............................ 19

**III.    CONCLUSION AND PRAYER**............................................................. 20



## I. INTRODUCTION

An unreasonably dangerous design defect in the stability and handling of a 1999 Ford Explorer Sport Wagon and a B.R. Goodrich Radial All Terrain T/A killed Nelson Napoleon Sanchez, Evelin Carol Garrido de Sanchez, Daniel Enrique Sanchez Garrido, a minor and Pedro Norberto Perez Colmenarez. On March 24, 2002, one of the tires suddenly, unexpectedly and completely failed, the vehicle became uncontrollable, tipped up off an asphalted road in good condition, rolled over and brought about the death of the above named people.

Jurisdiction is proper in this Court. At its heart, this case is based on strict liability. The Plaintiffs will be called upon at trial to prove: (1) that the B.R. Goodrich Radial All Terrain T/A is defective; (2) that the 1999 Ford Explorer is defective; (3) that the Ford Explorer reached the decedent without substantial change in its condition from the time it was originally sold; (4) that the defect rendered the Ford Explorer unreasonably dangerous; and (5) that the defects caused fatal injuries to the driver and passengers.

The Defendants' principal places of business are in the United States. The Defendants are authorized to conduct business in Texas and derive substantial economic profits from this state. The critical evidence needed to prosecute this claim against the Defendants is not situated in Venezuela. Volumes of documentary evidence, written in English, and the testimony of respective corporate representatives, design engineers, testing engineers, and experts, are situated in the United States. This evidence will recount the design development of the defective products here in the United States. As it pertains to Defendant Ford Motor Company, this evidence will reveal the testing of the Ford Explorer prototype at Ford's testing site in Arizona. This evidence will show that the prototype repeatedly tipped up off the ground during the handling test, indicating that it had the same stability problems as the Bronco II. This evidence will show that,

according to federal crash statistics, the Bronco II was one of the three most deadly SUVs then on the road and was rated the most deadly by the Insurance Institute for Highway Safety. This evidence will outline the subsequent testing and recommendations by Ford engineers to correct the fatal design flaw, and depict the calculated decision by Ford executives to proceed with the release of the fatally designed Ford Explorer for the reason that delaying release would have been extremely costly. In sum, the sheer volume of evidence that is situated in the United States will weave a tapestry revealing how this fatal design flaw came into existence, how it was unreasonably dangerous and how it caused the death of four people.

## II.   ARGUMENTS AND AUTHORITIES

### A. *Prima facie,* **it is not vexatious or oppressive, within the doctrine under consideration, for Plaintiffs to sue an American corporation in the United States.**

The doctrine of *forum non conveniens* furnishes criteria for a choice between two or more forums in which the defendant is amenable to process. At least two such forums must be available to the plaintiff before the doctrine comes into play; and *they shall not be dependent merely upon the will or grace of the defendant, but must be provided by law. Veba - Chemie A. G. v. M/V* Getafix, 711 F.2d 1248 n.7 (5th Cir. 1983) (citing *Trivoli Realty v. Interstate Circuit,* 167 F.2d 155 (5th Cir.) (emphasis added). While it has been concluded that such language is dicta, it is nevertheless persuasive and should be considered here, as the balancing analysis must be applied with sensitivity to the specific circumstances of each case.

The doctrine of *forum non conveniens* proceeds from the premise that in *rare* circumstances, one court can relinquish its jurisdiction in favor of another court. *Quakenbush v. Allstate,* 517 U.S. 706 (1996) (emphasis added). Under this doctrine, the central focus of a *forum non conveniens* analysis is where the trial will be convenient to both parties and to serve the interest of justice.



*Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). The Defendant has the burden of demonstrating *forum non conveniens.  Koster v. American Lumbermens Mut. Casualty Co.*, 330 U.S. 501, 521-22 (1947).

In the case at bar, it is uncontested that the Defendants are domiciled in the United States with their principal places of business located in Dearborn, Michigan and New York respectively and that they are authorized to conduct business in the state of Texas.  It is a fair and reasonable inference that, ordinarily, one's domicile is not an inconvenient place for one to be sued. *Prima facie* therefore, it is not vexatious or oppressive, within the doctrine under consideration, for Plaintiffs to sue American corporations in the United States.

**B.**     **Plaintiffs' choice of forum should be upheld because an adequate alternative forum does not exist under Venezuelan law.**

Plaintiffs' expert, Tatiana B. deMaekelt, head of the Private International Law Department at Universidad Central de Venezuela, regarding the jurisdiction of Venezuelan courts in these cases explains, "The fundamental principle of jurisdiction under Venezuelan law is that a defendant be sued in his place of domicile inasmuch as it seeks to facilitate due process as a constitutional principle." deMaekelt Aff. II. ¶ 2.  According to Dr. deMaekelt, this principle is codified in Article 39 of the Statute of Private International Law, providing that the first forum for bringing suit against a nondomiciliary defendant is the country where the defendant is domiciled. deMaekelt Aff. II. ¶ 2.  As such, Plaintiff's choice of forum in this case is appropriate under Venezuelan legal principle.

Dr. deMaekelt, in partial agreement with Defendants' experts, identifies two potentially applicable exceptions to this principle, set forth in Article 40(2) and Article 40(4) of the Statute on Private International Law that would allow a Venezuelan court to exercise jurisdiction over the case at bar.



### 1.  A Venezuelan court would not exercise jurisdiction of this case under Art. 40(2) because the "facts verified" support jurisdiction in the United States.

In order for a Venezuelan court to exercise jurisdiction under Art. 40(2) over the actions at issue here, it must be shown that the actions derive from "facts verified" in Venezuela. STATUTE ON PRIVATE INTERNATIONAL LAW Art. 40(2); EXHIBIT B. Dr. deMaekelt states that the language of Article 40(2) requires the equivalent of a "most significant contact" analysis. deMaekelt Aff. II ¶ 8.  Because of the nature of the actions at issue in the case at bar, Dr. deMaekelt opines that "the places where the facts are verified and of the facts show some difficulty for two reasons: (1) their qualification and the fact that the product liability is so complex that it does not allow for a simple qualification of these elements; and (2) liability is the consequence of a chain of actions that may arise within a State's territory, continuing in another one and produce the tort in another one." deMaekelt Aff. II ¶ 7. As such, continues deMaekelt, the doctrine supports flexible qualification of these criteria, based on the links they may have with the case at issue, *bearing in mind the victims' justified expectations. Id.* (emphasis added).

In the case at bar, the action at issue is the killing of Nelson Napoleon Sanchez, Evelin Carol Garrido de Sanchez, Daniel Enrique Sanchez Garrido, a minor and Pedro Norberto Perez Colmenarez as the result of the safety-related design defect in the Defendants tire and vehicle respectively. Thus, the facts verified here are that both the tire and the vehicle were designed in the United States; tested in the United States, the corporate decisions to produce the defectively designed products were made in the United States; information pertaining to accident and failure rates caused by the fatal design defects are situated in the United States; and with respect to Defendant Ford Motor Company, the management decisions to ignore engineering recommendations and proceed with the production of the defectively designed vehicle were



made and documented in the United States. Under Dr. deMaekelt's analysis, the actions at issue here would result in the determination that Venezuelan courts would not have jurisdiction over the cases on this basis.

Defendant refers the Court to the case of *Gonzalez v. Chrysler* for the proposition that the facts verified, as they pertain to design defect, are too attenuated to support maintaining jurisdiction here. *Gonzalez v. Chrysler*, 301 F.3d 377 (5th Cir. 2002). This case is distinguishable from *Gonzalez* in two ways: (1) the Plaintiffs herein do not agree or concede that Venezuela is an amenable forum as the plaintiffs did regarding Mexico in *Gonzalez*; and (2) the product in *Gonzalez*, a Chrysler air bag, does not share the same multi-year and multi-national history of failure and causing death and injury as of the Ford Explorer. More specifically, the action at issue here is a fatal vehicle design defect, in existence since the advent of the Bronco II in 1983, that results in vehicles tipping off the ground, rolling over and killing, maiming, or seriously injuring drivers and passengers. The facts verified as they pertain to the design defect in this case are not attenuated by any degree to the actions at issue rather; there are the very heart and soul of the actions presented.

### 2. A Venezuelan court will not exercise jurisdiction under Art. 40(4) unless both parties expressly and unequivocally submit to jurisdiction.

Article 40(4) of the Statute of Private International Law provides that "Venezuelan Courts shall have jurisdiction to hear trials resulting from the filing of actions in property when the *parties* should expressly or tacitly submit to their jurisdiction." EXHIBIT B (emphasis added). Dr. deMaekelt states that, a plain reading of Article 40(4) in conjunction with the provision of Article 44 which provides that express submission shall be evidenced in writing, means that a Venezuelan court would not exercise jurisdiction over the actions at issue here unless the Plaintiffs and the Defendant submit a writing executed by *both* parties that *expressly* submits to

the jurisdiction of a Venezuelan court. deMaekelt Aff. II ¶¶ 9-10.    For purposes of *forum non conveniens* analysis, a Venezuelan court will not be available as an alternative forum unless both parties submit to their jurisdiction.    deMaekelt Aff. II ¶¶ 9-10. In the case at bar, because Plaintiffs brought their case in the United States, they are not expressly submitting to the jurisdiction of Venezuelan courts.

Defendant claims that its unilateral submission to Venezuelan jurisdiction is sufficient to render that forum available for purposes of *forum non conveniens*. Def. Mot. at 6. As the Supreme Court noted in *Piper Aircraft*, the availability of an alternative forum is *ordinarily* established when the defendant is "amenable to process" in the other jurisdiction. *Piper Aircraft Co. v. Reyno*, 454 U.S. at 254 n.22 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 506-07) (emphasis added). *Piper Aircraft* does not however stand for the proposition that the unilateral submission of a defendant to the other jurisdiction will establish the availability of an alternative forum in every case. Nevertheless, this is exactly the claim being pushed forward by the Defendant herein. Def. Mot. at 6-7. Were the Court to accept the Defendant's argument, it would create a rule such that the availability of an alternate forum will depend solely upon the will or grace of the defendant and turn a blind eye to the jurisdictional provisions of that alternate forum.    Under the case law cited by the Defendant in support of its supposition [Def. Mot. at 6-7], the jurisdictional provisions of the alternate forum allow the exercise of jurisdiction where the defendant unilaterally submitted itself to that jurisdiction. Unlike the alternate jurisdictions in those cases, Venezuelan jurisdictional provisions require the submission of both parties to that jurisdiction and the mere unilateral submission of the Defendants herein to Venezuelan jurisdiction is insufficient to create jurisdiction. deMaekelt Aff. II ¶ 12.

**C. The balance of private factors as enunciated by the Supreme Court in *Gulf Oil v. Gilbert*, favor Plaintiffs' choice of forum in Texas.**

> *1. The deference accorded to Plaintiff choice of forum requires the Defendant to show that the private and public factors <u>clearly point</u> towards the alternate forum.*

Article XIII of the <u>Treaty of Peace, Friendship, Commerce and Navigation</u> between the United States and Venezuela provides that the courts of both countries shall be "open and free" to the other's citizens "on the same terms which are usual and customary with the natives or citizens of the country in which they may be ....." 8 Stat. 466, 1836 WL 3643, January 20, 1836.

> [w]hen a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical forum non conveniens standards must be applied to such nationals by American courts. ...Because such treaty exists between the United States and Venezuela, see Treaty of Peace, Friendship, Navigation and Commerce, January 20, 1836, US-Venez. Art. 13, 8 Stat. 466. 472, no discount may be imposed upon the plaintiff's choice of forum..." *Blanco v. Banco Industrial of Venezuela, S.A.*, 9978 F.2d 974, 981 (2nd Cir. 1993).

The treaty referred to by the court in *Blanco* is the same treaty on which Plaintiffs herein are relying to have their choice of forum accepted by this Court. The Plaintiffs' choice of forum is to be respected unless the balance of both public and private interests strongly justifies a transfer. *Manu Intern., S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (1981). A court's failure to afford equal treatment under the Treaty constitutes reversible error. *Irish Nat. Ins. Co., Ltd., v. Aer Lingus Teoranta*, 739 F2d 90, 92 (2nd Cir 1984). Further, the existence of this Treaty makes it reasonable to assume that the forum choice of the Plaintiffs herein is convenient in spite of the fact that they are foreigners. "When the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. at 255, 256 (1981). As such, the Defendants must still show the balance of convenience sufficiently favors trial in the foreign forum to overcome the presumption in favor of Plaintiffs' choice.

2.  *In considering the relative importance and availability of various types of evidence and keeping in mind that liability will be the most crucial issue in this case, retaining jurisdiction in the United States is favored.*

The application of factors set out in *Gulf Oil* varies between cases and the final outcome is heavily dependent on the unique facts of particular cases. *Hodson v. A.H. Robins Co., Inc.*, 528 F.Supp. 809, 819 (citing 15 Wright Miller and Cooper, FEDERAL PRACTICE AND PROCEDURE, §3828 (1976)). In applying the *Gulf Oil* factors, the Court scrutinizes the substance of the dispute between the parties, what proof is required, the causes of action and the potential defenses. *Cauwenberghe v. Baird*, 486 U.S. 517 (1988). As such, in order that the Court may properly consider these factors, the Defendant must provide enough information to enable the Court to balance the parties' interests. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981).

***Fundamentally this case involves a determination of the circumstances surrounding the design of the Ford Explorer, the reasons for the failure of the vehicle, and the damages associated therewith and all of the evidence originates in the United States.*** The defective vehicle was designed in the United States, tested in the United States, and built in accordance to U.S. government standards.

It is uncontested that documents related to the development, design, testing summaries, evaluation, failure rates, fatal vehicle rates, inspections, NHTSA reports, Critical Concerns Review Group Reports, and analysis (reports and graphs) of the products and the safety-related design flaws at issue here are situated in the United States. It is indisputable that the design and engineering articles and manuals used by Ford and B.F. Goodrich engineers are situated in the United States.  It is indisputable that documents related to safer alternative design recommendations by Ford and B.F. Goodrich engineers are situated in the United States. It is indisputable that documents reflecting Ford and B.F. Goodrich management and executive

decisions against implementing safer design alternatives are situated in the United States. This overwhelming mass of liability documents from Ford and B.F. Goodrich are critical to a complete and accurate understanding of the events that led to the death of these four individuals. Indeed, Defendant Ford Motor Company has produced *millions* of documents concerning liability into the document depositories for the multi-district litigation involving Ford and Bridgestone/Firestone. All of these documents are authored in English and will need to be translated into Spanish, a lengthy and expensive process, if this case were to be tried in a Venezuelan court. In contrast, there exist a mere handful of Venezuelan documents that are relevant to the actions in this case: an accident report and death certificates. The accident report has already been translated and exchanged with Defendants at Plaintiff's expense. Def. Mot. EXHIBIT A. The Plaintiffs will translate and provide to the Defendants, at Plaintiff's expense, any other relevant documents, including the subject vehicle's service records not already in the Defendants' possession.

Further, many of the potential witnesses including; design engineers, testing engineers, Ford and B.F. Goodrich management, executives, and other corporate representatives, reside in the United States. Transporting these individuals to Venezuela would be expensive and time consuming. Interpreters and translators will be required to interpret the testimony. The probable length and cost of the trial will be increased and such cost considerations dictate that a trial in the United States would be more expedient. In contrast, the potential Venezuelan witnesses, aside from the Plaintiffs themselves, include the officer who investigated the accident, and the coroner.

### 3. *Inadmissibility of certain evidence in Venezuelan courts favors maintaining jurisdiction in the United States.*

*It appears that certain types of evidence may not be admissible in Venezuelan courts.* Based on his experience as a former Justice of the Supreme Court of Justice in Venezuela, current

university professor Anibal Jose Rueda explains that, under Articles 813-818 of the Code of Civil Procedure, "witness testimony obtained abroad shall have no value whatsoever if it was not taken under order issued by the Venezuelan judge hearing the case." *In re Bridgestone/Firestone*, 190 F. Supp. 1125, 1149-50 (S.D. Ind. 2002). Defendant claims that any and all evidence generated in the United States would be admissible in a Venezuelan court based upon the affidavit of Victor Hugo Guerra Hernandez, a proposed expert in Venezuelan however, Mr. Hernandez fails to address Dr. Rueda's analysis of Articles 813-818.

### 4. *Where a view of premises is unlikely, this private factor merits little consideration in a forum non conveniens analysis.*

Defendant presupposes that viewing the accident site is a foregone and a paramount necessity and as such, were this case tried in Texas, there would be no practical means of transporting the jury to Venezuela. As a practical matter, it is unlikely that any federal court would expend its judicial resources and time to investigate the scene of any accident. It remains the burden of the parties, in the prosecution and defense of a case, to examine and present such information in such a manner so as to assist the jury in addressing disputed issues. Certainly, the parties' experts in the instant case can, as they have in other similar litigation, visit, examine, videotape, and visually reconstruct the highway scene where the defective tire failed and the defective vehicle tipped off the asphalted ground and rolled over so as to sufficiently aid the jury.

### 5. *Where no potential third parties exist, this private factor merits no consideration.*

While the Defendants are correct in claiming that a defendant's inability to implead potential liable third parties is a consideration in a *forum non conveniens* analysis, Defendant's mere bald faced assertion herein, without any evidentiary support, merits no consideration whatsoever.

**6.** *The volatile Venezuelan political situation compromises any convenience of trying this case in a Venezuelan court.*

The Venezuelan judicial system has come under universal attack as being antiquated, inefficient, unfair, and corrupt, and the convenience of trying this case in a Venezuelan court would be compromised by the long delays plaguing the Venezuelan judicial system. As noted by former Justice of the Supreme Court of Justice Rueda, in August 1999, a judiciary emergency was declared and, by November 1999, "more than two hundred judges had been removed from their positions, supposedly for corrupt practices." *In re Bridgestone/Firestone*, 190 F. Supp. at 1154. The instant action would only exacerbate the backlog of cases in the Venezuelan lower courts, which the World Bank estimated in 1997 had 2 to 3 million cases pending. WORLD BANK PROJECT APPRAISAL, REPORT NO. 17212-VE, Dec. 9, 1997 at 9. On May 31, 2001, Omar Mora, acting president of the Venezuelan Supreme Court declared, "that we have still not been able to solve the judicial crisis" following the 1999 purging of the judicial system. Senior Judge Criticizes Courts in Venezuela, N.Y. Times, May 31, 2001. Rueda additionally noted that, on June 18, 2001, the Caracas courts reduced the number of business days per week in order to relieve some of the overcrowding and repair problems. *In re Bridgestone/Firestone*, 190 F. Supp. at 1153. Most recently, it was reported in the United Nations Program for Development that confidence in the Venezuelan judicial system is 59%, amid accusations by the private media that the court follows government orders. Embassy of Venezuela Press, July 28, 2003. This suggests that Venezuelan courts are less convenient for this trial. *Brazilian Investment Advisory Services, Ltda. v. United Merchants & Mfg., Inc.,* 667 F. Supp. 136, 138 (S.D.N.Y. 1987) (considering delay as one balancing factor).



*7. Plaintiffs' choice of forum does not unduly oppress or vexate the Defendant.*

Finally, this Court should consider that Texas is a forum with which Defendants' attorneys are thoroughly familiar. Defendants are also operating under legal, procedural, and evidentiary rules that are likewise familiar to its counsel and it cannot credibly be claimed to work oppression and vexation to the Defendants so as to far outweigh the Plaintiffs' convenience.

**D.    The balance of public factors as enunciated by the Supreme Court in *Gulf Oil v. Gilbert*, favor Plaintiffs' choice of forum in Texas.**

*1.    The U.S. interest in the resolution of this case favors maintaining jurisdiction.*

The public factors that need to be taken into consideration by this Court, assuming *arguendo* that Plaintiffs have an alternative forum for this litigation, deal with the burden this case will place on the federal court system and the citizens of Texas who may be called upon to serve as jurors. The central question is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it. There is little question that all the public factors will weigh against dismissal under the *forum non conveniens* doctrine.

The Defendans in this case have extracted large sums of money annually from the sale of its defectively designed vehicle to Venezuelan citizens. The sale of these fatally flawed tires and vehicles bring enormous extra profits to the Defendants because, in the case of Ford Motor Company, it chose not to delay the production of the Ford Explorer when more than $500 million dollars had been invested in the Explorer prototype. The profits derived by Ford and B.F. Goodrich from the sale of their respective products in Venezuela went to the benefit of shareholders in the United States and the federal government as taxes, and to the salaries of U.S. employees.

U.S. residents are free to go abroad and bring enormous profits home to the United States by selling products designed and tested in the U.S. This ability must be, at a minimum, balanced by the willingness of the United States to allow injured foreigners to seek redress in its courts against such local citizens when their profits came back to the United States especially when those profits were in great part generated by intentional, negligent, reckless and criminal acts of such citizen in the U.S. Allowing multinational corporations to bring profits back to the U.S. at the expense of foreign life can, as one commentator noted, be viewed as compromising the integrity of the United States' reputation for democracy, the condemnation of human rights, and the protection of certain inalienable rights. Jacqueline Duval-Major, *One-Way Ticket Home: The Federal Doctrine of Forum Non Conveniens and the International Plaintiff*, 77 CORNELL L. REV. 650, 675 (1992) (recognizing that, if United States has interest in protecting inalienable rights, then it has powerful interest in guaranteeing that multinational corporations are responsible for any violations). The public interests viewed in this light favors holding trial in Texas.

Clearly, the U.S. has a regulatory interest in the designing, manufacturing, distributing, and selling of products in the United States and sending those products to other countries. The Court in *Piper* recognized that the United States has an interest in deterring harmful conduct abroad. *Piper Aircraft Co. v. Reyno*, 454 U.S. at 260-61 (1981). Most immediate is the U.S. interest in preventing similar accidents from occurring in the United States, which mirrors Texas interest in preventing similar accidents in Texas. The plaintiffs in *Union Carbide* noted that Union Carbide operated a plant in West Virginia of a similar design to the one in India, which killed more than 3500 people and injured 200,000 others. *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984*, 634 F. Supp. 842, 858 (S.D.N.Y. 1986), *modified*, 809

F.2d 195 (2d Cir.), *cert. denied*, 484 U.S. 871 (1987). Similarly, the Defendants have been sold

to and caused the deaths and maiming of U.S. and Texas citizens. Furthermore, as one

commentator has noted, the United States has an interest in preventing the appearance that the

United States is involved in such harmful conduct. Jacqueline Duval-Major, at 675 (1992).

Dismissal on *forum non conveniens* grounds may appear to contradict these ideals and interests.

Duval-Major, at 675 (noting that U.S. government, to safeguard its reputation as supportive of

human rights, has interest in integrity of its businesses).

Further, *the pursuit of justice is not a burden*.  As a practical matter, and aside from

Defendants' floodgate rhetoric, the case at bar involves the claims of a handful of individuals

against a two large multinational corporation, will require no more of the Court's time and

resources than would any other civil case, and would not be an unfair to burden Texas citizens

with jury duty for a trial.  Our citizenry recognizes that a wrong does not fade quietly into the night

simply because its immediate consequences are felt and endured far away. Further, the subject

matter presented by the Plaintiffs' claims is one familiar to Texans. Dozens of Texas citizens have

been injured or killed by the Ford Explorer and that Defendant has been held accountable in Texas

courts for those injuries and deaths.  The refusal of the Defendants in this case, to confront a Texas

judge and jury, is not really about convenience or fairness. It is a transparent connivance to avoid

accountability.

### 2. Venezuela's willingness to cede some of its interest in cases such as this favors maintaining jurisdiction.

The court in *In re Bridgestone/Firestone Inc.,* noted that Venezuela is willing to cede

some of its interest in cases of this type in favor of trial in the United States. *In re*

*Bridgestone/Firestone Inc.,* 190 F. Supp. 2d at 1154.  Colonel Jose Rafael Quero Vallecillos,

National Director of the Department of Technical Transportation Surveillance (Cuerpo Tecnico de Vigilancia del Transito Terrestre), which is part of the Ministry of Infrastructure[1] indicated Venezuela would cede to the United States. *Id.* Venezuela's willingness to cede some of its interest to the United States in cases similar to the one bar is reiterated in *Firestone FNC*, wherein the court determined that Venezuela does not have a strong interest in this litigation. *Firestone FNC*, 190 F. Supp. 2d 1125, 1154 (S.D. Ind. 2002). Venezuela's willingness to cede its interest in trying the cases to American courts tilts the balance toward retaining jurisdiction.

### 3. *Texas choice of law favors retaining jurisdiction.*

In further consideration of public factors, Texas choice of law follows the Restatement (Second) of Conflicts of Law, Sections 6 and 145. *Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex. 1979). The Restatement, Section 6, requires the Court consider:

1. the needs of the interstate and international systems

2. the relevant policies of the forum

3. the relevant policies of the interested states and the relevant interests of those states in the determination of the particular issue

4. the protection of justified expectations

5. the basic policies underlying the particular field of law,

6. certainty, predictability and a uniformity of result, and

7. the ease of determination of application of the law to be applied.

---

[1] Colonel Vallecillos also stated that the Department was willing to place the officers who investigated certain accidents in Venezuela "at the disposal of the appropriate United States individuals in order to provide testimony through deposition and/or at trial regarding the events of the accidents" and will authorize and order their deployment for this purpose.

*Id.* at 318. the Restatement, section 6, provides that, with respect to tort claims, the law of the state with the most significant relationship to the occurrence and the parties should control. *Id.* at 319. The contacts to be considered are:

1.   The place where the injury occurred,

2.   The place where the conduct causing the injury occurred,

3.   The domicile, residence, nationality, etc. of the parties, and

4.   The places where the relationship, if any, between the parties is centered. *Id.* at 319. This does not turn on the number of the contacts but on their qualitative nature. *Id.*

Lastly, it is uncontested that Venezuela has no strict products liability law, which is the principal substantive claim asserted against Ford. Clearly, it is for this reason, as well as the limitation on recoverable damages, that fuels the Defendants' desire to have Venezuelan law apply. The true outcome of a *forum non conveniens* dismissal would be to allow the Defendants to never be held accountable for their wrongful conduct.

### III.   CONCLUSION AND PRAYER

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs respectfully request and pray that this Honorable Court determine that the Defendant fails to meet its burden of persuasion in showing the existence of an adequate alternative forum, or that the private and public factors enunciated in *Gulf Oil v. Gilbert* clearly point towards the alternate forum if it is deemed to exist, and deny Defendants' Motion to Dismiss for Forum Non Conveniens.

This Court should deny Defendants' motion for all of the above reasons including:

(1)   There does not exist an adequate alternative forum under either Article 40(2) or 40(4) of the Statute of Private International law because respectively, the facts verified critical to the actions of

this case lie in the United States and because Art. 40(4) requires both parties to expressly and unequivocally submit to Venezuelan jurisdiction.

(2)    No discount should be imposed upon the Plaintiffs' choice of forum.

(3)    The private factors as enunciated by *Gulf Oil v. Gilbert* favor maintaining jurisdiction in the United States.

(4)    The public factors as enunciated by *Gulf Oil v. Gilbert* favor maintaining jurisdiction in the United States.

In the alternative, if Defendant's Forum Non Conveniens Motion is granted, the Court should include a return of jurisdiction clause to an order including:

- that Defendants agree to submit to the foreign jurisdiction and process in foreign courts;

- that Defendants waive limitations defenses;

- that Defendants agree to submit to discovery in the foreign forum;

- that Defendants agree that discovery in the U.S. suit may be used in the foreign suit;

- that Defendants agree to make his witness and evidence available in the foreign jurisdiction;

- that Defendants agree that the foreign judgment may be enforced against it in the United States.

- That if Defendants obstruct suit in the alternative or a court in Venezuela does not accept the case, plaintiff may return to the America forum.

Respectfully submitted,

**LAW OFFICE OF MARK A CANTU**
THE ATRIUM
1300 N. 10th St., Suite 400
McAllen, Texas  78501
Tel:  956/687-8181
Fax:  956/687-8868

By: _____
     Juan A. Gonzalez
     Texas State Bar No. 08129310
     Federal ID 3472

By: _____
     Ricardo G. Benavides
     Texas State Bar No. 24031735
     Federal ID 32205

**ATTORNEYS FOR PLAINTIFFS**


**HEARING AND ORAL ARGUMENT REQUESTED**

Case 1:04-cv-00080    Document 16    Filed in TXSD on 12/08/2004    Page 23 of 23

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing instrument has been forwarded to the following counsel of record via telefax, certified mail return receipt requested, regular mail and/or hand delivery on this the _____ day of December, 2004.


Thomas M. Bullion III
Evan N. Kramer
Evan Kramer
Brown McCarroll, L.L.P.
111 Congress Avenue, Ste. 1400
Austin, Texas 78701
**Attorneys for Ford Motor Company**


JUAN A. GONZALEZ
RICARDO G. BENAVIDES


Page 23