IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MARCOS SANCHEZ, INDIVIDUALLY AND, § <br> AS REPRESENTATIVE OF THE ESTATE OF § <br> NELSON NAPOLEON SANCHEZ § <br> § <br> AIDO MANUEL GARRIDO AND IVON ELENA § <br> PARRA DE GARRIDO, INDIVIDUALLY AND § <br> AS REPRESENTATIVES OF THE ESTATES § <br> OF EVELIN CAROL GARRIDO DE SANCHEZ § <br> AND DANIEL ENRIQUE SANCHEZ § <br> GARRIDO, A MINOR; § <br> § <br> MAXIMILLIANO PEREZ CEBALLOS § <br> AND PETRA MARIA COLMENAREZ, § <br> INDIVIDUALLY AND AS REPRESENTATIVE § <br> OF PEDRO NORBERTO PEREZ § <br> COLMENAREZ § <br> § <br> VS. § <br> § <br> GOODRICH CORPORATION F/K/A § <br> B.F. GOODRICH COMPANY; AND § <br> FORD MOTOR COMPANY § | CIVIL ACTION NO. B-04-080 |

---

**MICHELIN NORTH AMERICA, INC. AND FORD MOTOR COMPANY'S JOINT REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS FOR *FORUM NON CONVENIENS***

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COME NOW, Defendants, MICHELIN NORTH AMERICA, INC. and FORD MOTOR COMPANY ("Defendants") and file this Reply to Plaintiffs' Response to Motion to Dismiss for *Forum Non Conveniens*, and would respectfully show unto this Honorable Court as follows:

*[stamp:]* United States District Court Southern District of Texas FILED JAN 0 3 2005 Michael N. Milby Clerk of Court

Defendants Michelin North America, Inc. ("Michelin") and Ford Motor Company ("Ford") hereby move to dismiss this Venezuelan accident case on the grounds of *forum non conveniens*, and submit this memorandum in support of Defendants' Motion.

## I.
## SUMMARY OF PLAINTIFFS' RESPONSE

Plaintiffs' Response is filled with flawed and dangerous logic that contradicts well-established precedent. First, Plaintiffs have articulated an incorrect standard to govern this Court's *forum non conveniens* analysis. Plaintiffs claim that *forum non conveniens* dismissal is inappropriate in this case because it is "not vexatious or oppressive" for Defendants to defend this claim in an American court. *See* Pls.' Resp. at p. 7. Without considering Plaintiffs' standard, Defendants respectfully move this Court to conduct its *forum non conveniens* analysis by applying the rulings of the two seminal cases in this circuit: *Gonzalez v. Chrysler Corp.*, 301 F.3d 377 (5th Cir. 2002) and *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665 (5th Cir. 2003).

It is noteworthy that the holding of *Vasquez* so undercuts the Plaintiffs' contentions that the case is not cited anywhere in Plaintiffs' Response Brief. Further, Plaintiffs make only a limited reference to *Gonzalez* in an attempt to differentiate that case from the matter at bar. Rather than addressing the governing legal standards of *Vasquez* and *Gonzalez*, Plaintiffs instead cast barbs at the Defendant for seeking the dismissal of Plaintiffs' claims as an alleged attempt to evade responsibility for the accidents made the basis of this lawsuit. Plaintiffs' wholesale failure to acknowledge the laws of this circuit severely undermines the credibility of their argument.

Second, unable to find a single connection between this case and Texas, the bulk of Plaintiffs' Response is predicated on the notion that the United States, and presumably Texas, has an interest in regulating foreign corporations doing business in this state.

Third, Plaintiffs ask this Court to ignore established precedent and find that Venezuela is an unavailable forum because Defendants have "unilaterally" submitted to Venezuelan jurisdiction.

Fourth, Plaintiffs misapply the Treaty of Peace, Friendship, Navigation and Commerce and, in doing so, suggest that the foreign Plaintiffs' forum choice is entitled to strong deference.

Fifth, in evaluating the public and private interest factors, Plaintiffs ask this Court to ignore Fifth Circuit precedent and focus entirely on the fact that the vehicle and tires at issue were designed in the United States. All of the Plaintiffs' contentions lack legal support and must be rejected.

## II.
## DEFENDANT'S REPLY

**A. The Brownsville Division of the Southern District of Texas has absolutely no connection to this case.**

At the outset, Plaintiffs cannot ignore the fact that the state of Texas, including the Brownsville Division, has no connection whatsoever to this accident or the product at issue in this lawsuit. Plaintiffs' Response makes this point abundantly clear. On numerous occasions, Plaintiffs attempt to highlight the connections this case has to the "United States," including: (1) the fact that the Defendants have their principal place of business in the United States; (2) the fact that the vehicle and tires at issue were designed in the United States; and (3) allegations that decisions regarding the vehicle and tires were made in the United States.

Conveniently absent from any argument offered by the Plaintiffs is the fact that neither the vehicle nor the subject tire, were designed and/or manufactured anywhere in Texas. The only mention of a connection to Texas is Plaintiffs' empty reference that some unidentified Texans have been injured in a Ford Explorer, as well as plaintiffs. *See* Pls.' Resp. at p. 18. Plaintiffs cite to no authority for this proposition, and even if they did, it is of no matter, because

3

the plaintiffs in this case are not Texans and the mere fact that Texans might have argued similar cases in the courts of this state has absolutely no bearing on the case at bar. If, as plaintiffs suggest, every forum in which a vehicle has been in an accident is a proper forum for every case, regardless of the facts, then the forum and venue rules mean nothing.

Were this Court to adopt Plaintiffs' suggested standard for evaluating dismissal of foreign accident cases, no court would ever dismiss a case against a product designer that does business in Texas no matter where the incident arose, whether the plaintiffs had ever set foot in Texas, or whether the product(s) had ever been located in Texas. Every product designer would be hailed into a Texas courtroom by citizens from all over the world on the unprecedented assertion that Texas has an undefined interest in regulating the business affairs of corporations.

The United States Supreme Court has rejected Plaintiffs' argument. A state has no legitimate interest in regulating conduct that occurs entirely outside its borders. *State Farm Mut. Auto Ins. Co. v. Campbell*, 123 S. Ct. 1513, 1523 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 571 (1996). As the Supreme Court has stated:

> [O]ne State's power to impose burdens on the interstate market for automobiles is not only subordinate to the federal powers over interstate commerce . . . but is also constrained by the need to respect the interests of the other states.

*Gore*, 517 U.S. at 574. After all, as the Court added, a basic tenet of federalism is that

> each State may make its own reasoned judgment about what conduct is permitted as proscribed within its borders, and each State alone can determine what measure of punishment if any, to impose on a defendant who acts within its jurisdiction.

*Campbell*, 123 S. Ct. at 1523.

If Texas cannot regulate the conduct of other states within the Union, it surely cannot regulate the conduct of and standards established by other nations. As the Fifth Circuit recently put it in a similar case involving a Mexican accident case:

> Mexico, as a sovereign nation, has made a deliberate choice in providing a specific remedy for this tort cause of action. In making this policy choice, the

4

> Mexican government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. . . . It would be inappropriate—even patronizing—for us to denounce this legitimate policy choice ....

*Gonzalez*, 301 F.3d at 381-82. Plaintiffs ignore the rationale of *Gonzalez* and, instead, claim that because Defendants have sold their products for an alleged profit, this Court should allow anyone in the world to bring suit against these Defendants in a Texas court. As can be expected, Plaintiffs' theory is unsupported and Plaintiffs' Response fails to cite any responsible authority for this position.

This case should be tried in Venezuela where the accident occurred, where the accident was investigated, where the vehicle was manufactured, where the vehicle was sold and maintained, where the Plaintiffs are from, and where the injured were provided medical treatment.

**B.     Fifth Circuit precedent makes clear that Venezuela is an "available" and "adequate" forum.**

The Fifth Circuit unequivocally concluded that a defendant's submission to the courts of a foreign jurisdiction make that jurisdiction "available" for the purposes of *foreign non conveniens* analysis. *See Vasquez*, 325 F.3d at 672. By way of their Response, Plaintiffs acknowledge that the availability of an alternative forum ordinarily is achieved when the defendant is amenable to process in the foreign jurisdiction. See Pls'. Resp. at p. 10, citing *Piper Aircraft v. Reyno*, 450 U.S. 233, 254 n. 22 (1981). However, Plaintiffs maintain that the matter at bar is not an "ordinary" case, and that *Piper Air* counsels against a finding of availability when the defendant "unilaterally" submits to the foreign jurisdiction.

Plaintiffs' only support in concluding that the controversies in this case are anything but "ordinary" stem from what is alleged to be the "multi-year and multi-national history of failure" of the vehicle platform at issue. In doing so, Plaintiffs attempt to differentiate the facts of this

5

case from the facts of *Gonzalez v. Chrysler*. However, the fact that the vehicle platform at issue has been the subject of litigation prior to this lawsuit does not alter the Court's analysis as to whether or not Venezuela is an available forum. If Plaintiffs' argument is accepted, the doctrine of *forum non* conveniens would be rendered lifeless. In that vein, this Court, in *Pineda Morales v. Ford*, a case involving similar defect allegations against Ford, and involving the same Plaintiffs' counsel, concluded:

> [i]ndeed, the Plaintiffs' argument turns the *forum non conveniens* inquiry on its head. The *forum non conveniens* doctrine exists to provide federal courts an opportunity to reconsider a foreign Plaintiff's choice of forum in light of convenience. As conceptualized by the Plaintiffs, no such reconsideration may take place.

*Pineda Morales v. Ford Motor Company*, 313 F. Supp. 2d 672, 676 (S.D. Tex. 2004) (Hanen, J.).

Venezuela is an available forum because Ford and Michelin are amenable to process in that country. In its recent dismissal of three Venezuelan accident cases, the Western District of Texas reiterated that **"a defendant's submission to jurisdiction of [the] alternative forum renders that forum available for purposes of [the] *forum non conveniens* analysis."** See *Elsa Beatriz Lopez Guedez, et al v. Ford Motor Company, et al*, Action No. P-03-CA-032 slip op. at pages 4-5 (W.D. Tex. September 23, 2003) (attached as Exhibit "E" in Defendants' FNC brief); *Hange v. Ford Motor Company et al*, Action No.P-02-CV43 (W.D.Tex. September 23, 2003) (attached as Exhibit "G" in Defendants' FNC brief); and *Ciriaco Gonzalez v. Ford Motor Company*, Action No. P-02-CA-137 at page 4 (W.D. Tex. September 23, 2003) all citing *Veba-Chemie, A.G. v. M/V/ Getafix*, 711 F.2d 1243, 1245 (5th Cir. 1983). In addition to that Court's rulings, Magistrate Judge Adriana Arce-Flores, sitting in this District, has acknowledged a defendant's submission to jurisdiction in Venezuela makes that forum available. *See Briceno v. Ford Motor Company*, Action No. L-03-CV-146, Report and Recommendation and Order, (S.D. Tex. March 25, 2004) attached hereto as Exhibit "1".

In the case at bar, Ford and Michelin consented to the jurisdiction of the Venezuelan courts to decide this case and agreed to abide by any judgment entered by those courts. *See* Joint Motion to Dismiss, p. 5. This consent is all that is required in the context of this Court's *forum non conveniens* analysis.

Plaintiffs suggest, however, that this Court ignore precedent and find that Venezuela is an "unavailable" forum because: (1) Texas has the "most significant contacts" to this case; and (2) plaintiffs did not implicitly consent to jurisdiction in Venezuela based upon their filing of this lawsuit in the Brownsville Division of the Southern District of Texas.

As to plaintiffs' first suggested standard, plaintiffs rely on the testimony of a purported expert on Venezuelan law, Tatiana B. de Maekelt. The affidavit authored by Dr. de Maekelt was originally provided in the *Guedez* and *Hange* cases that were dismissed by Judge Robert Junell in the Western District of Texas, Pecos Division. No factual information regarding the case at bar is included in the affidavit. Further, Dr. de Maekelt's affidavit clearly states that her opinions are based on the review of documents specific to the *Guedez* and *Hange* cases. *See* de Maekelt affidavit ¶9. Nevertheless, the essence of de Maekelt's opinions are that, for purposes of determining the location of "verified facts" under Article 40(2) of the Venezuelan Statute of Private International Law ("VPILS"), the Court must engage in a "most significant contacts" analysis. Nowhere in the affidavit does Dr. de Maekelt testify that Venezuela is not a adequate or available forum to hear this case.

Venezuela has the "most significant contacts" to this case:

- The plaintiffs are all Venezuelan citizens and residents;
- The vehicle was manufactured and assembled in Venezuela;
- The accident made the basis of this lawsuit occurred on a Venezuelan highway;
- The vehicle was purportedly owned by Venezuelan residents;
- The vehicle was purportedly registered in Venezuela;

- The principle case specific witnesses and evidence in this action are located in Venezuela;
- The principle case specific witnesses and evidence in this action are beyond the subpoena powers of this Court;
- The accident was purportedly investigated by Venezuelan authorities;
- The injured passenger and the deceased were treated by Venezuelan medical personnel;
- The vehicle was not designed in Texas;
- The tires were not manufactured or designed in Texas.

Plaintiffs suggest that Venezuela is not an available forum because they did not submit to jurisdiction there, but rather attempted to file in Texas. This is nothing more than a puerile implication that if plaintiffs don't get their way here, they would not re-file in a Venezuelan court.[1] Plaintiffs cite no authority for the implied proposition that a Venezuelan court would deny them jurisdiction based on the fact that they tried to file in the United States first, and almost certainly no such authority exists, as this would be a nonsensical rule of law. The court should frankly ignore this playground threat to take the ball and go home. As the Court is aware, a dismissal of this case would pave the way for plaintiffs to file in the more convenient forum, and plaintiffs' implications that they just don't want to do so are of no legal merit.

C.     **Plaintiffs are not entitled to strong deference with regard to their forum choice.**

In further support of their position that Venezuela is not an available forum, plaintiffs direct this Court to the existence of a friendship treaty entered into between the United States and Venezuela in 1836. In reliance thereon, plaintiffs argue that Venezuela is not available because this Court must place significant weight on, and ultimately defer to, the foreign plaintiffs' choice of venue. However, plaintiffs' argument is undercut by a plain reading of the treaty, which distinguishes between Venezuelans living in Venezuela and those who reside in the United States. The treaty reads in relevant part:

---

[1] Plaintiffs' own expert affidavit admits that tacit submission—and therefore jurisdiction—to a Venezuelan court exists for the plaintiff "by the simple fact of filing the complaint before a Venezuelan Court." *See* de Maekelt affidavit ¶11.

8

> Both the contracting parties promise and engage, formally, to give their special protection to the persons and property of the citizens of each other, of all occupations, *who may be in the territories subject to the jurisdiction of the one or the other, transient or dwelling therein*, leaving open and free to them the tribunals of justice, for their judicial recourse, on the same terms which are usual and customary with the natives or citizens of the country *in which they may be*....

Treaty of Peace, Friendship, Navigation and Commerce, Jan. 20, 1836, U.S.-Venez., art. 13, 8 Stat. 466 (emphasis added). Copy attached hereto as Exhibit "2".

The treaty only provides that Venezuelan citizens who may be residing in the United States (for example, resident aliens) are entitled to the same access to United States courts enjoyed by United States citizens. The treaty confers no special access to United States courts for Venezuelans residing in Venezuela, which, of course, includes the plaintiffs in this lawsuit. Nevertheless, plaintiffs argue that their choice of a United States forum should be given conclusive weight. The Supreme Court has recognized, however, that a foreign plaintiff's choice of a United States forum should receive little or no deference in the Court's *forum non conveniens* analysis. *See Piper Aircraft v. Reyno*, 454 U.S. 235, 255-56 (1981).

Plaintiffs' argument also fails to address contrary interpretations of such treaties by a number of federal courts. *See, e.g., Pain v. United Technologies. Corp.*, 637 F.2d at 795-96 (rejecting foreign plaintiffs' argument that they were entitled to higher presumption of convenience "[b]ecause the United States has signed treaties of trade, or of friendship and cooperation, with many nations guaranteeing equal access of one nation's citizens to courts of the other."); *In re Dow Corning Corp.*, 255 B.R. 445, 526-27 (E.D. Mich. 2000) (rejecting contention that *forum non conveniens* dismissal is unavailable where foreign plaintiffs are citizens of treaty state, noting in part that "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient."), *aff'd*, 280 F.3d 648 (6th Cir. 2002).

What is relevant to the matter at bar, is that the Supreme Court has recognized that a foreign plaintiff's choice of a United States forum should receive <u>little or no</u> deference in the

9

Court's *forum non conveniens* analysis. *Piper Aircraft Co.*, 454 U.S. at 255-56. The same holds true here.

**D.     The balance of the private interest factors clearly point towards trial in Venezuela.**

In their Response, plaintiffs attempt to misdirect this Court's entire analysis of the public and private interest factors by focusing on what they consider the fundamental issue in dispute—i.e., a determination of the circumstances surrounding the design of the vehicle and the manufacture of the tires.

Plaintiffs assert that Defendants have failed to carry their burden in demonstrating that the private interest factors significant in this case point towards trial in Venezuela. Plaintiffs base their argument on the allegation that the volume of relevant evidence concerning the design of the vehicle and the tires is located in the United States. Plaintiff's argument is in direct contravention with the Fifth Circuit's holding in *Vasquez*:

> The linchpin of plaintiff's argument - - that the alleged wrongful act was the original design of the vehicle and tires - - reaches back too far in the accident's causal chain. Identifying the situs of the wrongful conduct as an American designer's drawing board ignores the production, sale, and alleged failure of the product, which all occurred in Mexico.

*Vasquez*, 325 F.3d at 674. Plaintiffs' suggested focus dismisses as inconsequential all of the evidence related to the facts of each accident, the circumstances surrounding the decedents' fatal injuries and all of the evidence related to the history, maintenance, repair, and condition of the vehicle and tires. Likewise, the subject vehicle in the matter at bar was manufactured, marketed, sold, and allegedly failed in Venezuela. The tire at issue in this case was purportedly sold in Venezuela. Moreover, the accident occurred on a Venezuelan highway and involved Venezuelan citizens. The accident was investigated by Venezuelan authorities, and Venezuelan citizens served as the only eyewitnesses. In sum, the relevant sources of proof in this case are entirely located in Venezuela. *See Vasquez*, 325 F.3d at 672.

10

Plaintiffs make a final enervated argument claiming that inspection of the accident scene is not imperative to this Court's *forum non conveniens* analysis. The *Pineda-Morales* Court disagreed, and held that a single-vehicle accident such as this one "is of the sort that potentially renders a view of the accident scene appropriate." *Pineda Morales*, 2004 WL 725641 at *7.

**E.     The balance of the public interest factors clearly point towards trial in Venezuela.**

Plaintiffs have failed to disclose any connection between the facts of their lawsuit and the Southern District of Texas, Brownsville Division. Nevertheless, plaintiffs claim that, because a United States automaker and tiremaker were sued, the United States, and specifically the state of Texas, has a strong interest in determining the outcome of the case.

The relevant Fifth Circuit cases instruct a Court to consider not only the public interest factors of the United States generally, but also the factors inherent in the state or district where the case is pending. *See Gonzalez* 301 F.3d at 383-84, *see also Air Crash*, 821 F.2d at 1165-66. The relevant public interest factors to consider include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; (5) and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft*, 454 U.S. at 241; *Vasquez*, 325 F.3d at 673.

Neither the subject vehicle nor the subject tire were designed or manufactured in Texas. It is undisputable that the Brownsville Division has absolutely no connection to the controversies pleaded in this lawsuit, and at no point in Plaintiffs' Response Brief do they identify any local interest factors which support litigating this matter in this forum. Clearly, the drain on the fiscal resources of the Brownsville Division, as well as the burden in compelling the citizenry to appear for jury duty in a case with no connection to this forum favors dismissal of this lawsuit.

11

**PRAYER**

For the reasons stated in this Reply, as well as in Defendants' *Forum Non Conveniens* Brief, which is incorporated herein by reference, Michelin North America, Inc. and Ford Motor Company respectfully request this Court to dismiss this action on the grounds of *forum non conveniens*.

Respectfully submitted

By: _____
Thomas M. Bullion III
Attorney-In-Charge
SDTX No.: 14690
Texas Bar No. 03331005

OF COUNSEL:
Evan N. Kramer
SDTX No.: 12346
Texas Bar No.: 11704650
William R. Moye
SDTX No.: 34007
Texas Bar No.: 24027553
BROWN MCCARROLL, L.L.P.
1111 Bagby, 47th Floor
Houston, Texas 77002
(713) 529-3110; Fax: (713) 525-6295

COUNSEL FOR DEFENDANT
MICHELIN NORTH AMERICA, INC.

12

By: _____
    Jaime Saenz
    Attorney-In-Charge
    SDTX No.: 7630
    Texas Bar No.: 17514

OF COUNSEL:
Paul Rodriguez
SDTX No.: 22949
Texas Bar No.: 24002861
RODRIGUEZ, COLVIN,
CHANEY & SAENZ, L.L.P.
1201 East Van Buren (78520)
P. O. Box 2155
Brownsville, Texas 78522
(956) 542-7441; Fax: (956) 541-2170

COUNSEL FOR DEFENDANT
FORD MOTOR COMPANY

### CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the foregoing Michelin North America, Inc. and Ford Motor Company's Joint Reply to Plaintiffs' Response to Motion to Dismiss for *Forum Non Conveniens* has been forwarded by U.S. Certified Mail, Return Receipt Requested, to all known counsel of record as shown below on this 30 day of December, 2004.

_____
WILLIAM R. MOYE

Juan A. Gonzalez
Ricardo Benavides
THE LAW OFFICES OF MARK A. CANTU
The Atrium
1300 N. 10th Street, Suite 400
McAllen, TX 78501