United States District Court
Southern District of Texas
FILED

DEC 0 8 2004

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARCOS SANCHEZ, INDIVIDUALLY AND, | § | |
| AS REPRESENTATIVE OF THE ESTATE OF | § | |
| NELSON NAPOLEON SANCHEZ | § | |
| | § | |
| AIDO MANUEL GARRIDO AND IVON | § | |
| ELENA PARRA DE GARRIDO, | § | |
| INDIVIDUALLY AND AS | § | |
| REPRESENTATIVES OF THE ESTATES OF | § | |
| EVELIN CAROL GARRIDO DE SANCHEZ | § | |
| AND DANIEL ENRIQUE SANCHEZ | § | |
| GARRIDO, A MINOR; | § | |
| | § | CIVIL ACTION NO. B-04-080 |
| MAXIMILIANO PEREZ CEBALLOS | § | |
| AND PETRA MARIA COLMENAREZ, | § | |
| INDIVIDUALLY AND AS REPRESENTATIVE | § | |
| OF PEDRO NORBERTO PEREZ | § | |
| COLMENAREZ | § | |
| | § | |
| VS. | § | |
| | § | |
| MICHELIN NORTH AMERICA, INC. | § | |
| AND FORD MOTOR COMPANY | § | |
| | § | HEARING & ORAL |
| | § | ARGUMENT REQUESTED |

---

## RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION FOR APPLICATION OF VENEZUELAN LAW

---

TO THE HONORABLE JUDGE OF SAID COURT:

Come Now Plaintiffs, Marcos Sanchez, Individually, and as Representative of the

Estate of Nelson Napoleon Sanchez; Aido Manuel Garrido and Ivon Elena Parra De

1

Garrido, Individually and as Representatives of the Estates of Evelin Carol Garrido de Sanchez and Daniel Enrique Sanchez Garrido, a Minor; Maximilliano Perez Ceballos and Petra Maria Colmenarez, Individually and as Representatives of the Estate of Pedro Norberto Perez Colmenarez (hereinafter referred to collectively as "Plaintiffs") and complain of Defendants, **Michelin North America, Inc. and Ford Motor Company**, and would show the Court as follows:

## I.    PRINCIPLES SUPPORT THE APPLICATION OF TEXAS LAW

### A.    Choice of Law Analysis.

A federal court, sitting in diversity, applies the conflict of laws rules of the state in which it sits. *Vasquez v. Bridgestone/Firestone*, 325 F.3d 665, 674 (5th Cir. 2003). In Texas, the party asserting application of foreign law must first show existence of true conflict of laws and then demonstrate which law should apply based on state contacts to the asserted claims. *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 650 ((Tex. App. – Houston [14[th] Dist.] 1995, dis. w.o.j.).

In 1979, the Texas Supreme Court abandoned *lex loci delicti,* the principle that the substantive law of the place of injury controls. *Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex. 1979). Since that time, Texas courts have followed the "most significant relationship" test as set forth in Sections 6 and 145 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS because:

> [t]his methodology offers a rational yet flexible approach to conflicts problems. It offers the courts some guidelines without being too vague or too restrictive. It represents a collection of the best thinking on this subject and does indeed include "most of the substance" of all the modern theories.

*Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex. 1979).

Under Restatement of Conflict of Laws §145 "The rights and liabilities of the parties with

respect to an issue in tort are determined by the local law of the state, which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Unless the choice of law is governed by statute, the Court must then determine the law to be applied based on policy, considering the following factors set out in section 6 of the Second Restatement of Conflict of Laws:

(1)   The needs of the interstate and international systems;
(2)   The relevant policies of the forum;
(3)   The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
(4)   The protection of justified expectations,
(5)   The basic policies underlying the particular field of law;
(6)   Certainty, predictability and uniformity of result; and
(7)   Ease in the determination and application of the law to be applied.

*Duncan v. Cessna Aircraft Co.*, 665 S.W.2d at 420 n.5. These factors are not intended to be exclusive, and other factors may sometimes be considered relevant in a particular situation. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6, comment c. Section 145 of the Restatement then instructs that, in applying the principles of Section 6 to determine the law applicable to a case, the contacts to be taken into account include:

(1)   The place where the injury occurred;
(2)   The place where the conduct causing the injury occurred;
(3)   The domicile, residence, nationality, place of incorporation and place of business of the parties; and
(4)   The place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145.

**B.    Defendants' Motion Presents a Classic "False Conflict."**

Texas courts have routinely recognized that the first step in a conflict of law analysis is to determine whether a "false conflict" exists. A "false conflict" exists where only one forum has

an interest at stake. *Duncan v. Cessna Aircraft Co.*, 414 S.W. 2d 414, n.6 (Tex. 1984). When a false conflict is presented, courts must apply Texas law.

In *Ford Motor Company vs. Aguiniga*, a case that involved facts analogous to the case at bar, the San Antonio Courts of Appeals determined that a "false conflict" existed. *Ford Motor Company vs. Aguiniga*, 9 S.W.3d 252 (Tex. App.--San Antonio 2000, pet. denied). In *Aguiniga*, the plaintiffs asserted personal injury, survival and wrongful death claims against Ford arising from an accident that occurred in Mexico. Ford claimed there that the substantive law of Mexico should have governed the case. The *Aguiniga* court concluded that Mexico had no interest in enforcing its damage-limiting legislation in product liability cases wherein no Mexican citizen would benefit from its application and that "the only interest which exists is that of Texas... in controlling corporate action." *Ford Motor Company vs. Aguiniga*, 9 S.W.3d at 261 n.6 (noting that a false conflict exists when only one legitimate interest is in play). In the case at bar, none of the Defendants are Venezuelan citizens. As such, Venezuela does not have an interest in the application of its law and the Court should apply Texas law.

Further, with regard to the respective local interests of the United States and Venezuela, the court in *In re Bridgestone/Firestone Inc.*, noted that Venezuela is willing to cede some of its interest in these cases in favor of trial in the United States. *In re Bridgestone/Firestone Inc.*, 190 F. Supp. 2d at 1154. Colonel Jose Rafael Quero Vallecillos, National Director of the Department of Technical Transportation Surveillance (Cuerpo Tecnico de Vigilancia del Transito Terrestre), which is part of the Ministry of Infrastructure of [1] indicated Venezuela would cede to the United

---

[1] Colonel Vallecillos also stated that the Department was willing to place the officers who investigated certain accidents in Venezuela "at the disposal of the appropriate United States individuals in order to provide testimony through deposition and/or at trial regarding the events

4

States. *Id*. Venezuela's willingness to cede some of its interest to the United States in cases similar to the one bar is reiterated in *Firestone FNC*, wherein the court determined that Venezuela does not have a strong interest in this litigation. *Firestone FNC*, 190 F. Supp. 2d 1125, 1154 (S.D. Ind. 2002). Venezuela's willingness to cede its interest in this litigation to American courts tilts the balance toward applying Texas law.

### C.    Even if there is an Actual Conflict, the Most Significant Relationship Test Points to the Application of Texas Law.

Texas follows the "governmental interest analysis", which measures the "significance" element of the most significant relationship against the respective governmental interest at stake for the states whose laws are implicated. Specific contacts to be taken into account in tort cases to determine the state of most significant relationship include (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered.

In *Gutierrez v. Collins, the* court emphasized that "application of the 'most significant relationship' analysis should not turn on the number of contacts with a particular state, but more importantly on the qualitative nature of those contacts as affected by the policy factors which are set out in section 6 of the Restatement." *Gutierrez v. Collins,* 583 S.W.2d at 319; *Perry v. Aggregate Plant Products Co.,* 786 S.W.2d at 24. As set forth below, the most significant interest in play is Texas' interest in ensuring that unreasonably dangerous defective products are not sold within its borders.  Here the subject tires are of the precise type and design as those sold in Texas and Texas

of the accidents" and will authorize and order their deployment for this purpose.

5

residents and citizens.

> **1.    *Emphasizing The Place of Injury Would Constitute an Inappropriate Regression to the Principle of Lex Loci Delicti.***

In the instant case, the persons killed and injured as a result of the defendants' negligence and/or product failure, occurred in Venezuela. The fortuity that the negligent acts of the Defendants and/or that a defective product failed maimed and killed people in Venezuela, should not act to frustrate Texas' interest in protecting consumers from Defendants' negligent acts and/or dangerous products. If the Court were to follow the Defendants' wishes and focus primarily on the place of the injury, such would constitute nothing more than a regression back to the outdated principles of *lex loci delicti*. The Restatement itself instructs us that, "...where location of injury is fortuitous, the place where the Defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law. RESTATEMENT (SECOND) OF CONFLICT OF LAWS §145, Comment on Subsection (2): e. Even in a case involving pure negligence, "...when additional considerations favor one state or the other, the place of injury is no longer the controlling factor. The next task is to determine the relative significance of the state's interest to the particular case and issues. *Trailways. Inc. v. Clark,* 794 S.W.2d 479, 485 (Tex. App.- Corpus Christi 1990, writ den'd).

> **2.    *The Location Where the Defendants' Conduct Caused the Injury Favors Application of Texas Law.***

Despite the happenstance that Plaintiffs in the instant case were either maimed or killed in Venezuela, there is state and federal authority that recognizes it is the *product*, and not only the conduct of the parties, that is the focus of a choice of law analysis in a product liability lawsuit.

6

*Melton v. Borg-Warner Con.*, 467 F.Supp. 983, 986 (W.D. Tex. 1979). As such, it is not the place where the accident occurred which determines where the wrongful conduct occurred, rather it is the country where the product enters the stream of commerce or services and is substantially designed and substantially manufactured and are where the services are supplied. *Crisman v. Cooper Industries,* 748 S.W.2d 273, 277 (Tex. App.-Dallas 1988, no writ). The *Crisman* court recognized that, "the mere design or manufacture of a defective product is not actionable. To invoke the doctrine of strict liability in tort, the product producing injury or damages must enter the stream of commerce." *Crisman v. Cooper Industries,* 748 S.W.2d at 277 (citing *Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 376 (Tex. 1978)). In *Crisman,* the court attributed great weight to the fact the allegedly negligent services emanated from the State with the most interest in deciding to apply its law. In fact, almost every court, including this Court, that has considered choice of law questions in liability cases, has attributed great weight to where the product and/or services enters the stream of commerce. *See e.g.. Perry v. Aggregate Plant Products Company,* 786 S.W.2d 21, 24 (Tex. App.-San Antonio 1990, writ den'd); *Mitchell v. Lonestar Ammunition. Inc.,* 913 F.2d 242, 250 (5th Cir. 1990); *Melton v, Borg-Warner Con.,* 467 F.Supp. 983, 986 (W.D. Tex. 1979).

In the case at bar, it is uncontested that the basis of Plaintiffs' claims, specifically negligence in design production, manufacture, and/or marketing, occurred in the United States. This uncontested fact does not suggest the application of Venezuelan law but rather that of Texas. Venezuela is simply not "the place where the conduct causing the injury occurred" with respect to Defendants' conduct in designing, producing, manufacturing and marketing their products. *Perry v. Aggregate Plant Products Co.,* 786 S.W.2d 21, 25 (Tex.App. - San Antonio 1990, writ denied);

*Crisman v. Cooper Industries, supra,* 748 S.W.2d at 277. As such, because of the acts occurring

outside of Venezuela, such factors weigh against the application of Venezuelan law.

> **3.    The Domicile, Residence, Nationality, Place of Incorporation and
> Principal Place of Business Within the United States of the
> Defendants Does not Favor the Application of Venezuela's Law.**

Clearly, in applying Restatement of Conflict of Laws § 145 to the facts of the case at bar,

contacts weighing in favor of the application of Venezuelan law do not predominate and the

Court should apply Texas law. Certainly, Texas has a strong interest in the resolving the liability

of multinational corporations that place these self same products into the stream of companies of

this state and expose Texas citizens and residents to the very same risk of harm or death.

**D.  Application of Restatement of Conflict of Laws § 6 Principles Does Not Warrant
the Use of Venezuelan Law**.

Of the principles set forth in Section 6, the most important in tort cases, such as the case

at bar are (1) the needs of he interstate and international systems, (2) the relevant policies of the

forum, (3) the relevant polices of other interested states and particularly of the state with the

dominant interest in the determination of the particular issue, and (4) ease in the determination

and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145

comment b.

> *1.    The Needs of the Interstate and International Systems Favor
> Application of Texas Law.*

The needs of the interstate and international systems favor application of the law of the

forum state. In no way does this factor suggest that Venezuelan law should apply. The Defendants

service and sell their defective products in Texas and do so with the specific understanding that they

are subjecting themselves to the jurisdiction of this state.  This specific understanding is reinforced

by Defendants' affirmative step in registering itself to do business in the State of Texas, and appointing a registered agent for service of process. Applying Texas law to these Defendants with respect to the services and/or products provided and/or delivered in Texas does not burden either the interstate or international systems in any significant way.

**2.    *The Relevant Policies of the Forum***

In the context of conflict of laws, the "relevant policies of the forum" are "the most critical consideration." *Seth v. Seth,* 694 S.W.2d 459, 463 (Tex. App.- Fort Worth 1985, no writ).[1] Several Texas policies require the application of Texas law.

**a.    *Texas' Public Policy Expressly Opens Texas Courts for the Vindication of Causes of Action for Wrongful Death and Personal Injury.***

Section 71.031 of the Civil Practice and Remedies Code contains a choice of law provision for personal injury or wrongful death occurring outside the state of Texas C.P.R.C. § 71.031. Under the statute, an action for damages for death or personal injury may be brought in Texas courts, even though the wrongful act takes place outside Texas, if (1) a law of the foreign jurisdiction or of Texas gives a right to maintain an action for damages for the death or injury; (2) the action is begun within the time provided by Texas law; (3) for a resident of a foreign state o country, the action is also begun within the time provided by the laws of the jurisdiction where the wrongful act took place; and (4) in the case of a citizen of a foreign country, the country has equal treaty rights with the Untied States on behalf of its citizens. C.P.R.C. § 71.031(a). Furthermore, the law of Texas governs all matters pertaining to procedure in the prosecution or

---

[1] "Our review of the record convinces us that the most critical consideration is 'b the relevant policies of the forum.... Nor do we see how any of the other sec. 6 factors might outweigh factor

maintenance of the action in the Texas courts.

Plaintiffs herein maintain that they are entitled to bring their claim for damages into this Texas Court on the basis of treaty obligations existing between the United States and Venezuela under a Treaty of Peace, Friendship, Navigation and Commerce signed on January 20, 1836. Article 13 of t treaty provides that the courts of both countries shall be "open and free" to the other's citizens "on the same terms which are usual and customary with natives or citizens of the country in which they may be..." 8 Stat. 466 WL 3643.

### 3.    *Texas has an Interest in Punishing Conduct Occurring Outside Its BordersHaving a Substantial Effect Within its Borders.*

Texas courts have recognized that the Lone Star State "has the right and the power to punish conduct occurring outside its borders" and "especially when some of those acts emanated and originated within its borders" *Swanson v. Schlumberger Technology Corp.,* 895 S.W.2d 719, 733 (Tex. App. - Texarkana 1994, no writ), (*citing Hartford Fire In. Co. v. California,* 509 U.S. 764, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)). In the case at bar, the products provided by Defendants in Venezuela are the products of very same type and design that have caused injury and death to Texas citizens. This circumstance clearly implicates Texas' interests.

Texas' strong interest in deterring or controlling the sale or provision of negligent services or defectively designed or manufactured products to consumers is universally acknowledged. Plaintiff's expert, Tatiana de Maekelt, head of the private international law department of Universidad Central de Venezuela, in the attached affidavit expressly states that, "One is bound to conclude that any Venezuelan jurisdiction that may be asserted through operation of formal legal criteria, should be waived in favor of the respective foreign courts, in view of the clear

---

'b." *Id.,* at 463

inconvenience of judging the matter in Venezuela." de Maekelt, "Different Aspects of Jurisdiction and Products Liability in Venezuela's Private International Law" pg. 11. It follows that the United States has the paramount interest in application of its laws in a determination of this case.

Further justification for the application of Texas and/or other American states law is that under Venezuelan law, the victim has the right to move for application of the law of the state where the cause generating the tort. *Id.* pg. 14. In contrast, Texas has a substantial interest in the resolution of the parties' claims and defenses. The Texas legislature and courts have developed an almost paternalistic interest in the protection of consumers and the regulation of the conduct of manufactures that have business operations in the state. *See Dow Chemical ComDanv v. Alfaro,* 786 S.W.2d 674 (Tex. 1990). The expansive Texas system of tort liability for defective products serves as an incentive to encourage safer design and to induce corporations to control more carefully their manufacturing process. *Baird v. Bell Helicopter Textron,* 491 F.Supp. 1129, 1141 (NED. Tex. 1980).

> **4.    *The Relevant Policies of Other Interested States and the Relative Interests of those States in the Determination of the Particular Issue Favors Texas Law.***

A foreign state has no governmental interest whatsoever in applying its laws in a foreign court to reduce its citizens' rights of recovery, except to protect one of its own citizens. *Ford Motor Company vs. Aguiniga,* 9 S.W.3d 252; *Hurtado v. Superior Court,* 11 Cal.3d 574, 580, 114 Cal. Rptr. 106, 522 P.2d 666 (1974); *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 421 (Tex. 1984). In analyzing the most significant relationship factors in *Hurtado,* the California Supreme Court carefully explained that a nonforum state has no interest in having its laws

applied to limit or prevent its citizens from achieving a recovery elsewhere. In the case at bar, Venezuela's policies are in no way furthered by preventing plaintiffs from achieving a just recovery against these moving defendants.  Further, Venezuela has been found to be willing to cede its interest in Ford cases in favor of trial in the United States.  *In re Bridgestone/Firestone Inc.*, 190 F. Supp. 2d 1125, 1154 (S.D. Ind. 2002).

> **5.    *The Basic Policies Underlying the Particular Field of Law Favors Application of Texas Law.***

The Texas Supreme Court has held that the purpose of the wrongful death act is "provid[ing] a remedy for injuries resulting in death." *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 356 n. 8 (1990), *quoting* Leon Green, "The Texas Death Act," 26 Tex. L.Rev. 133, 136 (1947). The wrongful death statute is "remedial in nature and must be liberally construed." *Witty v. American General Capital Distributors, Inc.,* 727 S.W.2d 503, 504 (Tex. 1987). Personal injury causes of action serve similar purposes and are likewise frustrated by gratuitous application of Venezuelan damage limitations in Texas courts. Similarly, applying **Mexican** Venezuelan law to a U.S. defendant does not further any legitimate Venezuelan governmental interest in protecting its defendants.

> **6.    *Certainty, Predictability and Uniformity of Result Favor Application of Texas Law.***

Plaintiff asserts that, with regard to the damage limitation question, the Restatement's presumptive rule coincides with the substance/procedure solution and generally provides for application of the forum's statute of limitation. Restatement (Second) Conflict of Laws § 142 (1986 Revisions) The rule that the forum state's damages law should apply is one that provides certainty to the litigants, and is not subject to misinterpretation Further, it allows for all parties to

12

be able to predict their liability with uniformity so that unjust results do not occur. Finally, moving defendants' theories, that a forums' damage law are subject to change, depending on the outcome of a complicated balancing act that leads to different results among different persons injured or killed in the same accident, certainly defeats the interest of predictability and uniformity of result.

Texas negligence and product liability law has been governed by its common laws and by Section 40ZA of the Restatement (Second) of Torts since 1967. *See McKisson v. Sales Affiliates. Inc.* 416 S.W.2d 787 (Tex. 1967). Texas law regarding liability, causation and damages to a user or consumer of a defective product and/or receipt of negligent services is thoroughly and comprehensively developed. A manufacturer, designer, seller, retailer or anyone in the marketing chain who introduces a defective product into the stream of commerce or negligently provides services has a certain, predictable and uniform body of law as to what liability, causation and damages it will be subject to for damages caused by its defective product and/or negligent act. Texas law will be easier to apply and better protects the expectations of the parties. *See Moorehead v. Mitsubishi Aircraft,* 639 F.Supp 385, 391 (E.D. Tex. 1986).

### 7.    *Ease in the Determination and Application of the Law to be Applied Favors Application of Texas Law.*

Lastly, and as a practical matter, this Court should apply Texas law for reasons of convenience and efficiency because this Court is greater familiar with the local rules. In the alternative, the law of other states in the United States, including Michigan, New Jersey or North Carolina should be applied to the case at bar before any serious consideration is given to applying Venezuelan law. Risinger, "Substance" and "Procedure" Revisited, 30 UCLA L. REV. 189

(1982).

## II.    CONCLUSION AND PRAYER

A careful analysis of the facts in this case under Restatement (Second) of the Conflict of Laws Sections 6 and 145 application of the Section 6 principles to the Section 145 factors leads to the conclusion that this Court should apply Texas common law, negligence law, and/or product liability law, and overrule moving Defendants' motion with respect to the application of Venezuelan law.

In the alternative, should the Court somehow be persuaded that Venezuelan law should apply, then the analysis of it should be in conformity with the opinions expressed by Tatiana deMaekelt (Exhibit A) and James Otis Rodner (Exhibit B).

Additionally, Plaintiffs request additional time to more fully analyze and brief Venezuelan law in the event the court determines that Venezuela law should apply.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court apply Texas common law, negligence law, and/or product liability law and deny Defendant's motion. Alternatively, should the Court determine that Venezuelan law will apply, Plaintiffs pray that the Court determine that such application be in conformity with the opinions and conclusions made by Dr. deMaekelt and allow Plaintiffs additional time to more fully analyze and brief the Court regarding applicable Venezuelan law.

Respectfully submitted,

By: _____

Juan A. González
Texas State Bar No. 08129310
Federal ID 3472

14

By: _____

Ricardo G. Benavides
Texas State Bar No. 24031735
Federal ID 32205

1300 North 10th Street, Ste. 400
McAllen, Texas 78501
Telephone: (956) 687-8181
Fax: (956) 687-8868

**ATTORNEYS IN CHARGE FOR
PLANTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded via regular mail, certified mail return receipt requested, and/or telefax to the following counsel of record on this the _____ day of December 2004.


Thomas Bullion III
BROWN McCARROLL, L.L.P.
1111 Congress Avenue, Suite 1400
Austin, Texas 78701
*Counsel for Defendant, Ford Motor Company*


JUAN A. GONZALEZ
RICARDO G. BENAVIDES

16