# EXHIBIT A

# VALERA•MAEKELT & ASOCIADOS
## ABOGADOS

AVENIDA VENEZUELA, EL ROSAL
EDIFICIO "VALFER" PH II.CARACAS,
1 0 6 0 ,   V E N E Z·U E L A .
TELEFONOS: 952.50.36 - 951.51.64 - 951.05.96
FAX: 951.42.14. E-mail:valmaben@cantv.net

## AFFIDAVIT OF TATIANA B. DE MAEKELT

I.    Tatiana B. de Maekelt, deposes and says as follows:

1.    I am a graduate of the Universidad Central de Venezuela in Caracas, Venezuela where I received my legal degree in 1959 (Summa Cum Laude). I have been authorized to practice law in the Venezuelan Republic since that year. Presently, I am a senior partner of the firm Valera, Maekelt & Asociados in Caracas, Venezuela.

2.    I carried out postgraduate studies in University of Goethe – Frankfurt, Germany and received Doctor of Law in· 1961 (Cum Laude). I am also Doctor of Juridical Science from the Universidad Central de Venezuela in 1978 with honors. And I have a Superior Diploma in Comparative Law, at the International University of Comparative Sciences, Luxemburg. I am invited speaker at various universities and forums.

3.    I have been Secretary of Legal Affairs at the OAS Counsel (1978-1984). In addition, I have served in various other administrative capacities including being the legal advisor to the Venezuelan Ministry of Education (1970-1975) and for the Ecuadorian National Counsel for Modernization (CONAM) (1995-1996), advisor and litigator in civil, commercial, and business law. I am fluent in Spanish, English, German, French, Russian and Polish.

4.    I am Professor of Law at both the Universidad Central de Venezuela an the Universidad Católica Andrés Bello, Caracas, Venezuela. I teach Private International Law and Commercial Law. I am a Professor at the graduated program for the Masters Degree of Private International Law and Comparative

Law. I have also taught comparative law and conflict of laws as an associate professor at American University Washington College of Law in Washington, D.C.

5.  I have published numerous law review articles, commentaries and books in the area of Private international law. I am the author of a textbook on international law entitled "Material de Clases para Derecho Internacional Privado", Universidad Central de Venezuela, Caracas, First Edition (1979), Second Edition (1986); Third Edition (1995) and Fourth Edition (2000). I am also the author of "Guías para el Estudio de Derecho Internacional Privado", Universidad Central de Venezuela, Caracas, First Edition (1997) and Second Edition (2000). Finally, I am author of Normas Generales de Derecho Internacional Privado en America (1984). Attached as Exhibit "A" is a copy of my curriculum vitae.

6.  I served as President of the Commission charged with the responsibility of drafting the final version of the Private International Law Statute, which was presented to the Venezuelan National Assembly in 1996. I participated in parliamentary discussions of the statute and drafted commentary and interpretive legislative history regarding some of the most relevant articles of the statute. Upon the adoption of the statute, I authored several commentaries on the statute, as well as numerous notes, essays and articles in both Venezuelan and international publications regarding the statute. Finally, I have participated in numerous conferences and forums both domestically and internationally to discuss the new statute.

7.  At the present time, I am authoring a comprehensives textbook on the Venezuela Statute on Private International Law. In 2002, I was elected as Member of the Academy of Political and Social Sciences (Academia de Ciencias Políticas y Sociales).

8.  I have been qualified as an expert and rendered opinions in the United States Courts, specifically, In Re Bridgestone/Firestone, Inc., Tires Products Liability Litigation, Master File N° IP-00-9373-C-B/S MDL N° 1373, wherein I rendered an opinion regarding the jurisdiction of Venezuelan courts in a forum non conveniens analysis. In Re Bridgestone/Firestone, 190 F. Supp. 2d 1123 (S.D. Ind. 2002)

There, the Court accepted my credentials and stated:

> ...de Maekelt has much experience on which to base her knowledge of the law. De Maekelt served as President of the Commission charged with drafting the final version of the statute prior to its presentation to the Venezuelan National Assembly...She also has published extensively on the Venezuelan Statute on Private International Law...Such credentials understandably contribute to our willingness to rely on the Maekelt's statements regarding the statute.[1]

9.    My opinion is based upon my review of the following materials:

a) In Case N° 03-03-17590-CVR: Elsa Beatriz Lopez Guedez, Individually and as Administratrix of the Estate of Antonio José Manrique López, Deceased; Juan Pedro Manrique López as Administrator of the State of Dana Lys Tey Maldonado de Manrique; Juan Pedro Manrique López as next friend of Betsabel Dayan Manrique Maldonado, a minor and Antonio José Manrique Maldonado, a minor; Tadeo Maldonado, individually and Isabel Sanchéz Santa Cruz, individually; Juan Pedro Manrique López, as next friend of María José Manrique Velazquez, a minor; Juan Pedro manrique López, as next friend of Firllyth Francheska Manrique Molina, a minor, vs. Bridgestone/Firestone, Inc.; Bridgestone Corporation; Smithers Transportation Test Center A/K/A Smithers Tire & Automotive Testing of Texas, Inc.; Del Rio Test Center Inc. AND Ford Motor Company:

- Plaintiffs Original Petition;

- Defendants Bridgestone Corporation's Special Appearance, Motion to Dismiss and/or Quash for Insufficiency of Service of Process and Motion to Transfer Venue;

- Special Appearance, Motion to Transfer Venue; Motion to Dismiss on Grounds of *Forum Non Conveniens*, original Answer and Jury Demand of Defendant, Bridgestone/Firestone, North American Tire, L.L.C., individually

---

[1] 190 F. Supp. 2d al 1132.

and as successor to both Bridgestone/Firestone, Inc. and Del Rio Test Center Inc.;

- Defendants Ford Motor Company's Motion to Transfer Venue and Subject Thereto, Motion to Dismiss under the Doctrine of *Forum Non Conveniens*, Pleas against capacity, Original Answer and Reliance and Jury Demand; and

- Defendant Smithers Transportation Test Center A/K/A Smithers Tire & Automotive Testing of Texas, Inc.´s Motion to Transfer Venue and Original Answer Subject Thereto.



b) In Case N° 03-03-17602-CVR: Aida Elatrach Hange, Individually and as Representative of the Estate of Louaiy Alatrach, Deceased and as next friend of Omar Elatrach Alatrach and Charif Elatrach Alatrach, minors; Sourech Alatrach, Individually and Youssof Alatrach, Individually vs. Bridgestone/Firestone, Inc., Bridgestone Corporation, Smithers Transportation Test Center, A/K/A Smithers Tire & Automotive Testing of Texas, Inc., Del Rio Test Center Inc. and Ford Motor Company:

- Plaintiffs Original Petition;

- Defendants Ford Motor Company's Motion to Transfer Venue and, Subject Thereto, Motion to Dismiss under the Doctrine of *Forum Non Conveniens*, Plea Against Capacity, Original Answer, and Reliance and Jury Demand;

- Special Appearance, Motion to Transfer Venue; Motion to Dismiss on Grounds of *Forum Non Conveniens*, Original Answer and Jury Demand of Defendant Bridgestone/Firestone North American Tire, L.L.C., Individually and as Successor to Both Bridgestone/Firestone, Inc. and Del Rio Test Center Inc.; and

- Defendant Smithers Transportation Test Center A/K/A Smithers Tire & Automotive Testing of Texas, Inc.´s Motion to Transfer Venue and Original Answer Subject Thereto.

c) Venezuelan Private International Law Statute (Ley de Derecho Internacional Privado), Official Gazette N° 36.511 dated August 6, 1998.

II.     I make this Declaration based upon my personal knowledge and legal research of Venezuelan law, and in my capacity as a Venezuelan lawyer and Professor of Venezuelan law:

1.     The Venezuelan Statute on Private International Law, adopted on August 6, 1998[2] defines the circumstances under which a Venezuelan court will have jurisdiction. The Article 63 includes, a general derogation drafted under the following terms: "All norms regulating the subject matter of this statute are hereby derogated". Prior to the adoption of the Private International Law Statue, the rules governing jurisdiction were part of the Code of Civil Procedure (1986) under the heading of "Of International Procedural competent" (Section IV, Chapter 1, Title 1 of Book One), especially those governing the international procedural competent jurisdiction (known as jurisdiction in the Statute), articles 53 to 58, as well as a rule on lack of jurisdiction (first part of article 59) and the article 2 (exclusive jurisdiction).

2.     The fundamental principle of jurisdiction under Venezuelan law is that a defendant should be sued in his place of domicile,[3] inasmuch as it seeks to facilitate due process as a constitutional principle.[4] This principle is currently codified in Article 39 of the Statute of Private International Law, which provides that the first forum for bringing suit against a non-domiciliary defendant is the country where the defendant is domiciled.

3.     When dealing with persons non-domiciled in the Republic, the criteria for the

---

[2] Official Gazette N° 36,511 of  08-06-1998.

[3] Judgment by the Supreme Court of Justice in Political and Administrative Chamber, # 1950 of 12/21/1999. See in Tatiana Maekelt y otros, Materiales de Estudio para el Derecho Internacional Privado, 4th Edition, Universidad Central de Venezuela, Caracas, 2000.

[4] Constitution of the B. Republic of Venezuela: Article 49, heading: "Due process shall apply to all judicial and administrative actions, as a consequence: 1. Defense and legal assistance are inviolable rights at each stage and degree of the investigation and of process" This principle has been widely developed by the decisions of the Supreme Tribunal of Justice, in Constitutional Chamber, case of action for annulment by reason of unconstitutionality of article 197 of the Code of Civil Procedure, of 02/01/2001, see text at

attribution of jurisdiction may be found in articles 40, 41 and 42 of the Private International Law Statute.

4.    In this case the criteria for the attribution of jurisdiction may be found in Article 40 of the Private International Law Statute. Articles 41 and 42 are not applicable to this case because Articles 41 refers to controversies involving actions related to universal assets and Article 42 refers to cases involving actions on the status of persons or on family relationships.

5.    The indicating criteria of article 40 of the Venezuelan Statute of the Private International Law define the conditions under which the Venezuelan courts shall make use of their power to decide disputes with the strength of "res judicata".[5] In other words, the criteria for the attribution of jurisdiction "should establish which of the States with whom a specific legal relationship is connected, is competent to resolve the controversy".[6]

6.    Article 40 defines four sets of circumstances which may create jurisdiction in Venezuela over a non-domiciliary defendant, and are: the place where the personal or real property is located; the place where the obligation is performed; the place where the agreement is entered; the place where the facts are verified; and personal service of a defendant found within Venezuelan territorial boundaries (even if domiciled abroad) or cases of express or implied submission.

7.    The places where the facts are verified and of the facts show some difficulties. First, their qualification, and the fact that the product liability is so complex that it does not allow for a simple qualification of these elements. Liability is the consequence of a chain of actions that may arise within a State's territory, continuing in another one and produce the tort in another one. In view of these

---

[5] Eugenio Hernández Bretón: Derecho Procesal Civil Internacional Jurisdicción Competencia, Falta de Jurisdicción y Litispendencia Internacional, Biblioteca de la Academia de Ciencias Políticas y Sociales, Caracas, 1998, pp. 95-97.
[6] Tatiana Maekelt: Las disposiciones del Derecho Procesal Internacional en el Código de Procedimiento Civil venezolano vigente. In Libro homenaje a Werner Goldschmidt, Caracas, 1997, particularly p. 165 and the therein quoted judgment of the Supreme Court of Justice.

opinions, the doctrine supports flexible qualification of these criteria, based on the links they may have with the case at issue, bearing in mind the victims' justified expectations. It is also hard to establish the wide range of cases constituting their premises.

8.  In my opinion, the referenced language of subparagraph 2 pf article 40 requires the judge evaluating the possibility of exercising Venezuelan jurisdiction to engage in the equivalent of a "most significant contact" analysis. In cases like this one where important elements of the case occurred in more than one jurisdiction and witnesses and evidence related to those facts is similarly not concentrated in one jurisdiction alone, the Court should weigh which of the competing jurisdictions has the "most significant contact" to the controversy to be decided in determining whether jurisdiction exists in Venezuela over a non-domiciliary defendant. It is not enough that one or more facts occurred in Venezuela; the most significant contacts to the underlying tortious conducts will determine whether jurisdiction will exist in any particular case.[7]

9.  The Private International Law Statute provides for the possibility that the parties submit expressly or tacitly to the jurisdiction of Venezuelan courts (article 40, paragraph 4th).

10. In cases of express submission, the same must be in writing (art. 44), that is to say, both parties must have expressly and unequivocally stated, in writing, their will to submit themselves to the jurisdiction of Venezuelan courts. Express submission requires, however, the agreement of both parties. That is, in order to confer jurisdiction on a Venezuelan court through express submission, there must be an agreement by both parties to a dispute or controversy to accept Venezuela

-Arístides Rengel Romberg: La Competencia Procesal Internacional en el Derecho Venezolano. Libro Homenaje a la Memoria de Lorenzo Herrera Mendoza, T.I., Universidad Central de Venezuela, Caracas, 1970, pp.65 y ss., particularly p .67.

[7] Tatiana Maekelt : Codificación Interamericana sobre Derecho Internacional Privado y su rol en la integración universal. In Revista de Estudios Latinoamericanos, Mundo Nuevo, # 83-84, Instituto de Altos Estudios de América Latina, Universidad Simón Bolívar, Caracas, 1999.



8

as the proper forum to hear the dispute. In the absence of such agreement by one side or the other, jurisdiction cannot be created by unilateral submission.

11. There is tacit submission when the following actions concur: a) for the plaintiff, by the simple fact of filing the complaint before a Venezuelan court. This prevents that the plaintiff may pretend to object to the jurisdiction of the Venezuelan courts in the event of a counterclaim by the defendant; and, b) for the defendant, after having appeared in trial, by the mere fact of taking any step other than filing a preliminary motion alleging lack of jurisdiction, or objecting to a cautionary measure (art. 45).[8] With regard to express or tacit submission, the precedents of the Supreme Court of Justice (now Supreme Tribunal of Justice) have been establishing that in international law the principle of the extension of jurisdiction by reason of the territory is accepted, when grounded on the principle of the litigating parties autonomy.[9]

12. I am not aware of any reported decision in Venezuelan jurisprudence where jurisdiction over a civil dispute involving tort liability of a non-domiciliary defendant was confirmed in a Venezuelan court by express submission by mutual agreement of both parties. Unilateral submission is not effective to create jurisdiction.

13. Submission is excluded in the field of actions affecting the creation, modification or extinction of in rem rights on real property (art. 46) —located abroad— in spite of the fact that the law does not provide it expressly, save when allowed by the law of their location. Venezuelan law does not accept the submission because it

---

[8] See, for instance, Judgment by the Supreme Court of Justice in Political and Administrative Chamber, # 646 of 10-16-1997.

[9] Aristides Rengel Romberg: Tratado de Derecho Procesal Civil, Tomo I, Octava edición, Organización Gráficos Capriles, C.A., Caracas, 1992, p. 385.
-See also Judgment by the Supreme Court of Justice, Political and Administrative Chamber, 20-10-1988; # 540-92, 05-11-1992; # 472, 14-07-1994. See in Tatiana Maekelt: Material de Clase para Derecho Internacional Privado, Universidad Central de Venezuela, Caracas, 1995, pp. 428-429.

acknowledges exclusive condition to Venezuelan courts when the real property is located in Venezuela.[10]

14.  The determination of the Venezuelan courts' jurisdiction must be made not only on the basis of the jurisdiction attributing criteria but also on that of the exceptions thereto as provided by the Private International Law Statute. In the event that one of the jurisdiction criteria may be held as possibly operating, one should also find out whether the attributed jurisdiction is exclusive or not. In the event of exclusive jurisdiction, there would not be any waiver thereof, since the Private International Law Statute (art. 58) expressly prohibits waiver. Yet, when dealing with concurrent jurisdiction, it should be waived not only in view of the exception of international *lis pendens* and/or international *res judicata,* provided in article 58, but also by reason of justice, procedural economy and international harmony of solutions.

15.  Exclusivity of jurisdiction operates only in consideration of express legal regulation or due to a conclusive technical reason[11] and it may be qualified in two ways: a priori, by means of an express legal formula, or subsequently, as a consequence of the specific case's analysis. Both formulas have a common denominator: the protection of the State's interests.[12] Article 47 of the Private International Law Statute, without defining these subject matters, moves us closer to them, when acknowledging what pertains to the fact that they may not be conventionally derogated "…in cases where the issue should refer to disputes related to rights in rem on real property situated in the territory of the Republic, or when dealing with issues not admitting settlement or affecting essential principles of Venezuelan public policy".

---

[10] Eugenio Hernández-Bretón: Algunas cuestiones de Derecho Procesal Civil en la Ley de Derecho Internacional Privado. In Revista de la Facultad de Ciencias Jurídicas y Políticas, N° 117, Caracas, 2000, pp. 92-93.

[11] Joaquín Sánchez Covisa: Anotaciones sobre la Competencia Procesal Internacional Indirecta. In Obra Jurídica, Ediciones de la Contraloría General de la República, Caracas, 1976, p. 298.

[12] Ibidem... pp. 398-400.

16.  It is clear that the lawmaker's intention was to point out the three assumptions expressly provided in article 47, as possible exceptions to the rule of the conventional waiver of jurisdiction, and to allow exclusive jurisdiction of Venezuelan courts. From a congruent construction of said article's text, one may draw that the exclusivity of jurisdiction, under the assumption of disputes related to rights on real property, is automatic or direct. One may draw also, under the two other assumptions (subject matters on which there may not be any covenant, and essential principles of Venezuelan public policy), each specific case requires its own review. As a consequence, in these last two cases, the judge should weigh the circumstances of each case, in order to determine whether there is exclusive jurisdiction or not. Hence, exclusivity would be determined subsequently.[13] In going through this test, the Judge should also evaluate the convenience of judging the matter at issue, considering practical circumstances and the possibility of satisfying the plaintiff's pretensions.

17.  By default of exclusive jurisdiction, there could be concurrent. If such were the case, the decision to make use of another jurisdiction is the plaintiff's privilege; this does not exclude the possibility of the efficacy of the judgment entered by another State having concurrent jurisdiction. If plaintiff should not decide, the preference among concurrent jurisdictions is the judge's choice, based on the degree of connection of the cause with a specific jurisdiction. The judge should bear in mind also both litigating parties public and private interest, the availability of evidence, the cost of the witnesses, the congestion of courts and the convenience of the litigation of foreign judicial disputes in local courts.

18.  The Private International Law Statute, when admitting the exception of "international lis pendens" and the "exception for international connection of causes", formally derogates the decadent principle of the preference of Venezuelan jurisdiction when opposed to foreign jurisdiction.[1] The currently

[13] Gaetano Morelli: Derecho Procesal Civil Internacional. Translation by Santiago Sentis Melendo, Ediciones Jurídicas Europa-América, Buenos Aires, 1953, pp. 177 et seq.
-Eugenio Hernández-Bretón: Algunas Cuestiones...op. cit., p. 95.

governing criterion acknowledges the reality of an interdependent international community whereby it pretends to make it easier for the individual to choose jurisdiction, and this does not affect sovereignty at all, it adapts it rather to the requirements of each case.

19.   Once the principle of preference of our jurisdiction has been derogated and service of the non-domiciled defendant has been introduced as a criterion for the attribution of jurisdiction —and this originated the "forum non conveniens" doctrine in Common Law countries—, nothing objects to its application, especially in two situations: when jurisdiction hardly shows any link with the case or when submission to Venezuelan courts leads to a clearly unfair outcome. In this last case it should be applied with all its strength. I am not aware of any reported decision in Venezuelan jurisprudence where the doctrin of forum non conveniens was confirmed.

20.   In the matter of the law applicable to tort liability, the Private International Law Statute did not derogate any rule, since there was no regulation on this respect in domestic legislation and it is the example of a new set of rules in this subject matter, included in article 32, referring to the law applicable to torts and to the management of affairs.[14]

21.   The Venezuelan doctrine has commented on the article, indicating that the same will apply to all cases of tort, even the assumptions of products liability.[15]

22.   The article 32 subjects the tort to the legal system of the place where the effects of the damage are produced. It is difficult to determine such place; especially when the tort is related to several countries.  As to the "place where the effects were produced" connecting factor's qualification, in matters of conflict of laws, the modern doctrine is of the opinion that the connecting factor should be construed

---

[14] " Article 32: Torts are governed by the Law of the place where their effects have been produced. The victim, however, may move for application of the Law of the State where the cause generating the tort was produced."

[15] Fabiola Romero. Las personas jurídicas y las obligaciones en la Ley de Derecho Internacional Privado venezolana, In Revista # 117 Facultad de Ciencias Jurídicas y Políticas, Universidad Central de Venezuela, Caracas 2000, pp. 78-79.

12

flexibly depending on the links said facts may have with the case at issue and the objectives sought.

23.    Another important element is the place of the damage-generating cause, that is to say, the place where the tort is totally or partially made. The generating cause may consist in the manufacturer's unlawful conduct, by means of which it violates the duty of diligent manufacturing, in other words, that of the best head of family.[16]

24.    A positive action by the agent has been defined also as the generating cause of damages, such as when doing something against the law or against what has been expressly agreed in a contract, or a negative action or an abstention, as not doing what one was legally and validly bound to do.[17]

25.    Last, we must refer to the victim's action; the victim may choose between the Law of the place where the effects of the tort were produced and the place of their generating cause. This choice will be made bearing two elements in mind: the closest links shown by the situation with the facts linking the tort to a specific place, since the beginning of the unlawful conduct until the harm is materialised[18]

26.    If the Venezuelan court asserts its jurisdiction to know of and decide a tort case with foreign elements, the Venezuelan Judge shall apply his sources in order to establish what law should govern the case.

TATIANA BOGDANOWSKY de MAEKELT
Cédula de Identidad V-962.540

---

[16] James Otis Rodner: La Responsabilidad Civil del Fabricante en el Derecho Venezolano and the monography by Angel Rojo, In Revista # 23 de la Facultad de Derecho, Universidad Católica Andrés Bello, academic year of 1976-1977. pp. 236-258, especially, p. 243.

[17] Supreme Court of Justice, Political and Administrative Chamber, Judgment 08/10/61, Jurisprudencia Ramírez & Garay, T. IV, p. 474.
- Supreme Court of Justice, Political and Administrative Chamber, Judgment 08/14/96, Jurisprudencia Pierre Tapia Corte Suprema de Justicia, August/September 1996, p. 141.

[18] Resolution on delictual obligations in Private International Law adoptted by the Institut de Droit International during its Edinburgh session, on September 11, 1979 (dispositive part)

OPTIONAL FORM 175
(FORMERLY FS-88)
MARCH 1975
DEPT. OF STATE
50175-101

# Certificate of Acknowledgment of Execution of an Instrument

BOLIVARIAN REPUBLIC OF
VENEZUELA
.................................................................
(Country)

CITY OF CARACAS
.................................................................
(County and/or other political division)                    } SS:

EMBASSY OF THE
.................................................................
(County and/or other political division)

UNITED STATES OF AMERICA
.................................................................
(Name of foreign service office)

I, MATTHEW A. COTTRELL ..........................................................................

of the United States of America at CARACAS, VENEZUELA ..................................................................

duly commissioned and qualified, do hereby certify that on this ....................................................

day of ................08-21-03................ , before me personally appeared ....................................
            (DATE (mm-dd-yyyy))

------------------------------------TATIANA  BOGDANOWSKY de MAEKELT-------------------

-------------------------------------------------------------

to me personally known, and known to me to be the individual-described in, whose name ....is.... subscribed to,

and who executed the annexed instrument, and being informed by me of the contents of said instrument ....she....

duly acknowledged to me that ....she.... executed the same freely and voluntarily for the uses and purposes therein

mentioned.

[SEAL]

In witness whereof I have hereunto set my hand and
official seal the day and year last above written.

MATTHEW A. COTTRELL
..................................................................
VICE-CONSUL    of the United States of America.

**Exhibit "A"**

## CURRICULUM VITAE

I.-    PERSONAL DATA

| | |
|---|---|
| First Name | TATIANA |
| Surname: | BOGDANOWSKY  DE  MAEKELT |
| Nationality: | Venezuelan |
| Address in Venezuela: | VALERA, MAEKELT, & ASOCIADOS<br>Avda. Venezuela, Edificio Val-Fer, PH2, El Rosal, Caracas 1060. |
| Telefax number: | (58212) 9514214 - 9515164 - 9510596 |
| E-mail address: | valmaben@cantv.net |

II    EDUCATION AND DEGREES OBTAINED

- Central University of Venezuela, Caracas. Law Degree (1959). Honors: Summa Cum Laude.
- University of Goethe - Frankfurt. Germany. Doctor of Law (1961). Cum Laude.
- Central University of Venezuela. Doctor of Juridical Science (1978).
- Course in Private International Law. The Hague. Academy of International Law (1960).
- Courses in Comparative Law. International University of Comparative Sciencies, Luxemburgo (1960-1961). Superior Diploma in Comparative Law.

III    STANDING IN RANK

- Professor of Private International Law, Commercial and Comparative.
- Law Practicing lawyer.
- Member of the Venezuelan Academy of Political and Social Science.

IV    PROFESSIONAL EXPERIENCE:

* VALERA, MAEKELT & ASOCIADOS. Partner. Advisor and litigator in civil, commercial and business law; conflict of laws; international procedure; domestic and international contracts, including specilly internacional purchase of goods, transfer of technology, distribution agreements, leasing, employment contracts, setting up of new ventures, including

corporations, partnerships and not-for profit organizations, and compliance thereof with domestic and international regulations; judicial international cooperation; procedure involving rogatory letters, applications of international law, procedure for the recognition of foreign judicial decisions and other acts issued by foreign authorities; as external counsel for corporations. International Arbitration.

* Expert and rendered opinions in the United States courts (Bridgestone/Firestone, Inc., Tires Products Liability Litigation, Master File N° IP-00-9373-C-B/S MDL N° 1373). An opinión regarding the jurisdiction of Venezuelan courts in a forum non conveniens analysis.

* Arbiter of the Venezuelan Chambre of Commerce (Cámara de Comercio de Caracas) since 1998.

* Arbitrator to the International Centre for Settlement of Investment Disputes (ICSID) since 2002.

* PRIVATIZATIONS:

* Consejo Nacional de Modernización (CONAM) Ecuador (1995-1996). Restructuring of the Telecommunications Sector and its subsequent privatization.

* Other Privatization projects.

## V     POSITIONS HELD

* Chairperson, Private International Law and Comparative Law Section of Institute of Private Law, Central University of Venezuela (1974 to date).
* Secretary for Legal Affairs, General Counsel, Organization of American States, Washington, D.C. (1978-1984).
* Director and Founder of the Legal Research Center. Andrés Bello Catholic University, Caracas, Venezuela (1977-1978).

## VI     TEACHING ACTIVITIES.

* **Central University of Venezuela.**
* Faculty of Law and Political Science.
  Founder and general coordinator of the Graduate Program for the Master's Degree of Private Internacional Law and Comparative law.
  Private International Law Chairperson (1962 to date).
  Commercial Law Chairperson.
  Commercial Law Chairperson, practical works and seminars.
  Postgraduated Courses in Law. Among others:
  Effectiveness and updating of Private International Law.
  Legal system of international corporations.
  New aspects in Private International Law.
  International Arbitration (Several courses)
  International Contracts. Conflict of Laws and Jurisdictions.
  Comparative Law. Institutional aspects and practical application.
  New aspects of International Procedure Law.

- **Andrés Bello Catholic University.**
  Postgraduated courses.
  Private International Law Chairperson. (since 1986)

- **American University, Washington College of Law.** Washington, D.C.
  Adjunct Professor of Law. Courses on International Conflict of Laws (1982-1984).

- **Inter-American Juridical Commitee**
  Rio de Janeiro, Brazil.
  Director of the courses on International Law (1979-1984).

- **The Hague Academy of International Law.**
  Course on General Rules of Private International law.

## VII    PUBLICATIONS

BOOKS.

- "Material on Conflict of Laws", Universidad Central de Venezuela, Caracas, First Edition (1979), Second Edition(1986), Third Edition (1995), 4th edition, (2000)
- "Normas Generales de Derecho Internacional Privado en América" Central University of Venezuela. 1984. Academy of Legal and Political Sciences Award, 1985.
- "General Rules of Private International Law in the Americas. New Approach", Recueil des Cours, Volume N° 177, 1982 IV.
- "Specialized Conference on Conflict of Laws". (CIDIP I). Universidad Central de Venezuela, Caracas, 1979.
- "Estatuto Autónomo en el Derecho Internacional Privado" Thesis submitted for Doctor Degree at the Central University of Venezuela. 1978.
- "Das Kindschaftsstatut im Internationalen Unehelichenrecht" Thesis submitted for Doctoral Degree at the University of Goethe-Frankfurt, Federal Republic of Germany 1962.
- "Independent Statute on Conflict of Laws". Graduation essay for the doctor's degree. Universidad Central de Venezuela, 1978.
- "Das Kindschaftsstatut im internationalen Unehelichenrecht". Graduation essay for the doctor's degree of Goethe University. Frankfurt, Germany 1961

MOST  IMPORTANT ARTICLES, 1998-2003

\* Publications in several venezuelan and foreign law reviews. Numerous articles on topics related to Conflict of Laws, American Integration, Public International Law and Inter American System, Inter American Codification on transnational and multinational companies, international contracts, especially:

* Regulación de la Jurisdicción en el Sistema Venezolano de Derecho internacional Privado. In Libro Homenaje a Juan María Rouvier, Colección Libros Homenaje, Tribunal Supremo de Justicia, Caracas, 2003.

* Al rescate del Arbitraje en Venezuela. In Libro Homenaje al Dr. Gustavo Planchart Manrique, Caracas, 2003.

* Ley de Derecho internacional privado. Tres años de Vigencia. Trabajo de Incorporación a la Academia de Ciencias Políticas y Sociales, Caracas, 2002.

* Eficacia Extraterritorial de las Sentencias y demás Actos de Autoridades Extranjeras. In Libro Homenaje a Gonzalo Parra –Aranguren., Addedum 2001, Colección Libros Homenaje, Tribunal Supremo de Justicia, Caracas, 2002.

* Eficacia de las Sentencias Extranjeras en el Sistema Venezolano. In Liber Amicorum a Jünrgen Samtleben. Instituto Max Planck de Derecho Extranjero y Derecho Internacional Privado, Hamburgo, Alemania, 2002.

* Eficacia Extraterritorial de las Sentencias y demás Actos de Autoridades Extranjeras en Venezuela con especial referencia al Sistema Mexicano. Ponencia presentada en el XXV Seminario de Derecho Internacional Privado y Comparado, México. In: Jurídica. Anuario del Departamento de Derecho de la Universidad Iberoamericana. N° 31, México, 2001.

* Nacionalidad y Ciudadanía en la Constitución de 1999. Academia de Ciencias Políticas y Sociales, Serie Eventos, 2000.

* Futuro del Derecho Internacional Privado venezolano. In: Revista Mexicana de Derecho Internacional Privado, México, mayo 2000.

* Das Neue venezolanische Gesetz über Internationales Privatrecht. In: Rabels Zeitschrift Vol. 64, 2000, Max Planck Institut, Hamburg, Germany.

* Flexibilización del Contrato Internacional en la Convención Interamericana sobre Derecho Aplicable a los Contratos Internacionales. In: Libro Homenaje a Nascimento e Silva. Dimensão Internacional do Direito, Sao Paulo, Brasil, 2000.

* Private International Law in Venezuela. In: Private International Law at the end of the 20th Century: Progress or Regress? International Academy of Comparative Law, Kluwer Law International, The Hague, 2000.

* Ley de Derecho Internacional Privado. Comentarios Generales. In: Revista de la Facultad de Ciencias Jurídicas y Políticas, Universidad Central de Venezuela, N° 117, 2000.

* Aportes Jurídicos de la OEA. Balance y Perspectivas. Instituto de Altos Estudios Diplomáticos "Pedro Gual", Serie Investigación N° 5, 2000.

* Ley de Derecho Internacional Privado. Breves Comentarios. Concordancias y Derogatorias. Biblioteca de la Academia de Ciencias Políticas y Sociales. Serie Eventos, Primera edición 1999, Segunda edición 2001.

* Arbitraje Comercial Internacional en el Sistema Venezolano. In: Seminario sobre la Ley de Arbitraje Comercial, Biblioteca de la Academia de Ciencias Políticas y Sociales. Serie Eventos, 1999.

* El Rol de la Codificación Interamericana en el Mundo Globalizado. XXV Curso de Derecho Internacional. Comité Jurídico Interamericano, Secretaria General, OEA, Wahington D.C., 1999.

* Derecho Internacional Privado a finales del siglo XX. In: El Derecho venezolano a finales del siglo XX, ponencia venezolana para el XV Congreso de Derecho Comparado, Bristol, Inglaterra, Academia de Ciencias Políticas y Sociales, Caracas, 1998.
* Antecedentes, Metodología y Parte General del Proyecto de Ley de DIP. In Comentarios sobre Proyecto de Ley de DIP. Academia de Ciencias Políticas y Sociales, 1998.
* Tráfico Internacional de Menores. In: "Adopción Internacional", Universidad Central de Venezuela, Caracas, 1998.

VIII    Memberships:

* Venezuelan Bar Association
* Venezuelan Interuniversity Asociation of Comparative Law  (Founding Member)
* Venezuelan Asociation of International Law (Founding Member)
* Hispanic-Portuguese-American Institute of  International Law  (HILADI).
* International Academy of  Comparative Law, The Hague, Netherland.
* Gesellschaft für Rechtsvergleichung, Germany
* Société de Législation Comparée, Paris, France.
* American Bar Association. Washington D.C.
* Inter-American Bar Association. Washington D.C.
* American Society of International Law. Washington D.C.
* Uruguayan Asociation  of International Law.
* Peruvian Society  of International Law.
* Mexican Academy of Conflict and Comparative Laws.

IX    HONORS

* Member of the Academy of Political and Social Sciences (Individuo de Número de la Academia de Ciencias Políticas y Sociales), 2002.
* "Orden Libertador" received on July 4th, 1973.
* "Orden 27 de junio" dated January 8, 1973. For contributions to the teaching activities.
* Diploma for "Outstanding contribution to International Legal Studies". Washington College of Law of The American University, 1984.
* "José María Vargas" Medal, for outstanding contribution to the Central University of Venezuela.
* Honor's Diploma, Venezuelan Bar Association.
* "Luis Sanojo" Medal.

X    LANGUAGES

Spanish, German, French, English, Russian and Polish.

Agosto, 2003.

## PRIVATE INTERNATIONAL LAW STATUTE

### CHAPTER I
### GENERAL PROVISIONS

**Article 1**.- Issues of fact related to foreign legal systems shall be governed by the rules of Public International Law on the issue, in particular those established in international treaties in force in Venezuela; in lack thereof, Venezuelan rules of Private International Law shall be applied; in lack thereof, use shall be made of analogy and, finally, generally accepted principles of Private International Law shall govern.

**Article 2**.- Foreign law proving to be competent shall be applied in accordance with the principles governing in the respective foreign country, so as to allow the objectives sought by the Venezuelan rules of conflict should be met.

**Article 3**.- When different legal systems coexist in the foreign law proving to be competent, the conflict of law arising between those systems shall be solved in accordance with the principles being in force in the corresponding foreign Law.

**Article 4**.- When the competent foreign Law should provide that the Law of a third State is applicable, and this third State, on its turn, should provide that it is competent, this third State's domestic law shall be applicable.
When the foreign Law should provide that Venezuelan law is applicable, this Law shall be applied.

**Article 5**.- Issues of law having been created in accordance with a foreign Law attributing its own competence under international admissible criteria shall produce effect in the republic, provided they are not in contradiction with Venezuelan rules of conflict, that the Venezuelan law should claim exclusive competence over the respective matter, or that they should be clearly incompatible with general principles of Venezuelan public policy.

**Article 6**.- Previous, preliminary or incidental issues that may arise from a principal issues, need not necessarily be resolved in accordance with the law that governs the principal issue.

**Article 7**.- The different laws that may be applicable to various aspects of one and the same juridical relationship shall be applied harmoniously in order to attain the purposes pursued by each of such laws. Any difficulties that may be caused by their simultaneous application shall be resolved in the light of the requirements of justice in each specific case.

**Article 8.-** Provisions of foreign Law to be applied in accordance with this statute, shall only be excluded when their application should produce results being clearly incompatible with the essential principles of Venezuelan public policy.

**Article 9.-** When the foreign Law having been declared applicable to the issue should establish essential institutions or proceedings for adequate application thereof not being contemplated by the Venezuelan legal system, applications of said foreign Law may be denied provided that Venezuelan Law should not have analogous institutions or proceedings.

**Article 10.-** Notwithstanding the provisions of this statute, imperative rules of Venezuelan law having been adopted to regulate issues of fact connected to several juridical systems shall necessarily apply.

## CHAPTER II
## OF DOMICILE

**Article 11.-** An individual's domicile is in the territory of the State where he [she] has his [her] regular residence.

**Article 12.-** The married woman has her own domicile different from her husband's if it has been acquired in accordance of what is provided in the former article.

**Article 13.-** The domicile of minors and incompetent persons being subject to parental power, to guardianship or curatorship, is found in the territory of the State where they have their regular residence.

**Article 14.-** When the regular residence in the territory of a State should be the exclusive results of functions conferred by a national, foreign or international public body, such will not produce the effects provided in the former articles.

**Article 15.-** Provisions of this chapter apply as long as this statute refers to the domicile of an individual and, generally, when the domicile constitutes a mean to determine the applicable Law or the Courts' jurisdiction.

## CHAPTER III
## OF PERSONS

**Article 16.-** The existence, status and capacity of persons are governed by the Law of their domicile.

**Article 17.-** The change of domicile does not restrict any acquired capacity.

**Article 18.-** A person being incapable under the former provisions acts validly if deemed capable by the Law governing the act's contents.

**Article 19**.- Limitations of capacity established in the Law of the domicile, based on racial, nationality, religion or rank differences shall not produce effects in Venezuela.

**Article 20**.- The existence, capacity, operation and dissolution of bodies corporate of a private nature are governed by the Law of the place of their creation.
Place of their creation means that where the formal and substantial requirements for the creation of such bodies corporate are met.

## CHAPTER IV
## OF THE FAMILY

**Article 21**.- The capacity to enter into matrimony and the substantial requirements of matrimony are governed, for each of the spouse's, by the Law of their respective domicile.

**Article 22**.- The personal and property effects of matrimony are governed by the Law of the spouse's joint domicile. Should they have different domiciles, then the last joint domicile shall apply.

Prenuptial agreements being valid under a competent foreign Law may be recorded at any time with the corresponding Venezuelan Main Public Records Office, when pretending that the may produce effects as to third bona fide persons, over real property located in the territory of the Republic.

**Article 23**.- Divorce and separation are governed by the Law of the domicile of the plaintiff spouse.

The plaintiff spouse's change of domicile produces its effects only one year after having entered into the territory of a State with the purpose of establishing regular residence therein.

**Article 24**.- The establishment of filiation, as well as the relations between parents and their children, are governed by the Law of the child's domicile.

**Article 25**.- The Law of their domicile shall apply to the adopting parent and the adopted child as to all related to substantial requirements being necessary for the adoption's validity.

**Article 26**.- Guardianship and other institutions aimed at protecting the incapable persons are governed by the law of the incapable person's domicile.

## CHAPTER V
## OF PROPERTY

**Article 27.-** The creation, contents and extension of in rem rights over property, are governed by the Law of the place of their situation.

**Article 28.-** The moving of personal property has no influence on the rights that may have been validly created under the rule of the former Law. Such rights, however, may only be opposed to third parties, after fulfillment of the requirements being provided therefore by the Law of the new situation.

## CHAPTER VI
## OF OBLIGATIONS

**Article 29.-** Conventional obligations are governed by the Law agreed to by the parties.

**Article 30.-** Lacking a valid indication, conventional obligations are governed by the Law with which it has the closest ties. The Court will take into account all the objective and subjective elements of the contract in order to determine such Law. It shall also take into account the General Principles of International Commercial Law recognized by international organizations.

**Article 31.-** In addition to the provisions of the former articles, whenever it should so result, application shall be made of rules, customs and principles of International Commercial Law, as well of generally accepted trade uses and practices, with the purpose of reifying the requirements imposed by justice and aquity in the particular case.

**Article 32.-** Torts are governed by the Law of the place where its effects have been produced. The victim, however, may move for application of the Law of the State where the cause generating the tort was produced.

**Article 33.-** Management of affairs, payment of what is undue and enrichment without consideration are governed by the Law of the place where the fact generating the obligation was realized.

## CHAPTER VII
## OF SUCCESSIONS

**Article 34.-** Successions are governed by the Law of the principal's domicile.

**Article 35.-** Descendants, ascendants and the surviving spouse not being legally separated as to property, may, in all cases, make the right to the legally mandatory inheritance portion provided by venezuelan Law, effective as to property situated in the Republic.

**Article 36**.- In the event that, under the competent Law, the succession rights may correspond to the State, or if there were no heirs or if their existence should be ignored, property situated in the Republic shall pass to the Venezuelan Nation's patrimony.

## CHAPTER VIII
## OF THE FORM AND PROOF OF ACTS

**Article 37**.- Juridical acts are valid, as to the form, if they meet the requirements of any of the following juridical systems.
1) That of the place of the act's execution,
2) That governing the act's contents, or
3) That of the domicile of the executing party or of the executing parties' joint domicile.

**Article 38**.- The means of evidence, their efficacy and the determination of the burden of the proof are governed by the Law governing the corresponding juridical relation, without prejudice to the fact that its procedural forwarding may adjust to the Law of the Court or of the officer before whom it is produced.

## CHAPTER IX
## OF JURISDICTION AND COMPETENCE

**Article 39**.- Additionally to the jurisdiction being vested by law on the Venezuelan Courts in actions filed against persons with domicile in the national territory, the Courts of the Republic shall have jurisdiction in actions filed against persons having their domicile abroad in cases contemplated in articles 40, 41 and 42.

**Article 40**.- Venezuelan Courts shall have jurisdiction to hear in trials resulting from the filing of actions in property:

1) When the actions at issue should relate to the disposition or holding of personal or real property situated in the territory of the Republic.

2) When the actions at issue should relate to obligations to be complied within the territory of the Republic or deriving from contracts entered or facts verified in said territory.

3) When the defendant should have been personally served within the territory of the Republic.

4) When the parties should expressly or tacitly submit to their jurisdiction.

**Article 41**.- Venezuelan Courts shall have jurisdiction to hear in trials resulting from the filing of actions related to universal assets:

1) When Venezuelan Law should be competent, under the provisions hereof to govern the substance of the litigation;

2) When property being an integral part of the universal assets should be situated in the territory of the Republic

**Article 42.-** Venezuelan Courts shall have jurisdiction to hear in trials resulting from the filing of actions on the status of persons or on family relationships:

1) When Venezuelan Law should be competent, under the provisions hereof to govern the substance of the litigation;

2) When the parties should expressly or tacitly submit to their jurisdiction, provided the cause should have some effective link.

**Article 43.-** Venezuelan Courts shall have jurisdiction to adopt provisional measures to protect the persons being in the territory of the Republic, even when in want of jurisdiction to hear on the substance of the litigation.

**Article 44.-** Express submission shall be evidenced in writing.

**Article 45.-** Tacit submission shall result, for plaintiff, from the fact of filing the complaint and, for defendant, from the fact of performing during the trial, personally or through counsel, any action other than moving for dismissal for want of jurisdiction or to oppose a preventive measure.

**Article 46.-** Submission is not valid in the issue of actions affecting the creation, amendment or extinction of rights in rem on real property, save when the Law of the real property's situation should so allow it.

**Article 47.-** Jurisdiction corresponding to Venezuelan Courts, under the former provisions may not be waived conventionally in favor of foreign Courts or of arbitrators deciding abroad, in cases where the issue should refer to disputes related to rights in rem on real property situated in the territory of the Republic, or when dealing with issues not admitting settlement or affecting essential principles of Venezuelan public policy.

**Article 48.-** Whenever Venezuelan Courts should have jurisdiction under this Chapter's provisions, territorial internal competence shall be governed by provisions in articles 49 through 51 hereof.

**Article 49.-** As to competence to hear on trials originated by the filing of actions of a property related nature:

1) When forwarding actions related to the disposition or holding of personal or real property situated in the territory of the Republic, it shall pertain to the Court of the place where the property is located;

2) When forwarding actions related to obligations to be performed in the territory of the Republic or deriving from contracts entered or facts verified in said territory, it shall pertain to the Court of the location where the obligation should be performed or where the contract should have been entered or where the fact originating the obligation should have been verified;

3) When the defendant should have been personally served in the territory of the Republic, the Court of the place where service occurred;

4) When the parties should have expressly and generically submitted to the Courts of the Republic, to that turning to be competent by virtue of any of the criteria indicated in the three former paragraphs and, by default, to the Court of the capital of the Republic.

**Article 50**.- As to competence to hear on trials originated by the filing of actions related to universal set of property:

1) When Venezuelan Law should be competent, under the provisions hereof, to govern the substance of the litigation, it shall pertain to the Court where the person through whom competence is attributed to Venezuelan Law should have domicile.

2)When property being an integral part of universal set of property should be situated in the territory of the Republic, it shall pertain to the Court of the place where most of the property being part of the universal set of property is situated.

**Article 51**.- As to competence to hear on trials originated by the filing of actions related to the status of persons or to family relations:

1) When Venezuelan Law should be competent, under provisions hereof, to govern the substance of the litigation, it shall pertain to the Court where the person through whom competence is attributed to Venezuelan Law should have domicile.

2) When the parties should expressly or tacitly submit to its jurisdiction, it shall pertain to the Court of the place where the cause should be linked to the territory of the Republic.

**Article 52**.- The norms established in articles 49, 50 and 51 do not exclude the competence of different Courts, when it should be attributed to them by other laws of the Republic.

## CHAPTER X
## OF THE EFFICACY OF FOREIGN JUDGMENTS

**Article 53**.- Foreign judgments shall be effective in Venezuela provided they meet the following requirements:

1) That they should have been issued in civil or commercial matters, or, generally, in matters related to private juridical relationships;

2) That they should force of *res judicata* under the Law of the State where they were pronounced;

3) That they should not relate to *in rem* rights on real property situated in the Republic or that exclusive jurisdiction to know of the affair should not have been taken away from Venezuela;

4) That the sentencing State's Courts should have jurisdiction to hear the cause, under the general principles on jurisdiction established by Chapter IX hereof;

5) That the defendant should have been duly served, with sufficient time to appear, and that, generally, procedural guarantees should have been afforded to ensure a reasonable possibility of defense;

6) That they should not be incompatible with a previous judgment having authority of *res judicata*; and that there should not be pending, before Venezuelan Courts, a trial with the same object and between the same parties having commenced before the foreign judgment should have been issued.

**Article 54**.- If a foreign judgment should not be able to display full efficacy, its partial efficacy may be admitted.

**Article 55**.- In order to proceed with the enforcement of a foreign judgment, domestic enforcement thereof should have been awarded in accordance with the procedure provided by law and after previous verification that it meets the requirements of article 53 hereof.

## CHAPTER XI
## OF PROCEDURE

**Article 56**.- The competence and form of procedure shall be governed by the Law of the officer before it is forwarded.

**Article 57**.- The Venezuelan judge's want of jurisdiction with regard to the foreign Judge shall be declared ex officio, or at the request of party, at any stage or degree of process.

Any motion for a ruling on jurisdiction suspends the proceedings until the respective should have been made.

In the event that jurisdiction of Venezuelan should be upheld, the cause shall go on as from the stage where it should be found when the ruling is made; however, the decision denying it shall be brought to the Supreme Court of Justice, at Political and Administrative Chamber, for which purpose the record shall be forthwith remitted to it and if such ruling should be upheld, the cause being thus closed.

**Article 58**.- Exclusive Venezuelan jurisdiction is not excluded by the pendency before a foreign Judge of the same cause or of any other linked to it.

**Article 59**.- The Courts of the Republic may address themselves to any competent foreign authority, by means of letters rogatory, for the performance of services, evidence related proceedings or any other judicial action turning to be necessary for good development of the process. They shall also process, as briefly as possible, the letters rogatory coming from foreign Courts adjusted to the principles of International Law applicable to the matter.

**Article 60**.- Foreign Law shall be applied *ex officio*. The parties may bring information related to the applicable foreign Law and the Courts and authorities may issue orders tending to better knowledge thereof.

**Article 61**.- Recourses provided by the law shall be admissible under any juridical system which should have been applied in the decision being subject to such recourses.

**Article 62**.- Save for provisions in article 47 hereof, everything related to international commercial arbitration shall be governed by special norms regulating the matter.

## CHAPTER XII
## FINAL PROVISIONS

**Article 63**.- All norms regulating the subject matter of this statute are hereby derogated.

**Article 64**.- This statute shall be in force six months after its publication in the Official Gazette, of the Republic of Venezuela.

Official Gazette N° 36,511 of 08-06-1998. Translation.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: BRIDGESTONE/FIRESTONE, INC.
PRODUCTS·LIABILITY LITIGATION

Master File No. IP 00-9374-C-B/S
MDL No. 1373
(centralized before Eon.
Sara Evans Barker, Judge)

This Document Relates to the Following
Venezuelan Cases:

| | |
|---|---|
| IP 00-5022-C-B/S | IP 01-5266-C-B/S |
| IP 01-5287-C-B/S | IP 01-5288-C-B/S |
| IP 01-5315-C-B/S | IP 01-5434-C-B/S |
| IP 02-5571-C-B/S | IP 02-5584-C-B/S |
| IP 02-5685-C-B/S | IP 02-5686-C-B/S |
| IP 02-5709-C-B/S | IP 00-5078-C-B/S |
| IP 00-5079-C-B/S | IP 03-5747-C-B/S |
| | IP 03-5746-C-B/S |

### FOREIGN·LAW AFFIDAVIT OF JAMES OTIS RODNER

Plaintiffs, by and through the undersigned member of the Plaintiffs'·Executive Committee, pursuant to the applicable Court orders, hereby serve the foreign law Affidavit of James Otis Rodner in the above-styled foreign accident cases. Plaintiffs reserve their right to supplement and amend this Affidavit.

WE HEREBY CERTIFY that a true copy of the foregoing was faxed this 8th day of August, 2003 to all counsel listed on the attorney distribution list.

PODHURST, ORSECK, P.A.
On behalf of the Plaintiffs' Executive Committee
City National Bank Building, Suite 300
25 West Flagler Street
Miami, Florida 33130

By _____
Victor M. Diaz, Jr.
Fla. Bar No. 503801

## AFFIDAVIT OF JAMES OTIS RODNER

I, James O. Rodner, being duly sworn, state as follows:

### I.    INTRODUCTION

1.    I am a Venezuelan citizen and partner of the law firm Rodner, Martinez and Asociados with offices in Avenida Venezuela, El Rosal, Caracas, Venezuela. I hold a law degree from the Universidad Católica Andrés Bello and a Juris Doctor from Harvard University. I also have an MBA from Harvard University, a Specialist in Political Economy from the Universidad Católica Andrés Bello and a Masters in Economics from the Universidad Católica Andrés Bello. I am an attorney licensed to practice law in the Republic of Venezuela. I am admitted to and in good standing before the Bar of the Federal District of the Republic of Venezuela (*Colegio de Abogados del Distrito Federal*). In addition, I am admitted to practice in the Commonwealth of Massachusetts, in the District of Columbia and before the United States Supreme Court.

2.    I have been a professor of *Obligaciones* (Contracts and Torts) at the Universidad Católica Andrés Bello, Caracas, Venezuela. I have also been a professor of International Finance and Financial Law at the *Instituto de Estudios Superiores de Administración*, Caracas (I.E.S.A.). I am presently a professor of Monetary Policy at the Graduate School of Economics of the Universidad Católica Andrés Bello, and of The Legal Theory of Money at the graduate school of the Universidad Central de Venezuela.

3.    I have written over thirty-nine law review articles, mostly published in Venezuela, some published in the United Kingdom, Holland, France and Peru. I have written nine books on different topics of law and finance. In addition, I am a member of the International Court of Arbitration I.C.C. (International Chamber of

1

Commerce), Paris, and an elected member of the Venezuelan Academy of Political and Social Sciences. Attached as Appendix "A" herewith, my curriculum.

4.   I am the author of three law review articles in Venezuela on the subject of products liability. In 1977, I published *La Responsabilidad Civil del Fabricante en el Derecho Venezolano y la Monografía de Ángel Rojo* [Civil Liability of the Manufacturer in Venezuelan Law, and the Monograph of Angel Rojo][1]. The following year I published a paper on the same subject which I presented to the 10th International Congress of Comparative Law held in Budapest, Hungary in 1978[2]. In 2002, I wrote *La Responsabilidad del Fabricante en el Derecho Venezolano* [Manufacturer's Liability in Venezuelan Law], published in a book in honor of José Luis Aguilar Gorrondona by the Supreme Court of Venezuela (Tribunal Supremo de Justicia)[3]. In addition, in 2002 Victor Hugo Guerra published a book entitled *La Responsabilidad Extracontractual por Productos en el Derecho Internacional Privado* [Conflict of Law Rules and Tort Liability for Products][4], Caracas 2002, and the Venezuelan Academy of Political Sciences published an article by José Melich Orsini entitled *La Responsabilidad Civil por Daños Causados por Productos o Servicios Defectuosos* [Liability for Damage Caused by Defective Products or Services] (papers presented in Brisbane – Australia 2002)[5]. To my knowledge, my three articles, the book of Victor Hugo

[1] JAMES OTIS RODNER, *La Responsabilidad Civil del Fabricante en el Derecho Venezolano y la Monografía de Ángel Rojo* [The Manufacturer's Civil Liability under Venezuelan Law and the Monograph of Angel Rojo], in 23 Revista de la Facultad de Derecho, Universidad Católica Andrés Bello, p. 235 (Caracas, 1977).

[2] JAMES OTIS RODNER, *La Responsabilidad del Fabricante, Esquema para su Fundamento en el Código Civil Venezolano* [Manufacturer's Responsibility and its Ground under the Venezuelan Civil Code], II Ponencias Venezolanas al Décimo Congreso Internacional de Derecho Comparado pp. 109-129 (Caracas, 1978).

[3] JAMES OTIS RODNER, *La Responsabilidad Civil del Fabricante en el Derecho Venezolano* [The Manufacturer's Civil Liability under Venezuelan Law], II Estudio de Derecho Civil, Libro Homenaje a José Luis Aguilar Gorrondona, pp. 406 to 451 (Caracas, 2002).

[4] VICTOR HUGO GUERRA, *La Responsabilidad Extracontractual por Productos en el Derecho Internacional Privado* [Tort Liability for Products and Conflict of Law Rules], (Caracas, 2002).

[5] JOSÉ MELICH ORSINI, *La Responsabilidad Civil por Daños Causados por Productos o Servicios Defectuosos* [Civil Liability for Damages Caused by Defective Products or Services], 139 Boletín de la Academia de Ciencias Políticas y Sociales, pp. 143 to 152 (Caracas, 2002).

2

Guerra and the article by José Melich Orsini are the only studies that have been published regarding product liability in Venezuela.

5. I have been asked to provide an opinion on several matters regarding the awarding of damages in case of physical injury and/or death arising out of defective products under Venezuelan law.

## II. RULE OF INTERPRETATION OF THE LAW

6. The Civil Code has a very general incomplete provision regarding interpretation of the law. In effect, the Civil Code expressly establishes that "the law shall be interpreted according to the meaning of the words, taking into account the connection between them and the intent of the legislator" (Civil Code, Article 4). However, it also establishes that "when there is no exact provision in the law, the provisions regulating similar or analogous cases must be considered; and, if there is still any doubt, then general principles of law must be applied" (Civil Code, Article 4). Contrary to the assertions made in the affidavit filed by the defendants, Article 4 of the Civil Code does not provide that statutes have to be strictly construed according to the plain language of the Civil Code, but rather that, when the Civil Code has a particular provision, then that provision has to be applied according to the meaning attributed to its language. Furthermore, the Venezuelan Supreme Court has held that, in addition to the elements contained in Article 4 of the Venezuelan Civil Code used for the purpose of interpreting the law, a judge must also use historical, comparative, and any other external elements that help to clarify the meaning and scope of the formula (meaning the actual legal rule)[6]. This explains why Venezuelan courts frequently quote French, Italian and Spanish cases and authorities as the basis for a given decision.

---

[6] Decision of November 7, 1962, Sala Político Administrativa, Corte Suprema de Justicia [Administrative Political Chamber, Supreme Court of Justice], Gaceta Forense [GF] 2nd ed., pp. 110 to 113, No. 38. (Ven).

08/08/2003    13:50    PODHURS  RSECK LAW → 4404#26700#13175206405#    NO.144   P035

Venezuelan case law has also held that, when there is no particular provision of law that regulates the specific matter before the court, then analogy can be used[7].

## III. COLLECTIVE LIABILITY

*Joint Liability under the Civil Code.*

7.   Article 1195 of the Civil Code provides that, when the wrongful act or omission is imputable to several parties, these parties are jointly liable to repair the damage that has been caused. Thus, under Article 1195 of the Code, in the case of torts for defective products, the victim of the tort can bring an action against any one of the potentially liable persons in the chain of sales, distribution, production, fabrication or design of the product. This joint liability allows the victim to claim the total amount of the damages against any one of the potentially liable persons. As expressed below, this concept has been long recognized in continental doctrine and jurisprudence.

*Corporate Groups.*

8.   The rule of joint liability mentioned above (Article 1195) applies to unrelated individuals or corporations as well as to corporations belonging to the same group. Venezuelan legislation, doctrine and case law have recognized the idea of corporate groups and attribute certain legal effects to corporations acting as groups. In effect, the Venezuelan Banking Act (*Ley General de Bancos*) recognizes and attributes legal effects to financial groups (Venezuelan Banking Act, Article 161). The Law to Promote and Protect Free Competition acknowledges that an economic activity may be carried out by one person or groups of inter-related persons (Law to Promote and Protect Free Competition, Article 14). Companies acting as a group are at times referred to as acting as an "enterprise", "enterprise" (*empresa*), in turn, being defined in Venezuela as one or

---

[7] Decision of July, 28 1955, Jurisprudencia Tribunales de la República [JTR], p. 712, No. 4, Tome I (Ven).

more commercial activities that are carried out collectively by different legal entities[8]. Recent case law has further affirmed that "the development of business has brought into existence persons (individuals or corporations) that direct or carry out a series of economic activities via various companies or enterprises, these being formally distinct from their principal but joined to it not only by economic ties but also by common links of management and economic purpose…"[9].

9.     Collective liability for torts, whether in the case of corporate groups or unrelated persons, may arise if an activity is performed collectively, or in a concerted or coordinated manner such that it becomes difficult or impossible to identify the person causing the damage. In the case of torts for defective products, the concerted action or activity would involve all corporations participating in the complete chain of production, that is, design, production, manufacturing and sales.

10.    The idea of collective liability appears in German doctrine, which makes reference to common causation and the involvement in a collective activity that results in damage to a particular victim. When several parties act collectively, albeit in different capacities, "each one of these persons is liable for the totality of the damages produced in the course of their activity in cooperation with others"[10].

---

[8] See ALFREDO MORLES HERNÁNDEZ, *Curso de Derecho Mercantil*, 4th ed., Volume 1, p. 117 (Caracas, 1998).

[9] Decision of April, 2001 (Cadafe v. María Isabel Silva and others), Sala Constitucional, Corte Suprema de Justicia [Constitutional Chamber, Supreme Court of Justice], JTSJ (BG), pp 117 – 136, Vol. III, (Ven).

[10] A. VON TUHR, ed. Reus, *Resarcimiento de Daños*, Tratado de Obligaciones (Spanish version), p. 57 et seq. (Madrid, 1984). This affirmation in German doctrine is simply a confirmation of the principles of collective liability contained in the German Civil Code. In effect, Article 830 of the German Civil Code (Bürgerliches Gesetzbuch) provides that "when several parties acting as a group have caused a damage - arising out of tort, each one of them is liable for the tort. This rule applies even when it is not possible to determine which of the conducts among the joint tort feasors actually caused the damage." Translation into English taken from the French version of the BGB, translated from German to French by William Garcin, with Eritz Stumn, Paris, Dalloz, 1967.

This idea has been further developed recently in Spain[11], France[12], and other
European continental countries.

11.   There are no reported Venezuelan cases recognizing the extension of the group
      theory to collective liability[13]. Nevertheless, the arguments used in continental
      Europe (France and Spain) for the theory of collective liability are founded on
      legal principles similar to those found in the Venezuelan Civil Code (Art. 1195)
      and special statutes (such as the Banking Act and the Law to Protect Free
      Competition).

IV.   DAMAGES IN AN ACTION FOR PERSONAL INJURY.

      <u>Who Can Recover Damages in an Action for Personal Injury</u>

12.   In Venezuela, damages in an action for personal injury, when the injured party
      has not passed away, belong exclusively to the victim of the damages, unless
      there has been an injury to the property of another party. In effect, Venezuelan

---

[11] In Spain, the development of the collective liability principle is the result of case law and doctrine. In effect, according to Spanish doctrine, to "obtain today a rule by which, when damage has been caused or has originated from the activities of a group or an amalgamation of persons, the responsibility for damages corresponds to all of them in *solidum*, unless any one of them can exonerate itself by proving that there is no cause relationship or that there is liability without fault that could be attributed to him.", LUIS DÍEZ PICAZO Y PONCE DE LEÓN, *Derecho de Daños*, p. 167 (Madrid, 1999).

[12] In France, cases have been reported on collective fault for over fifty years. The concept of collective fault, as indicated in French doctrine, is a concept "that permits more naturally to justify the assimilation of the members of a group from which damage arises, as co-authors of the damage", GENEVIÈVE VINEY AND PATRICE JOURDAIN, *Le Condition de la Responsabilité*, § 378, p. 207 (Paris, 1998). The idea of collective fault has now been adopted in France under the Civil Code for the case of liability of the manufacturer of defective products, French Civil Code, Article 1386-8.

[13] However, the Venezuelan Supreme Court in the case of F. Desanges and other v. Instituto Nacional de la Vivienda (Inavi) and others, judgment of February 14, 1991, CORTE SUPREMA DE JUSTICIA (Supreme Court), CXVI JRG (Case Nº 221-91) 519 (Ven.), found that there was a joint liability of the promoter and the contractor in a case of a defective railing. In a nutshell, this case refers to the death of a child that occurred because the child went through the railings that were used to protect the common walkways in an apartment building owned and built by defendants Inavi and other (the Contractor of the building). The plaintiffs claimed that the railings were built in such a way that a small child could fall through them if he/she leaned on them, which is in effect what happened. The Supreme Court held that Inavi (the promoter) and the Contractor were liable because they built the apartment building. The promoter designed the building and the Contractor executed the design. They were acting together and they both had to supervise the building. The liability was based on the General Liability Rule of the Civil Code (Civil Code, Article 1185) and on the special Joint Liability Rule also included in the Civil Code (Civil Code, Article 1195).

6

case law holds that the action for damages is of a personal nature and corresponds directly to the person that had suffered or is suffering the damages, both in his/her net worth as well as moral damages[14].

13. The fact that the action for damages is of a personal nature does not mean that (i) the injured party cannot assign to a third party its rights of action[15] or (ii) there are persons, other than the victim of the personal injury, that may have also suffered personal damages (i.e. any person financially dependent on the injured party and/ or relative)[16].

Extent of Damages in the Case of Personal Injury.

14. Under Venezuelan law, the victim of a personal injury may recover two distinct kind of damages, which may be classed as material or patrimonial damages (*daños materiales*) and moral damages (*daños morales*) respectively. In effect, Article 1196 of the Civil Code, which is taken from Article 85 of the French-Italian project of a law of obligations[17], expressly states that:

> "The obligation to repair (*damages*) extends to all material and moral damages arising out of a tort. The judge (*trier of the facts*) may specifically award an indemnification to the victim of the tort in cases of bodily harm, violation of his honor or reputation or the honor or reputation of his family, violation of his personal liberty,

---

[14] See decision of the Supreme Court of Justice dated August 19, 1961 quoted by José Melich Orsini in *La Responsabilidad Civil por Hechos Ilícitos*, [Civil Liability for Torts], 2nd ed., pp. 610-611 (Caracas 2001).

[15] Among others, where an insurer has paid under an indemnity policy the loss suffered by the injured party, the insurer has the right to be subrogated to the latter's rights for material damages.

[16] However, in this latter case, any damages recovered by the dependents (i.e. any financial loss suffered by the cessation of maintenance payments) can not be duplicated or otherwise awarded to the victim of the personal injury and is limited to material damages suffered. See José Melich Orsini, *supra* note 14, p. 86.

[17] See *Progetto di Codice delle Obbligazioni e dei Contratti*, (Commissione Reale per la Riforma del Codici, Comission Française D' Etudes de L'Union Legislative entre Les Nations Alliees et Amies), p. 39, (Roma, 1928).

7

as well in cases of violation of domicile or of a secret (*confidential matter*) that belongs to the victim.

The judge (*trier of the facts*) may also grant an indemnification to the relatives of the victim, whether by blood or marriage, as reparation for the pain suffered as a result of the death of the victim."

15.   Material damages cover all direct, foreseeable and non-foreseeable damages, which are susceptible of direct translation into money (Civil Code, Articles 1185, 1196, 1273 and 1275). In other words, material or patrimonial damages "consist in those that produce a loss or diminishment (reduction) of an economic nature"[18]. These includes (i) loss of earnings (*lucro cesante*), actual and prospective, such as loss of wages, salaries, professional fees and, in general, any type of future earnings; and, (ii) out-of-pocket expenses, such as medical or similar expenses which the victim has incurred as a result of his/her injury together with those that may be incurred in the future (*daño emergente*).

16.   Venezuelan doctrine has held that moral damages, on the other hand, "relate to all damages that do not affect a patrimonial interest of the victim, and thus refer to all damages that have no material (direct economic) consequence"[19]. This means all damages that cannot be measured in economic terms and include such inestimable elements as pain and suffering.

### Statutory Limitations on Damages in the Case of Personal Injury

17.   Under the Civil Code, there is no limit on the amount (quantum) that can be awarded as damages, including amounts that may be awarded as moral damages.

---

[18] ELOY MADURO LUYANDO, *Curso de Obligaciones, Derecho Civil III.* 7ª ed., § 327 (Caracas, 1989).
[19] JOSÉ MÉLICH ORSINI, *supra* note 14, p. 43.

18.    Venezuelan doctrine and case law recognize that the fixing of the amount of moral damages is discretionary for the trier of the facts[20]. In effect, the Civil Code, when granting the trier of the facts the power to grant moral damages, expressly states that the trier of the facts may (puede) grant an indemnification to the relatives of the victim, meaning that the fixing of the amount of moral damages is left to the discretion of the trier of the facts. Venezuelan doctrine, however, does clarify that the meaning of Article 1196 is that the trier of the facts will fix according to his or her own criteria the amount to be awarded as moral damages. Thus, if moral damages are proven and have been requested, the trier of the facts is bound to make an award. The amount of the award is a matter for his/her discretion[21].

19.    A recent Venezuelan decisions have held that for "the fixing of moral damages, the trier of the facts should take into account the importance of the damages, the degree of fault of the author of the damage (the tort-feasor), the conduct of the victim (that is, the existence of some form of contributory negligence), and some sort of scale of moral suffering"[22]. This holding was later followed by the Supreme Court of Justice in a case of June 10, 1998[23]. More recently, in a February 1999 decision in the case E. García and others against C.A. Energía Eléctrica de Venezuela (ENELVEN), an action for damages arising out of the death of several children of the plaintiff due to electrocution caused by a faulty electrical wire, the Venezuelan Supreme Court held that one of the elements to be taken into account in the determination of moral damages was the gravity of the fault committed by the agent (the Electric Light Company). In effect, the Court held that the Electric Light Company was under an obligation to properly

---

[20] ELOY MADURO LUYANDO, EMILIO PITTIER SUCRE, Curso de Obligaciones, Derecho Civil IX, 11ª ed., § 285 (Caracas, 1999).
[21] Id. § 285.
[22] Decision of July 7, 1993 (Daniel Arenas v. C.A. Bananera Venezolana), Corte Suprema de Justicia [Supreme Court of Justice], Oscar R. Pierre Tapia, Jurisprudencia de la Corte Suprema de Justicia [JPT], p. 192, Vol. July 1993 (Ven).
[23] Decision of June 10, 1998 (Victor José Colinas Arenas v. Raúl Aldemar Salas Rodríguez), Corte Suprema de Justicia [Supreme Court of Justice], JPT, pp. 143-144, Vol. June 1998 (Ven).

08/08/2003   13:50   PODHURST   SECK LAW → 4404#26700#131792064#5#   NO. 144   P011

maintain the electrical wires, especially taking into account that these were close to the seashore and therefore exposed to environmental conditions that could give rise to exceptional risks and which, in effect, resulted in the accident for which the action was brought[24]. In 2002, the Venezuelan Supreme Court held that the trier of the facts in an action for moral damages must make a thorough examination: "in the particular case, analyzing the following aspects: (a) the importance of the damage, both physical and psychological (as well as the scale of moral sufferings); (b) the degree of fault of the defendant or its participation in the accident or the tort that has caused the damage (according to whether the tort arises from objective or subjective liability)[25]; (c) the conduct of the victim; (d) the degree of education and culture of the plaintiff; (e) the social and economic position of the plaintiff; (f) the economic capacity of the defendant; (g) the possible extenuating circumstances in favor of the responsible party; (h) the type of satisfactory retribution necessary to restore the victim to a similar situation to that which he enjoyed before the accident or illness; and lastly, (i) money references estimated by the judge (the trier of the facts) to fix the indemnification that it considers equitable and just for the particular case"[26].

## V.   DAMAGES IN AN ACTION FOR WRONGFUL DEATH.

### Who Can Recover Damages in an Action for Death and Extent of Recoverable Damages.

20.   Article 1196 of the Civil Code allows relatives, including those by marriage, to bring an action for moral damages suffered by them for the death of the relative. Article 1196 refers to a broad category of relatives and, therefore, does not

---

[24] Decision of February 18, 1999 (E. García y otros v. C.A. Energía Eléctrica de Venezuela (ENELVEN)), Sala Político-Administrativa, Corte Suprema de Justicia [Administrative Political Chamber, Supreme Court of Justice], Jurisprudencia Ramírez & Garay [JRG], pp. 534-542, Vol. CLI (Ven).

[25] An objective liability is liability without fault, a subjective liability is liability with fault.

[26] Decision of March 7, 2002 (José Francisco Tesorero Yáñez v. Hilados Flexicon), Sala de Casación Civil, Tribunal Supremo de Justicia [Social Cassation Chamber, Supreme Court of Justice], reported in the website of the Supreme Court of Justice (www.tsj.gov.ve-decisiones-scs-marzo) (Ven).

impose a limitation on the category of relatives (whether by affinity or by consanguinity) who can bring a moral damages claim in their own name.

21.    Additionally, under the general principle mentioned in Section II.6 above, any person, other than the deceased (i.e. any person financially dependent on the deceased or relative), could claim any direct material damages suffered as a consequence of the victim's death to the extent such damages are personal and the person claiming them has a legitimate interest.

22.    Venezuelan legislation, however, does not specifically regulate the survival of causes of action following the death of the victim for the benefit of his/her estate. Venezuelan doctrine and case law have recognized that the cause of action survives for the benefit of the deceased person's estate[27]. However, there is no unanimous criterion with respect to the kind of damages recoverable on behalf of the estate of the deceased (whether material, moral or both)[28]. The development of Venezuelan case law in this regard indicates that all material damages suffered by the victim as a consequence of the victim's death become a part of the victim's patrimony and, therefore, may be recovered as part of any cause of action initiated by the deceased person's estate. In this case, the material damages recoverable on behalf of the estate of the deceased person would be same as the damages which would have been recoverable by the deceased had he survived. In the case of a claim for moral damages, it belongs exclusively to the individual victims of such damages (the deceased's relatives) and does not survive for the benefit of the estate.

[27] Decision of May 5, 1988 (M. Prato y otros v. Seguros Venezuela, C.A.), Sala de Casación Civil, Corte Suprema de Justicia [Social Cassation Chamber, Supreme Court of Justice], JRG, p. 461, Vol. CIV (Ven); and, Decision of December 13, 1989 (W. Fumero y otros v. Instituto Autónomo Ferrocarriles del Estado), Sala Político Administrativa, Corte Suprema de Justicia [Political Administrative Chamber, Supreme Court of Justice], JRG, p. 752, Volume CX (Ven).
[28] José Mélich Orsini, supra note 14, pp. 87-90.

11