United States District Court
Southern District of Texas
FILED

JUN 1 0 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MARCOS SANCHEZ, INDIVIDUALLY AND, § <br> AS REPRESENTATIVE OF THE ESTATE OF § <br> NELSON NAPOLEON SANCHEZ § <br> § <br> AIDO MANUEL GARRIDO AND IVON § <br> ELENA PARRA DE GARRIDO, § <br> INDIVIDUALLY AND AS § <br> REPRESENTATIVES OF THE ESTATES OF § <br> EVELIN CAROL GARRIDO DE SANCHEZ § <br> AND DANIEL ENRIQUE SANCHEZ § <br> GARRIDO, A MINOR; § <br> § <br> MAXIMILIANO PEREZ CEBALLOS § <br> AND PETRA MARIA COLMENAREZ, § <br> INDIVIDUALLY AND AS REPRESENTATIVE§ <br> OF PEDRO NORBERTO PEREZ § <br> COLMENAREZ § <br> § <br> VS. § <br> § <br> MICHELIN NORTH AMERICA, INC. § <br> AND FORD MOTOR COMPANY § | CIVIL ACTION NO. B-04-080 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF AND MOTION FOR RECONSIDERATION OF COURT'S GRANTING DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS**

TO THE HONORABLE JUDGE OF SAID COURT:

> **Plaintiffs ask the Court to grant a new trial as authorized by Federal Rule of Civil Procedure 59 and/or in the alternative grant a Motion to Reconsider, Alter or Amend the Judgment pursuant to Federal Rule of Civil Procedure 59.**

I.

1.   Plaintiffs are **Marcos Sanchez, Individually, and as Representative of the**

**Estate of Nelson Napoleon Sanchez; Aido Manuel Garrido and Ivon Elena Parra De**

1

**Garrido, Individually and as Representatives of the Estates of Evelin Carol Garrido de Sanchez and Daniel Enrique Sanchez Garrido, a Minor; Maximilliano Perez Ceballos and Petra Maria Colmenarez, Individually and as Representatives of the Estate of Pedro Norberto Perez Colmenarez.** Defendants are **Michelin North America, Inc.** and **Ford Motor Company**.

2. Plaintiffs sued Defendant for various causes of action including negligence, strict product liability, breach of warranty and Deceptive Trade Practices Act violations. The Plaintiffs contend that the subject vehicle, a 1999 Ford Explorer was defective in its design in that its stability and handling characteristics and static stability factor are such that the vehicle has a high propensity to rollover and crash during normal emergency avoidance maneuvers thus making it unreasonably dangerous. Plaintiffs contend that Defendant knew, by virtue of its own research and testing during the design and manufacture of this vehicle as well as subsequent reports of other rollover crashes and victims, that the Explorer was defectively designed and unreasonably dangerous.

3. On June 2, 2005, this Court entered an order granting Defendants' Motions to Dismiss for *forum non conveniens*.

4. Plaintiffs, by their attorneys, move that the Court reconsider the motion and order dated June 2, 2005, with or without additional hearing as may appear appropriate, and that the Court make and enter in lieu thereof, an opinion and order in accordance with the proposed opinion and order presented by the Plaintiffs.

5. This motion is based on the entire record, including Plaintiffs' Objections and Opposition, Response to Defendant's Motion to Dismiss for *forum non conveniens*, previously submitted to the Court, and incorporated herein by reference.

## II.

6. This Court should reconsider and deny Defendant's motion on the grounds that the Court's granting of Defendants' Motion to Dismiss was in error and works a manifest injustice.

7. Whether a foreign court would exercise jurisdiction is highly, if not absolutely determinative to the question of whether an alternative forum exists. The Court characterizes the essence of Plaintiffs' contentions in this regard as an unwillingness to submit their case to the Venezuelan judiciary and therefore Venezuela is not an available forum. This is incorrect. Plaintiffs simply contend that a Venezuelan court would not exercise jurisdiction over this matter under the two jurisdictional provisions of Article 40(4) and Article 40(2). Plaintiffs' Venezuelan law expert, Dr. DeMaekelt, opines that Article 40(4) would not serve as a means of exercising jurisdiction by a Venezuelan court because there is neither an express nor tacit agreement by the parties to submit to that court's jurisdiction. Further, a clear reading of this particular Article reveals that it applies only to *actions in property*. The case at bar does not involve an action in property. Thus we are left to determine a Venezuelan court's possible exercise of jurisdiction based solely on the provisions of Article 40(2), which scrutinizes the derivation of the actions from "facts verified" in Venezuela as opposed to, in this case, the United States. Analyzing the "facts verified" in the case at bar under Article 40(2) wherein a strict products liability action is contended, Plaintiffs' Venezuelan law expert opines that a Venezuelan court would not exercise jurisdiction over this case and therefore, an alternative forum does not exist in this case. This action originates from acts undertaken, and decisions made, by the Defendant in their corporate headquarters and testing facilities in the United States – not Venezuela. The death vehicle at issue here was designed, tested, manufactured and assembled (except for final assembly) in the United States by U.S. engineers at the direction of U.S. management and executives. The Court

appears to be unpersuaded by DeMaekelt's conclusion, which is inadequately contested by Defendant's foreign law expert. Instead, it appears the Court seeks to place the added burden upon the Plaintiffs of actually filing a lawsuit in Venezuela and then being told by a Venezuelan court that it will not exercise jurisdiction. While the Court may consider a return of jurisdiction clause adequate to ameliorate this likely scenario, such elides the very real financial burden, manifest injustice to and demoralizing effect upon Plaintiffs. Justice delayed is justice denied.

8. The Court points to Vasquez as a basis to determine that the private interest factors are resolved against Plaintiffs in the instant case. Plaintiffs contend that such is in error. The facts in Vasquez are limited to that case and it is unreasonable and inappropriate to broadly apply those facts to all products cases. Vasquez is distinguishable from the case at bar in that Vasquez concerned a vehicle and tires that were manufactured, purchased, and maintained *in Mexico* whereas the vehicle herein was manufactured and assembled (except for final assembly) in the United States. Unlike Vasquez, the Plaintiffs herein assert strict products liability based on a *design defect* rather than a manufacturing defect. Plaintiffs herein do not assert alternate theories of liability that would require the vehicle's servicing records, as did the Plaintiffs in Vasquez. Indeed, Plaintiffs contend only that it is the Defendant's acts and omissions, which all occurred in the United States, that should dictate the forum where the merits of this lawsuit should be heard. Plaintiffs disagree that the wrongful act in this case – the original design of the subject vehicle – reaches back too far in the rollover crash's causal chain. It is recognized that a manufacturer or other seller is liable ``for unreasonably dangerous products--*whether designed defectively or improperly and produced as designed*, or whether designed perfectly but improperly or defectively produced" *Henderson v. Ford Motor Company*, 519 S.W.2d 87, 92 (Tex. 1974) (emphasis added). A plaintiff may establish an actionable "design defect" only if he

4

or she proves, by a preponderance of the evidence, both of the following: (1) There was a "safer alternative design;" and (2) The defect (i.e., the design actually used) was a ``producing cause of the personal injury, property damage, or death for which the claimant seeks recovery." *See* C.P.R.C. § 82.005(a). Further, considering the long and infamous history of the Ford Explorer – its platform being the Ford Bronco II, a vehicle with its own deplorable story of stability, handling defects and high rollover propensity, Ford's own internal memorandum memorializing stability and handling test failures, Ford's decisions to forego proposed safer alternative designs in lieu of meeting its self-imposed "Job 1" deadline, and its subsequent "sanitization" of documents pertaining to the design and development of the subject vehicle – looking at the actions of this American company, its American engineers, management and executives is clearly not attenuated in this case and does not ignore the sale and failure of this unreasonably dangerous vehicle in Venezuela but rather, focuses on the very acts and omissions that precipitated the rollover crash that killed **Nelson Napoleon Sanchez, Evelin Carol Garrido de Sanchez, Daniel Enrique Sanchez Garrido and Pedro Norberto Perez Colmenarez.**

9.   The Court is correct in stating that the discovery conducted in the case at bar has pertained solely to the merits of Defendant's motion to dismiss on grounds of *forum non conveniens*. This discovery has had one and only one purpose – to determine whether Defendant could meet its burden in showing: (1) the existence of an alternative forum; and (2) whether the private and public factors favor dismissing this action in favor of that alternate forum. Until the Court granted Plaintiffs the opportunity to force Defendant to shoulder its burden of proof, Defendant was content to merely invoke the existence of an alternative forum by stating its willingness to submit to that jurisdiction and by citing to the public and private factors by rote. It is hardly perverse to point out to the Court that the results of the discovery clearly show that

Defendant not only fails to meet its burden but in fact support Plaintiffs' contention that those factors favor this Court maintaining jurisdiction over this matter.

**100%** of the subject Ford Explorer was designed in the **United States**.

**100%** of the testing pertaining to roll-over, rear-end skate and other stability and handling issues including alternative design were conducted in the **United States**.

**100%** of the decisions and recommendations based on roll-over, rear-end skate and other stability and handling test results were made in the **United States** and then disseminated to Venezuela.

**82%** of the parts manufactured for the subject Ford Explorer were manufactured in the **United States**.

**At least 82%** of the subject Ford Explorer was assembled in the **United States** then shipped to Venezuela for "final assembly."

**All** of the decisions pertaining the design and alternative design of the subject Ford Explorer were made in the **United States**.

All of the potential witnesses with knowledge of the design, development, testing, engineering, and management and executive decisions were made in the **United States.**

10. These facts are what they are, whether they see the light of justice by the Defendant's actions in support of its own motion or as the result of the Plaintiffs' efforts. The Court's unwillingness to allow Plaintiffs to use the results of discovery, as a basis for rejecting Defendant's motion is tantamount to never having allowed said discovery and allowing Defendant to support its motion merely by invocation, conjecture and rote rather than requiring the Defendant to meet its burden. Further, and as a practical matter, in the highly unlikely event this case were to reach a Venezuelan court on the merits, it is commonsensical to anticipate that Defendant will present its own group of experts and corporate representatives to testify and many of the 285,000 documents reposited in the United States will be produced by one side or the other to prosecute and defend this case respectively. The costs of translation, interpretation,

travel and freight in such an event cannot be ignored and indeed serve as the basis of a *forum non conveniens* analysis that favors maintaining jurisdiction in the United States.

11. In sum, Plaintiffs do not maintain that the facts as outlined by Defendant are irrelevant rather, Plaintiffs assert that the facts in this case and the underlying strict liability cause of action premised on a design defect, when viewed in their totality favor maintaining jurisdiction in the United States. Certainly the rollover crash that killed **Nelson Napoleon Sanchez, Evelin Carol Garrido de Sanchez, Daniel Enrique Sanchez Garrido and Pedro Norberto Perez Colmenarez** occurred in Venezuela, however, the fact that the vehicle was designed in the United States as opposed to Venezuela; tested in the United States as opposed to the Venezuela; the engineering, management and executive decisions related to the engineering choices were made in the United States as opposed to Venezuela; and the vehicle was *predominantly* assembled in the United States as opposed to Venezuela favor Plaintiffs in a *forum non conveniens* analysis. Defendant has done nothing more than to *pro forma* invoke the shield of *forum non conveniens* and provided the Court only with possibilities and conjecture (e.g. view of premises, third party liability) rather than substantive evidence that a trial on the merits is more convenient in Venezuela. Given the dearth of evidence presented to the Court with respect to the private and public issues, the impression that the burden has been placed on the shoulders of the Plaintiffs is no mischaracterization.

12. With regard to the public factors as they stand in this case, Plaintiffs can only ask the Court to reexamine and reconsider its arguments with regard to the application of treaty law and the public policy doctrines that United States courts have applied in determining that the United States has a responsibility to ensure that American companies do not export what can only be described as commercial products of mass destruction. Plaintiffs do not ask the Court to

determine that the Treaty of Peace, Friendship, Navigation and Commerce existing between the United States and Venezuela abrogates or casts aside the legal doctrine of *forum non conveniens*. Rather, Plaintiffs ask that the Court acknowledge our assertion that the treaty grants them deference in their choice of forum. This, in conjunction with the fact that Ford's activities in designing and testing the Ford Explorer in the United States have a far more significant relationship to Plaintiffs' claims than does Venezuela and in fact that this case presents a situation where the connection is close and immediate. *Blanco v. Banco Industrial De Venezuela, S.A.*, 997 F.2d 974 (2nd Cir. 1993).

13.     The United States, under a "governmental interests" reasoning, has a strong interest in adjudicating the disputed issues and in the precedential value of issues presented to the Court. Further, the strong public interest in determining the design and operational safety of vehicles of United States origin, and whether known safety standards, if observed, would avert similar catastrophes at home cannot be denied. This interest militates toward having these questions determined in the forum best capable of adjudicating claims of this nature, in which the expertise of scientific, public interest, and regulatory groups is most readily available. The Court should consider that this is not a novel or even radical path. United States courts have taken special interest in and denied dismissal on *forum non-conveniens* when the United States had local or national interest. *Friends For All Children Inc. v. Lockheed Aircraft Corp.*, 717 F.2d 602 (Ct. App. D.C. 1982); *Transamerica Leasing Inc. v. La Republica de Venezuela*, 21 F. Supp. 2d 47 (D.C. 1998). Plaintiffs cannot point to another matter wherein the actions of an American corporation, over such a long and notorious period of time, do not amount to a local or national interest. If the death and serious injuries of hundreds of individual as the result of Defendant's

defective design is not something of national interest, Plaintiffs are at a loss as to what is a national interest.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully move the Court to reconsider its opinion and order in this regard and to modify the order to reflect that the Court denies Defendants' Motion to Dismiss on the grounds that Defendant fails to meet its burden.

Respectfully submitted,

**LAW OFFICE OF MARK A CANTU**
THE ATRIUM
1300 N. 10th St., Suite 400
McAllen, Texas 78501
Tel: 956/687-8181
Fax: 956/687-8868

By: _____
Juan A. Gonzalez
Texas State Bar No. 08129510
Federal ID 3472
Ricardo G. Benavides
Texas State Bar No. 24031735
Federal ID 32205
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

I Juan A. Gonzalez, do hereby certify that my office has contacted counsel in this matter. Counsel for Defendants, Jaime Saenz and Thomas M. Bullion, III are opposed to this reconsideration.

_____
JUAN A. GONZALEZ
RICARDO G. BENAVIDEZ

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing instrument has been forwarded to the following counsel of record via telefax, certified mail return receipt requested, regular mail and/or hand delivery on this the 10th day of June, 2005.

| | |
|---|---|
| Mr. Thomas M. Bullion, III<br>Attorney – In – Charge<br>**Brown McCarroll, LLP**<br>111 Congress Avenue, Suite 1400<br>Austin, Texas 78701<br>*Attorney for Michelin North America, Inc.* | Via Facsimile (512) 479-1101<br>and First Class Mail |
| Mr. William R. Moye<br>Evan Kramer<br>**Thompson Coe**<br>One Riverway<br>Ste. 1600<br>Houston, Texas 77056<br>*Attorney for Michelin North America, Inc.* | Via Facsimile (713) 403-8299<br>and First Class Mail |
| Mr. Jaime Saenz<br>Mr. R. Patrick Rodriguez<br>**Rodriguez, Colvin, Chaney & Saenz, LLP**<br>1201 East Van Buren (78520)<br>P.O. Box 2155<br>Brownsville, Texas 78522<br>*Attorney for Ford Motor Company* | Via Facsimile (956) 541-2170<br>and First Class Mail |

JUAN A. GONZALEZ
RICARDO G. BENAVIDES